1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   VICTORIA McCARTHY, KATHERINE        NO. CIV. 2:09-2495 WBS DAD
     SCHMITT,
13
              Plaintiffs,              MEMORANDUM AND ORDER RE:
14                                     MOTION FOR SUMMARY JUDGMENT

15        v.

16   R.J. REYNOLDS TOBACCO CO., and
     DOES 1-10,
17
              Defendants.
18   _____/

19                         ----oo0oo----

20        Plaintiffs Victoria McCarthy and Katherine Schmitt

21   brought this action against their former employer, defendant R.J.

22   Reynolds Tobacco Co., alleging claims under Title VII of the

23   Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, for

24   sexual harassment and retaliation, under California's Fair

25   Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, for

26   disability discrimination and failure to accommodate, and for

27   tortious adverse employment actions in violation of public

28   policy.  Defendant now moves for summary judgment on all claims

                                   1

1   pursuant to Federal Rule of Civil Procedure 56.[1]

2   I.   Evidentiary Objections

3           "A party may object that the material cited to support

4   or dispute a fact cannot be presented in a form that would be

5   admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "[T]o

6   survive summary judgment, a party does not necessarily have to

7   produce evidence in a form that would be admissible at trial, as

8   long as the party satisfies the requirements of Federal Rules of

9   Civil Procedure 56."  Fraser v. Goodale, 342 F.3d 1032, 1036-37

10  (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d

11  410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted).

12  Even if the non-moving party's evidence is presented in a form

13  that is currently inadmissible, such evidence may be evaluated on

14  a motion for summary judgment so long as the moving party's

15  objections could be cured at trial.  See Burch v. Regents of the

16  Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

17          Defendant has filed twenty-one evidentiary objections.

18  (Docket No. 40.)  Defendant objects to portions of plaintiffs'

19  deposition testimony on the grounds of lack of foundation,

20  hearsay, speculation,[2] lack of personal knowledge, and expert

21

22          [1]   The court gave plaintiffs an opportunity to file a
    second opposition after they untimely filed their first
23  opposition.  (Docket No. 31.)  The court considers all the
    arguments and evidence submitted to the court, but unless
24  otherwise noted, all references herein are to plaintiffs' second
    opposition, defendant's second reply, and defendant's second set
25  of evidentiary objections.

26          [2]   Objections to evidence on the ground that it is
    speculative are duplicative of the summary judgment standard
27  itself.  A court can award summary judgment only when there is no
    genuine dispute of material fact.  Statements based on
28  speculation or improper legal conclusions are not facts and will

                                    2

opinion testimony.  The court gave plaintiffs an opportunity to

respond to the objections and defendant an opportunity to reply.

Plaintiffs have withdrawn the evidence referenced in defendant's

objections 14 and 16, and the court will not consider that

evidence.  Defendant has withdrawn objection 7.

In the interest of brevity, as defendant is aware of

the substance of its objections and the grounds asserted in

support of each objection, the court will not review the

substance or grounds of all the objections here.  Defendant's

objections 1-2, 4, 8, 10-11, 13, 17-18, and 20-21 are overruled,

as they could be presented in a form that would be admissible at

trial.[3]  Defendant's objections 3, 9, 15, and 19 are sustained on

the basis that the evidence is inadmissible hearsay that could

not be cured at trial.[4]  Defendant's objections 5, 6, and 12 are

---

not be considered on a motion for summary judgment.  Objections
on this ground are superfluous.  See Burch v. Regents of Univ. of
Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Objections 4,
10-11, 17-18, and 20-21 are therefore overruled.

[3]    Objections 1 and 2 relate to deposition testimony by
plaintiffs about statements made by Madsen and other employees
that were made within the scope of their employment.  These
statements are not hearsay because they constitute admissions of
a party-opponent.  See Fed. R. Evid. 801(d)(2)(D).

Objections 8 and 13 relate to deposition testimony by
plaintiffs about which the depositions did not show that they had
personal knowledge.  Plaintiffs demonstrated personal knowledge
in their response to the objections.

The others are objections to speculation, overruled as
discussed in footnote 2.

[4]    Pursuant to the court's simultaneously-filed Final
Pretrial Order, plaintiffs may call themselves and Jared LaLonde
as witnesses, but they may not call Keith Johnson, "Nicole," or
the EEOC investigator as witnesses.  In fact, plaintiffs did not
list the latter three witnesses in their Pretrial Statement.
Even though LaLonde may be called as a witness, three of the

1  sustained on personal knowledge grounds.[5]

2  II.  <u>Relevant Facts</u>

3          Plaintiffs began working for defendant in August of

4  2006 as Trade Marketing Representatives ("TMRs").  (Waggoner

5  Decl. Ex. 2 ("Schmitt Dep.") at 9:4-7 (Docket No. 18); Waggoner

6  Decl. Ex. 3 ("McCarthy Dep.") at 19:13-18.)  Starting in July or

7  August of 2007, plaintiffs and other employees began to have

8  complaints about Michelle Madsen, their supervisor.  Madsen used

9  vulgar language and discussed whether or not the employees were

10
   objections must be sustained: Objection 3 (deposition testimony
11 by McCarthy that three employees, Jared LaLonde, Keith Johnson,
   and "Nicole," told her they had been confronted by Madsen
12 regarding the complaints); Objection 9 (deposition testimony by
   McCarthy that Jared LaLonde told her that Fedewa said McCarthy
13 was "coo-coo"); and Objection 19 (deposition testimony by Schmitt
   that Jared LaLonde told her that he told Madsen that plaintiffs
14 were the ones who complained about her).

15         Plaintiffs' counsel spoke to LaLonde over the phone,
   who apparently referenced his conversation with Madsen but not
16 the one with Fedewa.  LaLonde refused to sign a declaration
   summarizing that phone conversation.  Even if plaintiffs
17 subpoenaed him for trial, there is no basis to know what he would
   say, so the hearsay objections are valid.
18
           Objection 15 refers to deposition testimony by McCarthy
19 stating that the EEOC told her that defendant never disciplined
   Madsen.  In response to the objection, McCarthy filed a
20 declaration naming the individual at the EEOC and stating that
   the individual could testify on the matter.  However, as the EEOC
21 investigator may not be called at trial, McCarthy's statement is
   simply hearsay.
22
      [5]  Objections 5 and 6 refer to deposition testimony by
23 McCarthy stating that Madsen had McCarthy make spreadsheets but
   then never used the spreadsheets.  Even in reply to the
24 objections, plaintiffs did not demonstrate how McCarthy had
   personal knowledge of this.
25
           Objection 12 refers to deposition testimony by McCarthy
26 that Fedewa was required (presumably by defendant) to change his
   management style to become less militant.  McCarthy says she has
27 personal knowledge of this because she saw Fedewa's personnel
   file.  If this is her only reason for personal knowledge, the
28 file itself would be the best evidence.

in relationships. (Bolanos Decl. Ex. A ("McCarthy Dep.") at 67:21-25; 69:20-72:6 (Docket No. 33).) In particular, Madsen told McCarthy that she should not have boyfriends if she wanted to get ahead, because relationships "mess up" careers. (Id. at 70:3-20.) Madsen also told McCarthy that Madsen no longer had sex with her husband because it interfered with her work. (Id. at 71:12-16.) In contrast, Madsen told Schmitt that her work "was starting to lack because [Schmitt's] bedroom was a very lonesome place," and that she needed to have "a more active bedroom" for her work to improve. (Bolanos Decl. Ex. C ("Schmitt Dep.") at 42:2-7.) Madsen also told another employee, Kyle, that "his work would be better if his girlfriend lived here, because he wouldn't be so focused on having an empty bedroom." (Id. at 45:2-8.) Madsen also liked to talk about what sexual positions people preferred, and referred to the fact that another employee, John Walker, was homosexual. (Bolanos Decl. McCarthy Dep. at 86:3-12.)

In late August or early September of 2007, plaintiffs separately complained to defendant's Human Resources department about Madsen's behavior, particularly about what they believed to be Madsen's improper termination of Walker because of his sexuality. (Waggoner Decl. Schmitt Dep. at 91:9-92:3, 92:20-96:2; Waggoner Decl. McCarthy Dep. at 130:5-16, 131:4-24, 132:13-133:8, 134:16-135:7, 137:5-16, 138:24-139:12, 139:21-141:9, 144:15-145:5, 146:20-148:9.) On September 12, 2007, Renee Duszynski from Human Resources held a meeting with all of the employees under Madsen's supervision to discuss the problems with Madsen. (Waggoner Decl. Schmitt Dep. at 60:1-21.) Many

employees voiced concerns about Madsen.  (Id. at 60:1-67:17;
Bolanos Decl. McCarthy Dep. at 166:10-20.)

On October 15, 2007, defendant contends that Madsen was
issued a "final written reprimand" for her conduct, the most
severe form of written discipline short of termination.
(Sullivan Decl. ¶ 6 (Docket No. 20).)  Madsen claims that she did
not know that plaintiffs were the ones who complained about her
conduct until much later. (Madsen Decl. ¶ 6 (Docket No. 16).)

Starting in October of 2007, Madsen required plaintiffs
to move boxes for two days and clean their storage units multiple
times, tasks that were normally outsourced to third parties.
(Bolanos Decl. McCarthy Dep. at 216:5-15, 229:8-230:7.)
Beginning in September of 2007, Madsen changed Schmitt's time
cards to inaccurately reflect her sick leave, and denied many of
plaintiffs' reimbursement requests, something she had not
previously done.  (Bolanos Decl. Schmitt Dep. at 86:23-87:5,
190:12-191:6.)  Madsen also started calling plaintiffs almost
every day at 8:00 a.m. to learn if and where they were working
and threatening to "pop into" their routes, something she did not
do for other employees.  (Id. at 87:6-10, 113:7-114:25.)  Schmitt
perceived these calls as attempts to "scare" her.  (Id. at 87:6-
10.)

McCarthy testified that Madsen touched her
inappropriately in October of 2007 by touching McCarthy's leg
with her hand for a "couple seconds" while the two were driving
to lunch, and then touching her shoe against McCarthy's pants
under the table at lunch. (Waggoner Decl. McCarthy Dep. at
184:14-192:11, 295:19-296:2, 291:10-20, Ex. 32.)  McCarthy's

6

testimony regarding when she first reported the touching to defendant is contradictory: She alternately states that she first reported it in December of 2007 and July of 2008. (Waggoner Decl. McCarthy Dep. at 295:19-296:2, Ex. 32; Bolanos Decl. McCarthy Dep. at 199:15-21.)

Plaintiffs each took a leave of absence from mid-December to early January. Schmitt took leave from December 13, 2007, to January 7, 2008, and McCarthy took leave from December 17, 2007, to January 8, 2008. (Garrison Decl. in Supp. of Def.'s Mot. for Summ. J. ("Garrison Decl.") ¶¶ 6-7 (Docket No. 17).)

Starting on January 1, 2008, defendant underwent corporate reorganization and plaintiffs started reporting to Bryan Fedewa rather than Madsen. (Fedewa Decl. ¶ 2 (Docket No. 15); Madsen Decl. ¶ 20.) Fedewa began calling plaintiffs every morning at 8:00 a.m., as Madsen had done. (Bolanos Decl. Schmitt Dep. at 203:12-14.) On January 18, 2008, Madsen issued written reprimands to plaintiffs for violating management instructions[6] in November and December of 2007, when she was still their supervisor; she claims that she waited until mid-January to discipline them because they had been on leave. (Madsen Decl. ¶¶ 2, 8, 13-16, Exs. 3-5.) At some point after the January 18, 2008, review, Schmitt requested a lateral transfer to Colorado, which was denied because of the written reprimand she had received. (Bolanos Decl. Schmitt Dep. at 169:4-11, 173:3-14.)

---

[6]     Plaintiffs had failed to report their activities for particular days, and had mostly spent those days "out of the field," working on their expense reports together. (Madsen Decl. ¶¶ 2, 8, 13-16, Exs. 3-5 (Docket No. 16).) Plaintiffs contend that they were only following orders by working on their expense reports. (Bolanos Decl. McCarthy Dep. at 299:21-301:11.)

1    From February 15, 2008, to March 27, 2008, Schmitt took
2    a second leave of absence. (Garrison Decl. ¶ 6.)  On March 3,
3    2008, she filed a complaint with the Equal Employment Opportunity
4    Commission ("EEOC"). (Garrison Decl. ¶¶ 11-12, Exs. 10-11;
5    Waggoner Decl. Schmitt Dep. at 279:21-25, 282:23-25, 283:5-18,
6    Ex. 79.)  She returned to work for a few months and then took a
7    final leave of absence from June 5 to October 27, 2008.
8    (Garrison Decl. ¶ 6.)  At that point, she tendered her
9    resignation.  (Id.)  Schmitt states that she resigned because of
10   Fedewa's "retaliation, hostile attitude and militant managerial
11   style."  (Waggoner Decl. Schmitt Dep. Ex. 140; see also id. at
12   228:12-229:22, 231:1-232:7, 512:5-13.)

13   On February 12, 2008, McCarthy filed a complaint with
14   the EEOC. (Garrison Decl. ¶¶ 9-10, Exs. 6-9; Waggoner Decl.
15   McCarthy Dep. at 271:1-14, 276:12-20, Ex. 28.)  The parties
16   dispute whether Fedewa did an analysis of McCarthy's work in
17   March of 2008 and discovered that there were problems.  (Fedewa
18   Decl. ¶¶ 5-7, Ex. 1.)  McCarthy took two more leaves of absence,
19   from March 24 to March 28 and April 18 to June 23 of 2008.
20   (Garrison Decl. ¶ 7.)  On June 25, 2008, McCarthy received a
21   written reprimand from Fedewa relating to the problems that had
22   been discovered in March, before her leaves of absence.  (Fedewa
23   Decl. ¶¶ 5-7, Ex. 1.)  McCarthy then took a final leave of
24   absence from June 27, 2008, to February 24, 2009, and filed a
25   second EEOC complaint during her leave on September 9, 2008.
26   (Garrison Decl. ¶¶ 7, 9-10, Exs. 6-9; Waggoner Decl. McCarthy
27   Dep. at 271:1-14, 276:12-20.)  McCarthy was terminated on
28   February 24, 2009, when she did not return to work.  (Garrison

1  Decl. ¶ 7.)  She contends that she is permanently disabled and is

2  unable to work, and has been since April of 2008; she has been

3  collecting Social Security disability benefits since that time.

4  (Waggoner Decl. McCarthy Dep. at 537:14-22, 587:17-20, 609:7-17,

5  616:10-19.)

6  III.  <u>Discussion</u>

7          Summary judgment is proper "if the movant shows that

8  there is no genuine dispute as to any material fact and the

9  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

10 P. 56(a).[7]  A material fact is one that could affect the outcome

11 of the suit, and a genuine issue is one that could permit a

12 reasonable jury to enter a verdict in the non-moving party's

13 favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

14 (1986).  The party moving for summary judgment bears the initial

15 burden of establishing the absence of a genuine issue of material

16 fact and can satisfy this burden by presenting evidence that

17 negates an essential element of the non-moving party's case.

18 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

19 Alternatively, the moving party can demonstrate that the

20 non-moving party cannot produce evidence to support an essential

21 element upon which it will bear the burden of proof at trial.

22 <u>Id.</u>

23          Once the moving party meets its initial burden, the

24 burden shifts to the non-moving party to "designate 'specific

25 facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at

26

27          [7]  Federal Rule of Civil Procedure 56 was revised and
   rearranged effective December 1, 2010.  However, as stated in the
   Advisory Committee Notes to the 2010 Amendments to Rule 56,

28 "[t]he standard for granting summary judgment remains unchanged."

324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  <u>Id.</u> at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  <u>Id.</u>

Plaintiffs' claims for Title VII retaliation and FEHA disability discrimination are subject to the <u>McDonnell Douglas</u> burden-shifting analysis used at summary judgment to determine whether there are triable issues of fact for resolution by a jury.  <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d 1459, 1464-65 (9th Cir. 1994) (retaliation); <u>Guz v. Bechtel Nat'l Inc.</u>, 24 Cal. 4th 317, 354 (2000) (discrimination); <u>see McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under <u>McDonnell Douglas</u>,

> a plaintiff must first establish a prima facie case of discrimination [or other illegal conduct].  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  If the employer meets this burden, the presumption of intentional discrimination [or other illegal conduct] disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is

1   pretextual.

2   <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 49 n.3 (2003) (internal

3   citation omitted).

4       A.   <u>Title VII Claims</u>

5           Title VII of the Civil Rights Act of 1964 makes it "an

6   unlawful employment practice for an employer . . . to

7   discriminate against any individual with respect to his

8   compensation, terms, conditions, or privileges of employment,

9   because of such individual's race, color, religion, sex, or

10  national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).  Plaintiffs

11  have brought claims under Title VII for sexual harassment and

12  retaliation.

13          1.   <u>Sexual Harassment</u>

14          Under Title VII, to establish a claim for sexual

15  harassment, plaintiffs must show that they either were subjected

16  to "quid-pro-quo harassment," meaning that a supervisor

17  conditioned employment benefits on sexual favors, or that they

18  were subjected to harassment in the form of a hostile work

19  environment.  <u>See</u> <u>Craig v. M & O Agencies, Inc.</u>, 496 F.3d 1047,

20  1054 (9th Cir. 2007) (discussing "two categories" of Title VII

21  sexual harassment cases).  The record contains no evidence of any

22  quid-pro-quo,[8] and, consequently, the court addresses only

23  _____

24      [8]   Plaintiffs seem to argue that Madsen's comments about
    her employees' relationships, while not conditioning employment
25  benefits on a sexual relationship with <u>her</u>, did condition
    employment benefits on having or not having a sexual relationship
26  <u>in general</u>.  Even if such conduct could constitute harassment,
    there is no evidence to support this argument.  Madsen appears to
27  have made conversational remarks about the correlation between
    the quality of employees' work and whether they were in a
28  relationship, but plaintiffs point to no evidence to indicate
    that their employment benefits would change based on their

11

whether plaintiffs were subjected to a hostile work environment.

To prevail on a hostile workplace claim under Title VII, a plaintiff must show: (1) that she was subjected to verbal or physical conduct of a harassing nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. See Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1109-10 (9th Cir. 2000). Sexual harassment is actionable under Title VII to the extent that it occurs "because of" the plaintiff's sex. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998); Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001).

"[A] sexually objectionable environment must be both objectively and subjectively offensive . . . ." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

> [T]o determine whether an environment is sufficiently hostile or abusive to violate Title VII, [courts] look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001)). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will

relationship status.

not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (internal quotation marks and citation omitted); id. (noting Title VII is not a "general civility code," but that its standards are designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing") (internal quotation marks omitted).

"[S]ex discrimination consisting of same-sex sexual harassment is actionable under Title VII . . . ." Oncale, 523 U.S. at 82.  To prevail on this claim, plaintiffs are "required to prove that any harassment [that] took place [was] 'because of sex.'" Nichols, 256 F.3d at 872 (quoting Oncale, 523 U.S. at 79).  In Oncale, the United States Supreme Court described three circumstances in which a court can infer that the alleged conduct of a purported harasser against someone of the harasser's sex is "because of sex": (1) when proposals to engage in sexual activity are made by the harasser and there is credible evidence that the harasser is homosexual; (2) when the victim is treated in a sex-specific manner which suggests hostility toward people of the victim's sex; or (3) when men and women are treated differently by the harasser.[9]  Id. at 80-81.

The inappropriate comments by Madsen about whether employees should be sexually active could be seen by a jury to be dependent on plaintiffs being women or based on Madsen's

---

[9]     While the list in Oncale was not exhaustive, plaintiffs do not suggest any other way in which Madsen's conduct occurred "because of" sex.

1   hostility to women.  Madsen told McCarthy that she should not

2   have boyfriends if she wanted to get ahead, and informed McCarthy

3   that Madsen's success was due to her refusal to have sex with her

4   husband.  Conversely, Madsen told Schmitt that she ought to have

5   a boyfriend.  Her remarks to Kyle, on the other hand, were simply

6   that he was too focused on having an empty bedroom.  There is

7   also evidence that Madsen referred to McCarthy and Schmidt as

8   "her girls," whereas there is no evidence that she referred to

9   any of the male employees as "her guys."

10          While not particularly strong evidence that Madsen's

11  behavior was "because of" plaintiffs' sex, plaintiffs may present

12  this evidence to the jury to decide.  Given the vagaries in the

13  appellate caselaw, this court cannot say that this conduct was

14  not objectively severe or pervasive from "the reasonable woman's

15  perspective."  See Little v. Windermere Relocation, Inc., 301

16  F.3d 958, 966 (9th Cir. 2002).  Accordingly, the court will deny

17  defendant's motion for summary judgment on plaintiffs' claim for

18  sexual harassment under Title VII.

19          2.   Retaliation

20          To make out a prima facie case of retaliation in

21  violation of Title VII, a plaintiff must show "(1) involvement in

22  a protected activity, (2) an adverse employment action and (3) a

23  casual link between the two."  Brooks v. City of San Mateo, 229

24  F.3d 917, 928 (9th Cir. 2000).  As to the first element, an

25  employee's formal or informal complaint regarding unlawful

26  employment practices is "protected activity," and a plaintiff

27  need only show that her belief that an unlawful employment

28  practice occurred was "reasonable."  See Passantino v. Johnson &

14

1   Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000);

2   Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994).  As to the

3   second element, for purposes of a retaliation claim, a challenged

4   action must be "materially adverse," which means that it would

5   dissuade a reasonable worker from exercising protected rights.

6   See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68

7   (2006).  As to the third element, a plaintiff may establish a

8   causal link between the protected activity and the adverse action

9   by circumstantial evidence, including the employer's knowledge of

10  the protected activity and a proximity in time between the

11  protected action and the adverse employment act.  Jordan v.

12  Clark, 847 F.2d 1368, 1376 (9th Cir. 1988); see Passantino, 212

13  F.3d at 507 ("[W]hen adverse decisions are taken within a

14  reasonable period of time after complaints of discrimination have

15  been made, retaliatory intent may be inferred.").

16          It is undisputed that plaintiffs complained to Human

17  Resources about Madsen in late August or early September of 2007.

18  Plaintiffs complained about Madsen's treatment of Walker and

19  about her treatment of other employees, believing that they were

20  experiencing a hostile work environment.  Schmitt filed a

21  complaint with the EEOC on March 3, 2008, and McCarthy filed

22  complaints with the EEOC on February 12, 2008, and September 9,

23  2008.  These complaints were protected activities.  See Moyo, 40

24  F.3d at 985.

25          Plaintiffs argue that actions taken by Madsen and

26  Fedewa after their initial complaints to Human Resources were

27  sufficiently "materially adverse" to constitute retaliation.

28

15

After plaintiffs first complained about Madsen's behavior,[10] they received negative reviews from Madsen and Fedewa, Schmitt requested a transfer that was denied because of her negative review, and McCarthy did not receive a promotion she was expecting.  Madsen began treating plaintiffs differently from other employees by requiring them to move boxes and clean their storage lockers, denying their reimbursement requests, and changing plaintiffs' time cards to use some of their sick days. Madsen and Fedewa called plaintiffs nearly every morning at 8:00 a.m. in a manner that was perceived as threatening.[11]

Denial of a transfer or promotion could certainly dissuade a reasonable worker from engaging in a protected

_____

[10]   Although Madsen states in a declaration that she did not <u>know</u> that plaintiffs were the ones who complained, and plaintiffs have presented no admissible evidence to the contrary, the fact that Madsen began treating plaintiffs differently after they complained creates a genuine issue of fact as to whether she <u>suspected</u> that plaintiffs had complained and retaliated on that basis.  <u>See</u> <u>Price v. Thompson</u>, 380 F.3d 209, 212-13 (4th Cir. 2004) ("[A] reasonable factfinder could elect not to credit fully the testimony supportive of [the hiring official] in favor of the circumstantial evidence tending to show that [the hiring official] knew or strongly suspected that [the plaintiff] was the complainant."); <u>Hernandez v. Spacelabs Med. Inc.</u>, 343 F.3d 1107, 1113 (9th Cir. 2003) (plaintiff "provided sufficient evidence from which a reasonable jury could infer both that [the supervisor] either knew or suspected that [plaintiff] had reported the alleged harassment to [the human resources manager], and that there was a causal connection between this knowledge or suspicion and [plaintiff's] termination.").  Taking the facts in the light most favorable to the non-moving party, the court will assume for purposes of this motion that Madsen at least suspected plaintiffs' protected activities.

[11]   Plaintiffs also provide evidence not mentioned in the Complaint that Madsen "hit" Schmitt.  This evidence is presented in McCarthy's deposition testimony; Schmitt does not mention the incident.  (Bolanos Decl. Ex. A ("McCarthy Dep.") at 67:2-9, 72:13-19 (Docket No. 33).)  This incident allegedly took place in July of 2007, before any protected activities took place upon which a claim of retaliation could be based.

activity.  See Brooks, 229 F.3d at 928 ("Among those employment
decisions that can constitute an adverse employment action are
termination, dissemination of a negative employment reference,
issuance of an undeserved negative performance review and refusal
to consider for promotion.").  While the other actions committed
by Madsen and Fedewa during plaintiffs' employment might be
insufficient on their own to meet the "materially adverse"
standard, taken together, they too could dissuade a reasonable
worker from filing a complaint under the Burlington standard.
Because the allegedly retaliatory actions began occurring shortly
after plaintiffs first complained to Human Resources, plaintiffs
have stated a prima facie case of retaliation for the challenged
actions taken during their employment.[12]

        Defendant then faces the burden of demonstrating a non-
retaliatory reason for its actions.  See Steiner, 25 F.3d at
1464-65.  It argues that the negative reviews were justly given
for plaintiffs' actions in failing to report time out of the
field, and thus Schmitt's transfer was also justly denied.  As to
McCarthy's promotion, defendant argues that McCarthy was not
entitled to receive a promotion.  While she was on a "succession
list," not everyone on the succession list could or would receive
a promotion.  Defendant argues that the other actions, such as
calling plaintiffs every morning and making them perform tasks
outside their normal duties, could not be considered adverse
employment actions.

---

        [12]   Because the court finds that plaintiffs have stated a
prima facie claim for retaliation, it does not consider whether
McCarthy's termination and Schmitt's resignation would also
constitute retaliation.

1    Plaintiffs have sufficiently demonstrated, for purposes

2  of this motion, that defendant's proffered reasons for the

3  adverse employment actions are pretextual.  While the reasons

4  given are plausible when considered individually, taking all of

5  Madsen and Fedewa's actions together, there is a question of fact

6  as to whether the actions were retaliatory.  Plaintiffs faced

7  treatment that employees who did not engage in protected

8  activities did not face.  In October of 2007, Madsen said to

9  McCarthy that if McCarthy had remained "her girl[,] this wouldn't

10 have happened," which McCarthy took to mean that she would not

11 receive a promotion.  (Bolanos Decl. McCarthy Dep. at 192:12-15.)

12 This evidence of retaliatory motivation, combined with the

13 numerous burdens placed on plaintiffs immediately after their

14 protected activities, presents a genuine issue of material fact

15 for trial.

16    Accordingly, the court will deny defendant's motion for

17 summary judgment on plaintiffs' claim of retaliation under Title

18 VII.

19    B.   FEHA Disability Discrimination Claim

20    FEHA makes it an "unlawful employment practice . . .

21 [f]or an employer, because of the . . . physical disability [or]

22 mental disability . . . of any person, . . . to bar or to

23 discharge the person from employment . . . or to discriminate

24 against the person in compensation or in terms, conditions, or

25 privileges of employment."  Cal. Gov't Code § 12940(a).  To

26 establish a prima facie case of disability discrimination, a

27 plaintiff must show that: (1) she suffered from a disability; (2)

28 could perform the essential duties of the job with or without

18

reasonable accommodations, i.e., she was a "qualified

individual"; and (3) was subjected to an adverse employment

action because of the disability.  <u>Brundage v. Hahn</u>, 57 Cal. App.

4th 228, 236 (2d Dist. 1997); <u>see also</u> <u>Green v. State of Cal.</u>, 42

Cal. 4th 254, 262 (2007) (a plaintiff bears the burden as part of

a prima facie case to show he could perform "essential job

duties" with or without accommodation).

Similarly, FEHA proscribes an employer from "fail[ing]

to make reasonable accommodation for the known physical or mental

disability of an . . . employee."  Cal. Gov. Code § 12940(m).

"The elements of a failure to accommodate claim are (1) the

plaintiff has a disability under FEHA, (2) the plaintiff is

qualified to perform the essential functions of the position, and

(3) the employer failed to reasonably accommodate the plaintiff's

disability."  <u>Scotch v. Art Inst. of Cal.-Orange Cnty., Inc.</u>, 173

Cal. App. 4th 986, 1009-10 (4th Dist. 2009).  A reasonable

accommodation is "a modification or adjustment to the workplace

that enables the employee to perform the essential functions of

the job held or desired."  <u>Nadaf-Rahrov v. Neiman Marcus Grp.,</u>

<u>Inc.</u>, 166 Cal. App. 4th 952, 974 (1st Dist. 2008).

A plaintiff who seeks to bring a FEHA action must first

exhaust her administrative remedies.  <u>Romano v. Rockwell Int'l</u>

<u>Inc.</u>, 14 Cal. 4th 479, 492 (1996).  In order to exhaust

administrative remedies, a plaintiff must file a complaint with

the Department of Fair Employment and Housing ("DFEH") within one

year from the date on which the alleged unlawful conduct

occurred.  Cal. Gov't Code § 12960(b), (d).  The DFEH will then

issue a right-to-sue notice upon completion of its investigation

1  of the complaint and not later than one year after the initial

2  filing of the complaint.  Id. § 12965(b).  A plaintiff must

3  ordinarily obtain a right-to-sue letter to bring a FEHA claim in

4  court.  Romano, 14 Cal. 4th at 492 (to exhaust administrative

5  remedies, an employee must file a complaint with DFEH and receive

6  a DFEH right-to-sue notice.)

7         Plaintiffs admit that they did not actually file

8  complaints with the DFEH; instead, they argue that they

9  constructively did so by filing a charge of discrimination with

10 the EEOC.

11        The EEOC is authorized to enter into written agreements

12 with "State and local agencies charged with the administration of

13 State fair employment practices laws" regarding the processing of

14 discrimination claims.  42 U.S.C. §§ 2000e-4(g)(1), 2000e-8(b).

15 The EEOC has formed such an agreement with the DFEH.  Downs v.

16 Dep't of Water & Power, 58 Cal. App. 4th 1093, 1097 (2d Dist.

17 1997) ("The EEOC and the DFEH [have] each designated the other as

18 its agent for receiving charges and agreed to forward to the

19 other agency copies of all charges potentially covered by the

20 other agency's statute."); Surrell v. Cal. Water Serv. Co., 518

21 F.3d 1097, 1104 (9th Cir. 2008) (charge filed with DFEH deemed

22 filed with EEOC pursuant to a work-sharing agreement between the

23 two entities).  Because plaintiffs filed complaints with the

24 EEOC, which should have been shared with the DFEH, the court

25 finds that plaintiffs' FEHA claims do not fail for failure to

26

27

28

20

1  file complaints with the DFEH.[13]   See Reed v. UBS Sec., LLC, No.

2  C 09-5237, 2010 WL 3119200, at *3 (N.D. Cal. Aug. 3, 2010)

3  (holding that the filing of a plaintiff's EEOC complaint is

4  deemed to be a filing with the DFEH).   But see Gordon v. The Bay

5  Area Air Quality Mgmt. Dist., No. C08-3630, 2010 WL 147953, at *1

6  (N.D. Cal. Jan. 12, 2010) (granting the defendant's summary

7  judgment motion on FEHA claim because the plaintiff failed to

8  obtain right-to-sue letter from DFEH).

9          Even if her EEOC claim is deemed a DFEH claim, Schmitt

10  only filed a claim with the EEOC for sex discrimination; she

11  never alleged disability discrimination.   (Waggoner Decl. Schmitt

12  Dep. Ex. 79.)   Thus, she cannot now bring a claim for disability

13  discrimination in court.   See Okoli v. Lockheed Technical

14  Operations Co., 36 Cal. App. 4th 1607, 1617 (6th Dist. 1995)

15  (holding that employee who had only filed complaint about

16  discrimination and harassment with DFEH could not bring suit

17  against employer for retaliation without having amended his DFEH

18  complaint to include retaliation).   Even if Schmitt could

19  properly bring a claim for disability discrimination, she has

20  provided no evidence suggesting that she even has a disability,

21  much less that she was subject to an adverse employment action

22  because of a disability.   Thus, she fails to state a prima facie

23  claim for disability discrimination.

24          It appears that McCarthy filed a claim for disability

25

26      [13]   Even if the complaints are deemed to be filed with the
DFEH, plaintiffs might still need to obtain right-to-sue letters
27  from the DFEH.   See Reed v. UBS Sec., LLC, No. C 09-5237, 2010 WL
3119200, at *3 (N.D. Cal. Aug. 3, 2010).   However, because the
28  court finds that plaintiffs' claims for disability discrimination
fail, it need not decide that question.

discrimination with the EEOC, so the court will consider the
merits of her disability discrimination claim.  Since defendant
does not argue that McCarthy did not have a disability, the court
will assume that she did.  However, McCarthy has not satisfied
the second and third elements of a prima facie case of disability
discrimination: that she could perform the essential duties of
the job with or without reasonable accommodations, and that she
was subjected to an adverse employment action because of her
disability.  See Brundage, 57 Cal. App. 4th at 236.

California's proscription against disability
discrimination applies only to "those employees with a disability
who can perform the essential duties of the employment position
with reasonable accommodation."  Green, 42 Cal. 4th at 264;
see Cal. Gov't Code § 12940(a)(1).  "Therefore, in order to
establish that a defendant employer has discriminated on the
basis of disability in violation of the FEHA, the plaintiff
employee bears the burden of proving he or she was able to do the
job, with or without reasonable accommodation."  Green, 42 Cal.
4th at 262.

McCarthy admitted that she is unable to work and was
terminated because she failed to return to work.  Indeed, she
began collecting Social Security disability benefits before her
termination, while she was on leave.  It is clear that no
accommodation would allow her to perform the essential elements
of her job; thus, she was not a "qualified individual."
Employers need not retain an employee on the payroll on an
indefinite leave of absence when that employee is unable to work.
See Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 226 (2d

Dist. 1999) ("[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."). McCarthy's termination had to do with the fact that she could no longer work; she has provided no evidence that defendant discriminated against her in any way because of her disability.

McCarthy's allegation that defendant failed to accommodate her disability similarly fails. McCarthy was given several accommodations for her disability in the form of leaves of absence. She provides no evidence that she asked for any other accommodations or that other accommodations would have allowed her to perform her job. Thus, she has failed to show that defendant failed to accommodate her disability. See Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1252 (2d Dist. 2008) (to show failure to accommodate, the employee must have requested an accommodation).

Accordingly, plaintiffs' claim of disability discrimination under FEHA fails as a matter of law and the court will grant defendant's motion for summary judgment on that claim.

C.   Tortious Adverse Employment Action in Violation of
     Public Policy Claim

To establish a tort claim for wrongful termination or other adverse employment actions in violation of public policy, a plaintiff must establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of plaintiff's damages; and (5) the nature and extent of the

23

1  damages.  Holmes v. General Dynamics Corp., 17 Cal. App. 4th

2  1418, 1426 n.8 (4th Dist. 1993).  A plaintiff "must prove that

3  his dismissal violated a policy that is (1) fundamental, (2)

4  beneficial for the public, and (3) embodied in a statute or

5  constitutional provision."  Turner v. Anheuser-Busch, Inc., 7

6  Cal. 4th 1238, 1256 (1994) (footnotes omitted).

7       Plaintiffs' claim for wrongful termination and other

8  adverse employment actions in violation of public policy is

9  derivative of their statutory claims.  See Sanders v. Arneson

10 Prods., Inc., 91 F.3d 1351, 1354 (9th Cir. 1996) (citing Jennings

11 v. Marralle, 8 Cal. 4th 121, 135-36 (1994)) (no public policy

12 claim against employers who have not violated the law).  Because

13 plaintiffs' claim for Title VII retaliation survives summary

14 judgment, so too does their public policy claim.[14]  See Phillips

15 v. St. Mary Regional Med. Ctr., 96 Cal. App. 4th 218, 234 (4th

16 Dist. 2002) ("[F]ederal law, and in particular, Title VII, may

17 supply an alternative public policy basis for a wrongful

18 termination claim.").

19       IT IS THEREFORE ORDERED that defendant's motion for

20 summary judgment be, and the same hereby is, GRANTED as to

21 plaintiffs' claim for disability discrimination under FEHA, and

22 DENIED as to plaintiffs' claims for sexual harassment and

23

24       [14]  Plaintiffs also argue that California Labor Code

25 section 1102.5(c), which prohibits employers from "retaliat[ing]
   against an employee for refusing to participate in an activity

26 that would result in a violation of state or federal statute, or
   a violation or noncompliance with a state or federal rule or

27 regulation," provides an independent basis for showing a public
   policy violation.  However, plaintiffs have not alleged nor do

28 they provide any evidence to support a finding that any such
   violation occurred.

1 | retaliation under Title VII and tortious adverse employment

2 | action in violation of public policy.

3 | DATED:   May 3, 2011

4

5 | WILLIAM B. SHUBB

6 | UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28