JEFFREY L. ADAMS, Bar No. 148393
ANNE-MARIE WAGGONER, Bar No. 173407
TARUN MEHTA, Bar No. 262886
LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard, Suite 600
Walnut Creek, CA  94597
Telephone:     925.932.2468
jadams@littler.com
awaggoner@littler.com
tmehta@littler.com

Attorneys for Defendant
R.J. REYNOLDS TOBACCO COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA MCCARTHY, KATHERINE SCHMITT,<br><br>                 Plaintiffs,<br><br>          v.<br><br>R.J. REYNOLDS TOBACCO CO., and DOES 1-10,<br><br>                 Defendants. | Case No.  2:09-CV-02495-WBS-DAD<br><br>**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:    June 8, 2011<br>Time:    TBD<br>Courtroom 5; 14th Floor<br>The Honorable William B. Shubb<br><br>Action Filed:  September 4, 2009<br><br>Trial Date:  June 1, 2011 |

DEFENDANT R.J. REYNOLDS TOBACCO
COMPANY'S ANSWER TO PLAINTIFFS'
COMPLAINT (NO. 2:09-CV-02495-WBS-DAD)

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ........................................................................................................ 1

II. STANDARD FOR GRANTING MOTION ............................................................... 1

III. ARGUMENT .............................................................................................................. 2

    A.  PLAINTIFFS' CLAIMS FOR SEXUAL HARASSMENT FAIL .................... 2

        1.  The alleged "harassment" was not based on Plaintiffs' gender ...................... 2

        2.  Plaintiffs were not subjected to hostile work environment sexual harassment ........................................................................................................ 3

        3.  Defendant exercised reasonable care to prevent harassment, and Plaintiffs' unreasonably failed to report alleged harassment .......................... 6

            a.  No tangible employment action was taken against Plaintiffs for refusal to submit to alleged sexual advances ....................................... 6

            b.  Defendant used reasonable care to prevent and correct alleged sexual harassment ................................................................................. 7

            c.  Plaintiffs' unreasonably failed to report the alleged harassment ......... 9

    B.  PLAINTIFFS' RETALIATION CLAIMS FAIL ...................................... 11

        1.  Plaintiffs' complaint to Human Resources about sexual orientation discrimination is not protected conduct under Title VII ............................... 11

        2.  Plaintiffs did not suffer any adverse employment action ............................. 12

    C.  PLAINTIFFS FAILED TO INTRODUCE ANY EVIDENCE FOR A CLAIM FOR FRONT-PAY ................................................................................ 13

    D.  PLAINTIFF SCHMITT WAS NOT CONSTRUCTIVELY DISCHARGED .......... 13

    E.  PLAINTIFFS FAILED TO INTRODUCE SUFFICIENT EVIDENCE FOR A CLAIM FOR PUNITIVE DAMAGES ........................................................ 15

        1.  Plaintiffs have failed to meet the prima facie elements for punitive damages on their state law claim ................................................................ 15

        2.  Defendant is entitled to judgment as a matter of law on Plaintiffs' claims for punitive damages on their Title VII claims ................................ 16

        3.  Plaintiffs cannot establish that an officer, director or managing agent engaged in malice ........................................................................................ 16

            a.  There is no evidence of conduct that constitutes malice, oppression or fraud .......................................................................... 17

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

i.

(NO. 2:09-CV-02495-WBS-DAD)

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

    b.    There is no evidence that a corporate officer or director made any decisions with respect to Plaintiffs' employment ...................... 18

    c.    There is no evidence that a managing agent made any decisions with respect to Plaintiffs' employment ............................................. 18

    d.    There is no evidence that a corporate officer, director or managing agent authorized or knew and approved of conduct constituting malice, oppression, or fraud ........................................... 20

IV.    CONCLUSION ............................................................................................. 22

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Adams v. Murakami,*
    54 Cal.3d 105, 110 (1991) ................................................................. 15

*Addy v. Bliss & Glennon,*
    44 Cal. App. 4th 205, 219 (1996) ...................................................... 14

*Adusumilli v. City of Chicago.,*
    164 F.3d 353, 361-62 (7th Cir. 1998) .................................................. 5

*Alcaraz v. Wachovia Mortgage, FSB*
    (E.D. Cal. Jan. 21, 2009) 2009 U.S. Dist. LEXIS 34009, *34 .......... 20

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 250 (1986) ................................................................ 1, 2

*Barnes v. Logan,*
    122 F.3d 820, 824 (9th Cir. 1997) ..................................................... 16

*Bibby v. Philadelphia Coca Cola Bottling Co.,*
    260 F.3d 257, 264 (3rd Cir. 2001) ..................................................... 11

*Burlington Indus. v. Ellerth,*
    524 U.S. 742, 764 – 765 (1998) .................................................. 6, 9, 12

*Burlington Northern & Santa Fe Rwy. Co. v. White,*
    548 U.S. 53, 67 – 68 (2006) .............................................................. 12

*Casenas v. Fujisawa USA, Inc.,*
    58 Cal. App. 4th 101, 115 (1997) ...................................................... 14

*College Hospital, Inc. v. Superior Court,*
    8 Cal.4th 704, 723 (1994) ............................................................ 16, 21

*Commodore Home Systems, Inc. v. Superior Court of San Bernardino County,*
    32 Cal. 3d 211, 221 (1982) ................................................................ 17

*Crane v. Green & Freedman Baking Co.,*
    134 F.3d 17, 21 (1st Cir. 1998) ........................................................... 2

*Crenshaw v. Sun Microsystems, Inc.,*
    2007 U.S. Dist. LEXIS 32440, *1-4 (N.D. Cal. Apr. 19, 2007) ........ 13

*Cruz v. HomeBase,*
    83 Cal.App.4th 160, 167 (2000) ........................................................ 16

*Davis v. Harris,*
    2006 U.S. Dist. LEXIS 88000, *9-12 (C.D. Ill. Dec. 5, 2006) .......... 16

*Duffy v. Paper Magic Group, Inc.,*
    265 F.3d 163 (3rd Cir. 2001) ............................................................ 15

*Egan v. Mutual of Omaha Ins. Co.*
    (1979) 24 Cal.3d 809, 822-23 .......................................................... 20

*Estate of Gonzalez v. Hickman,*
    2007 U.S. Dist. LEXIS 84390, *15-17 (C.D. Cal. June 28, 2007) ..... 16

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

iii.

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Faragher v. City of Boca Raton,*
524 U.S. 775, 786 (1998) .................................................................... 3, 6

*First Union Nat'l Bank v. Benham,*
423 F.3d 855, 863 (8th Cir. 2005) ........................................................ 2

*Fredenburg v. Contra Costa County Dep't. Health Svsc.,*
172 F.3d 1176, 1181 (9th Cir. 1999) .................................................... 13

*Goldsmith v. Mayor and City of Baltimore,*
987 F.2d 1064, 1072 (4th Cir. 1993 ..................................................... 15

*Hamner v. St. Vincent Hospital and Health Center,*
224 F.3d 701, 704 (7th Cir. 2000) ........................................................ 11

*Hilt-Dyson v. Chicago,*
282 F.3d 456, 465-66 (7th Cir. 2002) ............................................... 12, 13

*Hollman v. State of Indiana,*
211 F.3d 399, 403 (7th Cir. 2000) ........................................................ 3

*Holly D. v. California Inst. of Tech.,*
339 F.3d 1158, 1177 (9th Cir. 2003) .................................................. 7, 9

*Huskey v. City of San Jose,*
204 F. 3d 893, 901 (9th Cir. 2000) ....................................................... 14

*In re Letterman Bros. Energy Sec. Litigation,*
799 F.2d 967, 972 (5th Cir. 1986) ........................................................ 2

*Kelly-Zurian v. Wohl Shoe Co.*
(1994) 22 Cal.App.4th 397, 421 ............................................................ 19

*King v. AC & R Advertising,*
65 F. 3d 764, 768 (9th Cir. 1995) ......................................................... 14

*Marr v. Anderson,*
611 F. Supp. 2d 1130, 1144-45 (D. Nev. 2009) ................................... 13

*McKenna v. City of Philadelphia,*
636 F. Supp. 2d 446, 466-67 (E.D. Pa. 2009) ..................................... 13

*Meritor Sav. Bank, FSB v. Vinson,*
477 U.S. 57, 73 (1986) .......................................................................... 7

*Montanez v. Education Technology College,*
660 F.Supp.2d 235, 243 (D.C. Puerto Rico 2009) ................................ 11

*Nasser v. AT&T Corp.,*
2007 U.S. Dist. LEXIS 27956, *26 (N.D. Cal. Apr. 16, 2007) ............. 5

*Ngo v. Reno Hilton Resort Corp.,*
140 F.3d 1299 (9th Cir. 1998) ............................................................. 17

*Oncale v. Sundowner Offshore Servs.,*
523 U.S. 75, 80 (1998) ...................................................................... 2, 3

*Patt v. Family Health Sys., Inc.,*
280 F.3d 749, 754 (7th Cir. 2002) ........................................................ 5

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

iv.

## TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*Pavao v. Ocean Ships, Inc.*,
  1998 U.S. Dist. LEXIS 20431, *3-6 (N.D. Cal. Dec. 30, 1998)................................ 3, 5

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133, 149-50 (2000) ........................................................................... 1

*Roby v. McKesson Corp.*
  (2009) 47 Cal.4th 686, 715 ........................................................................... 19

*Rose v. Munirs Co.*
  (E.D. Cal. Nov. 19, 2008) 2008 U.S. Dist. LEXIS 96822, *7 ............................. 20

*Scarff v. Wells Fargo Bank, N.A.*
  (N.D. Cal. Jan. 13, 2010) 2010 U.S. Dist. LEXIS 2572, *20-21 ......................... 18

*Schmidt v. Canadian Nat'l RR Corp.*,
  2007 U.S. App. LEXIS 6233, *7 (7th Cir. 2007) ............................................... 5

*Swanson v. GSA*,
  110 F.3d 1180, 1188, n.3 (5th Cir. 1997) ...................................................... 13

*Swenson v. Potter*,
  271 F.3d 1184, 1193-96 (9th Cir. 2001) ........................................................ 7

*Turner v. Anheuser-Busch, Inc.*,
  7 Cal.4th 1238, 1251 (1994) ..................................................................... 14, 15

*White v. Ultramar, Inc.*
  (1999) 21 Cal.4th 563, 566-67 ................................................................. 18, 19

### STATUTES

42 U.S.C.

  § 2000e-2(a)(1) ....................................................................................... 11

  §2000e-3(a) .......................................................................................... 11

Cal. Civil Code

  §3294 ............................................................................................... 17, 19

Cal. Code of Civ. Proc.

  § 3294 .............................................................................................. 16

Federal Rule of Civil Procedure 50(a) ............................................................ 1

### RULES

L.R. 291.1 ............................................................................................... 1

Rule 26(a)(1)(A)(iii) ................................................................................. 16

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

v.

## I.    INTRODUCTION

Defendant R.J. Reynolds Tobacco Company ("Defendant" or "R.J. Reynolds") moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) and L.R. 291.1 on the following: Plaintiffs Victoria McCarthy and Katherine Schmitt's claims for sexual harassment and retaliation pursuant to Title VII, and their claims for tortious adverse employment action. Defendant also moves this Court for judgment as a matter of law on the issue of whether Plaintiff Schmitt was constructively discharged—as the undisputed evidence demonstrates that she was not. Defendant also moves for judgment as a matter of law on Plaintiffs' claims for front-pay damages and for punitive damages under either their Title VII claims or their tortious adverse employment action claims. The bases for granting this motion are detailed below. As an initial matter, pursuant to the Court's Order on summary judgment, Plaintiffs' common law claim for tortious adverse employment action is derivative of their statutory claims under Title VII. (Docket No. 59, at p. 24.) The claim stands or fails on the merits of the sexual harassment and retaliation claims. Similarly, the Court ruled on June 7, 2011, on the record, that neither Plaintiff had a claim for lost wages (i.e., back-pay).

## II.    STANDARD FOR GRANTING MOTION

Under Federal Rule of Civil Procedure 50(a), a party may move for judgment as a matter of law "at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. Proc. 50(a)(2). The court may grant a motion for judgment as a matter of law against a party if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party." Fed. R. Civ. Proc. 50(a)(1.

The standard for judgment as a matter of law under Rule 50(a) mirrors the standard for granting summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-50 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus, the Court must review the record as a whole, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. *Reeves*, 530 U.S. at 149-150. "The trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

1

(NO. 2:09-CV-02495-WBS-DAD)

as to the verdict." *Anderson*, 477 U.S. at 250.  Moreover, "a judge's decision to grant a directed verdict or a judgment notwithstanding the verdict is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *In re Letterman Bros. Energy Sec. Litigation*, 799 F.2d 967, 972 (5th Cir. 1986).  Although the Court must view the evidence in the light most favorable to the non-moving party, a ruling in favor of the moving party is appropriate when the only evidence in support of the non-moving party is nothing more than a "mere scintilla" of evidence or "speculation".  *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 21 (1st Cir. 1998); *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005).

## III.    ARGUMENT

### A.    PLAINTIFFS' CLAIMS FOR SEXUAL HARASSMENT FAIL

Plaintiffs' claims for sexual harassment fail as a matter of law for three reasons: (1) the alleged harassment was not based on Plaintiffs' membership in any protected class; (2) the alleged harassment was not sufficiently severe or pervasive to alter the conditions of employment; and (3) Defendant exercised reasonable care to prevent harassment from occurring, and Plaintiffs unreasonably failed to take advantage of Defendant's anti-harassment policy.

#### 1.    The alleged "harassment" was not based on Plaintiffs' gender.

As a unanimous Supreme Court held: "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination . . . because of . . . sex.*" *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (emphasis in original) (internal quotations omitted).  The Court further explained:

> We have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations.  The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which to which members of the other sex are not exposed.

*Id.* (internal citations and quotations omitted).  The Court also stated that where there is same-sex harassment between heterosexual women, the plaintiff would have to proffer comparative evidence showing that the female supervisor treated men differently, otherwise plaintiff could prove gender

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

2

(NO. 2:09-CV-02495-WBS-DAD)

1  harassment if she could demonstrate, for example, that "a female victim is harassed in such sex-

2  specific and derogatory terms by another woman as to make it clear that the harasser is motivated by

3  general hostility to the presence of women in the workplace." *Id.*

4          Plaintiffs in this case admit that other Trade Marketing Representatives – both male

5  and female – complained of Madsen's alleged behavior.  Thus, Plaintiffs cannot make a *prima facie*

6  case of sexual harassment because they cannot proffer any evidence that Madsen's alleged conduct

7  was based on Plaintiffs' gender. *Oncale*, 523 U.S. at 80; *Hollman v. State of Indiana*, 211 F.3d 399,

8  403 (7th Cir. 2000); *See also*, *Pavao v. Ocean Ships, Inc.*, 1998 U.S. Dist. LEXIS 20431, *3-6 (N.D.

9  Cal. Dec. 30, 1998).

10          Construed in the light most favorable to Plaintiffs, at best, the evidence shows

11  Madsen made inappropriate comments to TMRs of both genders in the Sacramento District.

12  Plaintiffs fail to meet their burden of showing that Madsen either treated men any differently than

13  women, or that Madsen was motivated by a hostility towards women in the workplace. *See Oncale,*

14  *supra,* 523 U.S. at 80.  Indeed, a great number of the alleged sexually explicit comments McCarthy

15  and Schmitt heard were directed at a ***male*** co-worker, John Walker, who Madsen allegedly referred

16  to as a "slut".  (Tr. 26:13-20, 40:9-22.)  McCarthy testified that Madsen would "especially" use

17  profane language like "cocksucker" in reference to Mr. Walker.   (Tr. 25:21-25.)   Schmitt

18  corroborated McCarthy's testimony that Madsen's comments were primarily directed at Mr. Walker.

19          Hence, judgment should be entered for Defendant on this claim because Plaintiffs

20  cannot prove that any of Madsen's supposed conduct was directed towards them because they are

21  female.

22          **2.     Plaintiffs were not subjected to hostile work environment sexual**
              **harassment.**

23

24          McCarthy's testimony, assuming *arguendo* the underlying events she described

25  actually occurred, does not establish sufficiently severe or pervasive conduct such that it alters the

26  conditions of Plaintiffs' employment and create an abusive working environment. *Faragher v. City*

27  *of Boca Raton*, 524 U.S. 775, 786 (1998).

28          Viewed in the light most favorable to Plaintiffs, Madsen's alleged misconduct

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

3

(NO. 2:09-CV-02495-WBS-DAD)

consisted of inappropriate, off-color comments during "work-withs" with Schmitt and McCarthy and touching McCarthy's leg with her hand and touching her leg with her foot on a single occasion. McCarthy testified that Madsen used vulgar language, some of which she interpreted as sexual in nature. (Tr. 33:12-35:1.)  The comments were not only about McCarthy but also referenced other people.  (Id.)  McCarthy contends that Madsen engaged in inappropriate behavior by: (1) using vulgar language; (2) cussing; (3) talking about sexual positions; and (4) commenting on John Walker being gay. (Tr. 244:14-245:10.)  However she never complained about any of these matters until August 2007. (Id.)  After she complained about these matters to HR in August 2007, she never had issue with any of these items again. (Tr. 251:20-253:4.)

Though McCarthy testified that she "felt" that her promotion was based on her sexual activity, and she had this "impression", she never offered any evidence that this was the case.  (Tr. 35:2-36:13, 39:21-40:10.) When asked why she "felt" that her promotion was based on her sexual activity, she testified that Madsen told her "that I needed to keep up the good word and that she could tell that I was so company minded because I'd work on the weekends and I would work after hours, and that was because I wasn't getting laid and I wasn't getting any." (Tr. 36:9-13.)  Similarly, McCarthy testified that Madsen told her if she wanted to be on the succession list then she should not have a boyfriend, and that this was McCarthy's personal "belief" and that "I was on the succession list because I put the company first and I didn't have sex and I didn't have a relationship with a man." (Tr. 38:7-20, 52:9-53:1.)

Nothing in this testimony indicates that McCarthy would only be promoted if she refrained from sexual activity.  At worst, it establishes that Madsen gave McCarthy advise that she found offensive: if you focus on your career instead of dating, you will be more successful. McCarthy never testified that Madsen told her that she would not be promoted if she had a boyfriend or relations with other men.

McCarthy further testified that on two instances on the same day in October 2007, Madsen touched her leg for between 1-2 seconds, and then touched her leg again for a couple of seconds with her shoes under a dinner table.  (Tr. 140:24-141:5, 143:10-144:23, 146:20-147:21, 250:18-251:19.) Schmitt testified that on one occasion, Madsen kicked her under a table (though she

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

4

(NO. 2:09-CV-02495-WBS-DAD)

1  does not claim that this was in any way sexual). This alleged conduct that Plaintiffs testified to does

2  not constitute sexual harassment. *See Pavao*, 1998 U.S. Dist. LEXIS 20431, at *4.

3      In *Pavao* the male plaintiff filed a Title VII action for sexual harassment claiming that

4  his male supervisor was harassing him by: (1) putting his arm around plaintiff and saying "If you

5  can't cut the mustard, you gotta lick the jar"; (2) addressing co-workers with statements such as

6  "Come on, girls" and "Let's get the ball rolling girls"; (3) greeting plaintiff by saying "Hi Sunshine";

7  (4) tricking plaintiff into testing soup stock from his finger; and (5) "occasionally touch[ing] the

8  plaintiff on the arms, shoulders, and neck." *Id.* The Court granted summary judgment for the

9  employer and held: "These incidents cannot reasonably be thought to add up to sexual harassment."

10  *Id.* The Court reasoned that these "actions and statements constitute workplace banter and incidental

11  physical contact, nothing more." *Id* at *4-5.

12      Similarly, Madesen's comment to McCarthy and Schmitt that they should each be a

13  "top girl" does not constitute sexual harassment as a matter of law, even when viewed with the other

14  comments and brief instance of touching McCarthy alleges. (37:13-23.) Courts have held far more

15  offensive conduct did not constitute sexual harassment. *See, e.g., Nasser v. AT&T Corp.*, 2007 U.S.

16  Dist. LEXIS 27956, *26 (N.D. Cal. Apr. 16, 2007) (*aff'd* at 307 Fed. Appx. 103 (9th Cir. 2009)) (the

17  "occasional vulgar banter, tinged with sexual innuendo" does not constitute sexual harassment);

18  *Schmidt v. Canadian Nat'l RR Corp.*, 2007 U.S. App. LEXIS 6233, *7 (7th Cir. 2007) ("Neither

19  vulgar banter, nor occasional, non-extreme instances of short physical contact or staring are

20  generally sufficient to allow an inference of an objectively hostile environment . . . .") (internal

21  citations omitted); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that

22  plaintiff's complaints of eight gender-related comments during the course of her employment,

23  including that "the only valuable thing to a woman is that she has breasts and a vagina," was

24  insufficient to demonstrate a hostile work environment); *Adusumilli v. City of Chicago.*, 164 F.3d

25  353, 361-62 (7th Cir. 1998) (holding that plaintiff's complaints of teasing; ambiguous comments

26  about bananas, rubber bands, and low-neck tops; staring and attempts to make eye contact; and four

27  isolated incidents where a co-worker briefly touched her arm, fingers, or buttocks did not constitute

28  sexual harassment). Hence, McCarthy cannot demonstrate sexual harassment merely because

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

5

(NO.  2:09-CV-02495-WBS-DAD)

1    Madsen allegedly talked about sex or occasionally made her feel uncomfortable with two alleged

2    instances of brief touching.

3            For these reasons, neither Plaintiff can establish that Madsen's conduct, even if it was

4    sexual in nature, constitutes sexual harassment.

### 3. Defendant exercised reasonable care to prevent harassment, and Plaintiffs' unreasonably failed to report alleged harassment.

7            Even if Plaintiffs could prove that they were subjected to a hostile work environment,

8    and that such conduct was because of their gender, the *Faragher/Ellerth* defense provides Defendant

9    with a complete defense to their sexual harassment allegations. *See Burlington Indus. v. Ellerth*, 524

10   U.S. 742, 764 – 765 (1998); *Faragher*, 524 U.S. at 806.    According to *Faragher/Ellerth*, an

11   employer cannot be held liable on a theory of hostile work environment if no tangible employment

12   action for refusal to submit to sexual advances has been taken, and the employer can demonstrate: 1)

13   that the employer used reasonable care to prevent and correct promptly any sexual harassment and 2)

14   that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities

15   provided by employer. *Id.*  Defendant can establish the elements of this defense as a matter of law

16   and undisputed fact.

### a. No tangible employment action was taken against Plaintiffs for refusal to submit to alleged sexual advances.

18           As the United States Supreme Court stated:

19   > When a plaintiff proves that a tangible employment action resulted from
20   > refusal to submit to a supervisor's sexual demands, he or she establishes
21   > that the employment decision itself constitutes a change in the terms
22   > and conditions of employment that is actionable under Title VII.

22   *Burlington Indus., Inc.*, 524 U.S. at 753 – 754.    For purposes of the *Faragher/Ellerth* defense, a

23   tangible employment action means a significant change in employment status, such as "hiring, firing,

24   failing to promote, reassignment with significantly different responsibilities or a decision causing a

25   significant change in benefits." *Ellerth*, 524 U.S. at 761.    In most cases, a tangible employment

26   action inflicts direct economic harm. *Id.* at 762.

27           McCarthy testified that Madsen made inappropriate statements to her prior to the

28   human resources investigation, but that no tangible action resulted.    McCarthy's allegation of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

6

1   Madsen's inappropriate touching in October 2007 does not have any connection to her contention

2   that she was later disciplined or not promoted.  McCarthy does not claim that Madsen asked for any

3   sexual favors in exchange for, or with a threat of not receiving, any job benefits.   Assuming

4   *arguendo* Madsen did touch McCarthy's leg in the car, and/or touch her foot to McCarthy's pants

5   under a table in a restaurant, there is no evidence to link these allegations to any tangible

6   employment action. Similarly, Schmitt was not subject to any adverse employment action, including

7   the alleged kick she received under the table on one occasion from Madsen (which she never

8   reported).

9           **b.      Defendant used reasonable care to prevent and correct alleged**
                       **sexual harassment.**
10

11          To show that it used reasonable care to prevent and correct sexual harassment, an

12   employer may show that it has in place a preventive procedure "calculated to encourage victims of

13   harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).  The

14   question is not whether the employer's policy is perfect, but whether the employer's actions as a

15   whole created a reasonable mechanism for prevention and correction. *Holly D. v. California Inst. of*

16   *Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003).  An employer may demonstrate that it used reasonable

17   care to "promptly" correct reported sexual harassment by launching a prompt investigation to

18   determine whether the complaint is justified. *Swenson v. Potter,* 271 F.3d 1184, 1193-96 (9th Cir.

19   2001).  A good faith investigation of alleged harassment satisfies the prompt response standard, even

20   if the investigation turns up no evidence of harassment. *Id.* at 1196-97.

21          In this case, Defendant met and exceeded its legal obligations in attempting to

22   provide its employees with a safe and harassment free working environment and a mechanism by

23   which to report complaints. (Ex. A; Tr. 226:10-227:1.)  Defendant has a zero tolerance harassment

24   policy which is distributed to all employees at the time they are hired.  (Id.)  Further, Defendant has

25   a hotline by which employees may call and report complaints anonymously, which Plaintiffs

26   themselves called in August 2007.  (Ex. A; Tr. 62:24-63:11.)

27          In response to Plaintiffs' calls to the hotline, Defendant conducted an immediate and

28   prompt investigation.  Specifically, within only a few days of McCarthy's call to HR, a member of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

7

(NO.  2:09-CV-02495-WBS-DAD)

1   HR named Rene Duszynski called her back and they spoke for between 45 minutes to an hour about

2   McCarthy's concerns.  (Tr. 62:24-63:11.)  Within a few weeks of this call, HR held a meeting (via

3   Ms. Duszynski) with McCarthy's entire division to discuss these concerns.  (Tr. 64:3-67:1.)   At this

4   meeting the attendees received sexual harassment training and Ms. Duszynski reiterated that R.J.

5   Reynolds "had a zero tolerance on sexual harassment".  (Tr. 248:17-249:5.)

6          According to McCarthy, the first HR meeting to address her concerns was held on

7   September 12, 2007, and then a second meeting to address her concerns was held on September 26,

8   2007.  (Tr. 71:19-22.)  At this second meeting, Madsen apologized for using profane language.  (Tr.

9   89:8-10.)   Hence, it is not disputed that HR held two division-wide meetings to investigate and

10  address McCarthy's concerns immediately after she expressed them to HR in late August 2007.

11         McCarthy testified that she sent an email in October and again on December 13, 2007

12  to Rene Duszynski, Jennifer Sanders and Mark Sullivan, complaining that she felt that she was being

13  retaliated against by Madsen.  (Tr. 150:8-158:2.)  McCarthy then went on leave until January.  (Tr.

14  196:17-21.)  When she returned in January, Madsen was no longer her supervisor (Brian Fedewa

15  was now her supervisor) and other than a couple of emails from Madsen she had no more

16  communications with her.  (Tr. 192:13-193:5.)  Ms. Sanders responded to this email in January by

17  calling McCarthy upon her return from leave and told her that HR would investigate her concerns.

18  (Tr. 163:21-164:9.)[1]

19         Most importantly, after McCarthy's complaint to HR in August 2007, she was never

20  subjected to inappropriate language by Madsen, never subjected to sexual innuendo or comments by

21  Madsen, and, with the exception of two alleged incidents in October where Madsen touched

22  McCarthy's pants for a couple of seconds, never experienced any other inappropriate conduct from

23  Madsen.  (Tr. 251:20-253:4.)  Schmitt similarly admitted that she never had issue with Madsen's

24  behavior after the open dialogue meeting in September 2007.

25  _____

26  [1] McCarthy further testified that in March 2008, she had a meeting with members of HR to complain that she felt that a
    write-up she received from Madsen based on events that occurred in November was retaliatory.  (Tr. 173:24-175:4.)

27  However, she acknowledges that the write-up was for not working on that day and that she was in fact not working in the
    field that day—instead she spent the entire day doing expense reimbursement forms.  (Id.)  Even if McCarthy felt that
    this was an unfair write-up it is not retaliatory nor can she rebut the legitimate non-retaliatory reason for the write-up

28  (i.e., it should not take 8 hours to fill out reimbursement forms).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A                    8                    (NO.  2:09-CV-02495-WBS-DAD)
MATTER OF LAW PURSUANT TO RULE 50(A)

### c. Plaintiffs' unreasonably failed to report the alleged harassment.

Although Plaintiffs' claim Madsen made inappropriate statements to them for at least several months (from March through August 2007), Schmitt and McCarthy unreasonably delayed reporting the alleged harassment until late August 2007. (Tr. 57:16-21.) McCarthy contends that Madsen engaged in inappropriate behavior by: (1) using vulgar language; (2) cussing; (3) talking about sexual positions; and (4) commenting on John Walker being gay. (Tr. 244:14-245:10.) However she never complained about any of these matters until August 2007. (Id.) Importantly, after she complained about these matters to HR in August 2007, she never heard the vulgar language, cussing or talking about sexual positions or John Walker. (Tr. 251:20-253:4.) In other words, as soon as she complained, the conduct stopped. (*Id.*) Schmitt complained about similar items, and also conceded that after their complaint, she never had any of these issues with Madsen again.

In addition, McCarthy testified that she never reported Madsen's allegedly inappropriate touching – which purportedly occurred in October 2007 – until July 2008. (Tr. 253:20-254:11.) As a result, Defendant cannot be held liable to Plaintiffs for alleged harassment. *Ellerth, supra,* 524 U.S. at 766; *Holly D., supra,* 339 F.3d at 1158 [affirming summary judgment dismissing claim of sexual harassment where employee did not seek relief from employer until a full year of unwelcome sexual activity, almost two years after first sexual incident]. Defendant is aware that McCarthy changed this testimony on re-direct and claims that she did in fact orally tell two members of HR about this incident. Setting aside the admission that she made under oath that she never did report this alleged incident until July 2008 (both in trial and at her deposition), McCarthy's claim would still be subject to the *Faragher/Ellerth* defense because when she made her written complaint in July 2008, HR immediately attempted to investigate. McCarthy admitted that she chose not to participate in the investigation and did not want to cooperate because she felt it would be unproductive. Similarly, though Schmitt testified that she was kicked once under a table by Madsen, she admits that she never reported this incident at all (indeed, she did not even mention it at her deposition).

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

(NO. 2:09-CV-02495-WBS-DAD)

McCarthy offers two explanations for why she failed to report Madsen's alleged vulgar language and other inappropriate behavior until August 2007, neither of which make any sense.

First, McCarthy testified that her division had to commit not to "gossip" at the second HR meeting (the September 26 meeting). (Tr. 78:13-21, 87:8-13.) Her understanding was that this meant that nobody could complain to HR and that she was being chastised for bringing such a claim. (Id.) Her interpretation of what is meant by refraining from gossip is patently unreasonable. Though she also claims that "someone" tried to define what gossiping meant, she does not say who this person was, or whether this was her interpretation of what was said or rather what was actually said—and whether the person who said that was a member of HR or management or merely another co-worker. (Tr. 87:8-13.) Even if she sincerely believed that "do not gossip" meant "do not file a claim with HR for sexual harassment", her interpretation is so patently unreasonable that R.J. Reynolds cannot be held liable for it. Moreover, this directive in September 2007 could not explain why McCarthy failed to complain about Madsen's conduct between March-August 2007.

Similarly, McCarthy testified that the Regional Manager and Madsen's supervisor, Mark Sullivan, told her not to bring "any negativity" into her region. (Tr. 16:19-17:7, 19:12-25.) During McCarthy's alleged interview with Mr. Sullivan, wherein he was allegedly going to decide whether to put her on a succession list, he told Plaintiff McCarthy that he "did not want any negativity being brought down onto his region, and so he wanted me to be very pro management and pro the Sacramento area . . ." (Id.) Nowhere in this conversation does Mr. Sullivan say that by "negativity" he did not want people to exercise their right to utilize R.J. Reynolds' complaint procedures if they feel that they have been harassed or retaliated against. (Id.) Moreover, McCarthy could not believe that this comment about not bringing negativity into the region could have been in response to her August 2007 complaint because he allegedly made this comment in July 2007. (Id.) Similarly, his comment regarding "negativity" does not explain why McCarthy failed to complain about Madsen's behavior from March-July (and obviously had no impact on her complaining just a few weeks later in August).

As is clear, nobody from R.J. Reynolds ever gave McCarthy or Schmitt any

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

10

(NO. 2:09-CV-02495-WBS-DAD)

1   indication that they should not follow company procedure and complain if either of them felt that she

2   was being harassed or retaliated against.  Hence, their sexual harassment claim—even if they could

3   establish one—is barred by the *Faragher/Ellerth* defense.

4   **B.   PLAINTIFFS' RETALIATION CLAIMS FAIL**

5          Plaintiffs' retaliation claims fail for two separate reasons: (1) Plaintiffs did not engage

6   in protected conduct by complaining of sexual orientation discrimination, as sexual orientation is not

7   protected by Title VII; and (2) Plaintiffs were not subjected to any adverse employment action that

8   could be causally linked to the complaint.

9          **1.   Plaintiffs' complaint to Human Resources about sexual orientation
            discrimination is not protected conduct under Title VII.**
10

11         An employee has engaged in protected activity under Title VII if he/she has either

12  "(1) opposed any practice made unlawful by Title VII or (2) made a charge, testified, assisted, or

13  participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C.

14  §2000e-3(a).  McCarthy testified that she contacted human resources for the first time in August of

15  2007 primarily to complain about "antihomosexual remarks" Madsen allegedly made about John

16  Walker.  (Tr. 57:16-59:3.)  Madsen's treatment of Mr. Walker, including her allegedly terminating

17  him because of his sexual orientation, was the "catalyst" for McCarthy's call to HR in August 2007;

18  her "motivating factor" in calling HR.   (Tr. 57:16-59:3, 59:22-60:11, 148:16-20, 246:17-25.)

19  Schmitt similarly testified that the reason she contacted HR was because of her concern for Mr.

20  Walker.

21         However, sexual orientation is not a protected classification under Title VII.   42

22  U.S.C. § 2000e-2(a)(1); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 264 (3rd Cir.

23  2001); *Hamner v. St. Vincent Hospital and Health Center*, 224 F.3d 701, 704 (7th Cir. 2000).   It

24  follows that Plaintiffs did not engage in protected activity when they complained of sexual

25  orientation discrimination against John Walker.  Title VII's anti-retaliation provisions do not apply

26  to them with respect to those alleged complaints.  42 U.S.C. § 2000e-3(a); *Montanez v. Education*

27  *Technology College*, 660 F.Supp.2d 235, 243 (D.C. Puerto Rico 2009).

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

11

(NO. 2:09-CV-02495-WBS-DAD)

1       **2.**     **Plaintiffs did not suffer any adverse employment action.**

2       To the extent Plaintiffs contend that they were retaliated against because Madsen

3 began calling them and "checking in" on them while they were working, and they were asked to

4 generate pointless spreadsheets, these trivial alleged actions are not adverse employment actions

5 because they did not <u>materially</u> affects the compensation, terms, conditions or privileges of

6 employment. *Burlington Northern & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 67 – 68 (2006)

7 *Ellerth*, 524 U.S. at 761 [noting that "a tangible employment action constitutes a <u>significant change</u>

8 <u>in employment status</u>, such as hiring, firing, failing to promote, reassignment with significantly

9 different responsibilities, or a decision causing a significant change in benefits" (emphasis added)];

10 *Hilt-Dyson v. Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002).

11       McCarthy complains that after the September 2007 HR meetings, Madsen rejected

12 her expense reports (though eventually she accepted all of them), asked her to move fixtures, asked

13 her to generate spreadsheets, called her at 8:00 in the mornings (by which time she had already

14 began working), and changed information on her timecards—though this had no effect on McCarthy

15 because she was an exempt employee. (Tr. 95:2-97:14, 100:14-19, 225:23-226:3, 257:16-18,

16 271:12-23.) Schmitt made similar allegations. However, Plaintiffs provide no evidence regarding

17 whether Madsen called other employees early in the morning, or asked them to move fixtures or

18 were asked to generate spreadsheets. The mere fact that they testified that they personally were not

19 aware of her engaging in similar activity with other employees is not affirmative evidence that she

20 did not do so. Plaintiffs clearly fail to meet their burden of persuasion in this regard.

21       Moreover, McCarthy concedes that from the time Madsen began giving her personal

22 performance reports ("PPRs") until October 2007, there was never any negative PPRs. (Tr. 239:4-

23 8.) This is important because these PPRs were one of the methods in which employees are provided

24 feedback. (Tr. 235:1-9.) Hence, even a month after the two September meetings with HR, Madsen

25 was not giving negative performance reviews to McCarthy. In any event, taken in their totality,

26 these complaints that Plaintiffs had did not amount to a significant change in employment status, and

27 therefore they cannot establish that either suffered any tangible adverse employment action in

28 retaliation for their complaint (even if the complaint to HR was protected conduct). *Hilt-Dyson*, 282

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

12

(NO. 2:09-CV-02495-WBS-DAD)

1    F.3d at 465-66.

2        Moreover, Plaintiffs failed to present any evidence that the conduct they allege was

3    adverse was causally connected to their HR complaint, other than the timing of the events.

4    However, timing alone does not demonstrate retaliation occurred and engaging in protected conduct

5    does not immunize an employee from adverse employment actions—including termination, or from

6    following company policies. *See Marr v. Anderson*, 611 F. Supp. 2d 1130, 1144-45 (D. Nev. 2009)

7    ("Beyond the timing of the [protected conduct] and the adverse actions, Plaintiff has cited to no

8    other evidence indicating that Defendant Anderson possessed a retaliatory motive.  Accordingly, the

9    court finds that no reasonable jury could conclude, based on evidence before the court, that

10   Plaintiff's [protected conduct] played a substantial or motivating role in Defendant Anderson's

11   decision to place Plaintiff on administrative leave and ultimately to terminate Plaintiff."); *Swanson v.*

12   *GSA*, 110 F.3d 1180, 1188, n.3 (5th Cir. 1997) ("If timing *alone* were enough [to show retaliation],

13   any action taken against Swanson after June 1990, no matter how justified, could be sustained as

14   discriminatory.  Title VII's protection against retaliation does not permit EEO complainants to

15   disregard work rules or job requirements.").

16   **C.**    **PLAINTIFFS FAILED TO INTRODUCE ANY EVIDENCE FOR A CLAIM**
17           **FOR FRONT-PAY**

18       Neither McCarthy nor Schmitt can recover any front-pay because they did not call an

19   expert to testify about their future wage earning potential. *See McKenna v. City of Philadelphia*, 636

20   F. Supp. 2d 446, 466-67 (E.D. Pa. 2009).[2]

21   **D.**    **PLAINTIFF SCHMITT WAS NOT CONSTRUCTIVELY DISCHARGED**

22       Whereas McCarthy was terminated for being unable to return to work due to her

23   complete disability, Schmitt voluntarily resigned her job on October 27, 2008.  (Ex. 42.)  Schmitt

24   has failed to offer any evidence that would allow a reasonable juror to conclude that she was

25       [2] Even if the Court had not already ruled that Plaintiffs were barred from seeking back-pay or lost wages, McCarthy

26   would still not be able to claim any back-pay from the time the Social Security Administration deemed her completely disabled in April 2008 (regardless of her contention that she wanted to work). *See Fredenburg v. Contra Costa County*

27   *Dep't. Health Svsc.*, 172 F.3d 1176, 1181 (9th Cir. 1999); *Crenshaw v. Sun Microsystems, Inc.*, 2007 U.S. Dist. LEXIS 32440, *1-4 (N.D. Cal. Apr. 19, 2007).  Similarly, the Court should hold that McCarthy's termination was not retaliatory

28   or unlawful because of her admission that she was receiving disability based on her representation that she is completely disabled and unable to work.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

13

1   constructively discharged.

2   "In order to establish a constructive discharge, an employee must plead and prove . . .

3   that the employer either intentionally created or knowingly permitted working conditions that were

4   so intolerable or aggravated at the time of the employee's resignation that a reasonable employer

5   would realize that a reasonable person in the employee's position would be compelled to resign."

6   *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1251 (1994). "The conditions giving rise to the

7   resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a

8   competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve

9   his or her employer. The proper focus is on whether the resignation was coerced, not whether it was

10  simply one rational option for the employee." *Id.* at 1246.

11  "[T]he standard by which a constructive discharge is determined is an objective

12  one—the question is 'whether a reasonable person faced with the allegedly intolerable employer

13  actions or conditions of employment would have no reasonable alternative except to quit.' " *Id.* at

14  1248 [internal citations omitted].

15  Where the misconduct attributed to the employer constitutes actions that are a normal

16  part of the employment relationship, such as demotion, failure to promote, decrease in pay, or

17  performance criticism, such actions will not support a finding of constructive discharge. *Id.* at 1247

18  [failure to promote, even if unlawfully discriminatory, is not sufficient]; *Huskey v. City of San Jose*,

19  204 F. 3d 893, 901 (9th Cir. 2000) [employee who was told he "would be referred to counseling,"

20  assigned undesirable cases, and given "the cold shoulder" by colleagues not sufficient to justify

21  resignation]; *King v. AC & R Advertising*, 65 F. 3d 764, 768 (9th Cir. 1995) [managerial

22  responsibilities reduced and compensation plan altered, including lower pay and bonus not

23  constructive discharge]; *Addy v. Bliss & Glennon*, 44 Cal. App. 4th 205, 219 (1996) (same); *Casenas*

24  *v. Fujisawa USA, Inc.*, 58 Cal. App. 4th 101, 115 (1997) [unfavorable performance rating and failure

25  to promote not constructive discharge].

26  In *Turner v. Anheuser-Busch, Inc., supra*, an employee claimed that he: (1) had

27  observed illegal acts by his co-workers that he reported to management; (2) was reassigned to a

28  lesser paying position in retaliation for those reports; and (3) was given a poor performance rating

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

14

(NO. 2:09-CV-02495-WBS-DAD)

1    that ultimately forced him to resign from his job four years later.  Even though the wrongful acts

2    complained of in *Turner v. Anheuser-Busch, Inc., supra*, were more pervasive than those alleged by

3    Plaintiffs here, the California Supreme Court, nonetheless, rejected the plaintiff's constructive

4    discharge claim, holding that the adverse working conditions were neither unusually "aggravated"

5    nor did they amount to a "continuous pattern."  *Id.* at 1247.  According to the court, "single, trivial,

6    or isolated acts of misconduct are insufficient to support a constructive discharge claim."  *Id.*

7    Furthermore, the court stated:

8            An employee may not be unreasonably sensitive to his working
             environment . . . .  Every job has its frustrations, challenges, and
9            disappointments; these inhere in the nature of work.  An employee is
             protected from . . . unreasonably harsh conditions, in excess of those
10           faced by his co-workers.  He is not, however, guaranteed a working
             environment free of stress.
11
     *Id.* [quoting *Goldsmith v. Mayor and City of Baltimore*, 987 F.2d 1064, 1072 (4th Cir.
12
     1993]; see also *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163 (3rd Cir. 2001)[reaffirming that, in
13
     order for an employee to establish a claim of constructive discharge, he or she must show a *pattern*
14
     *of conduct* that is intolerable, not merely stressful and frustrating].  The court also recognized: "The
15
     mere existence of illegal conduct in a workplace does not, without more, render employment
16
     conditions intolerable to a reasonable employee."  *Id.* at 1254.
17
             As noted above, the conduct that Schmitt alleges she was "subjected to" fail to meet
18
     the standard necessary to prove constructive discharge under California law, even if she can prove
19
     she was the subject of unlawful harassment or retaliation.  Moreover, Schmitt testified that she was
20
     on leave from June 5, 2008, until she quit on October 27, 2008.  She had no contact with Madsen
21
     throughout this time period so she cannot possibly claim that the events from June-October were so
22
     unbearable that a reasonable person in her position would have quit.  *See id.*
23
     **E.    PLAINTIFFS FAILED TO INTRODUCE SUFFICIENT EVIDENCE FOR A
24           CLAIM FOR PUNITIVE DAMAGES**

25           **1.     Plaintiffs have failed to meet the *prima facie* elements for punitive
                     damages on their state law claim.**
26
             Under California law, proof of defendant's finances is a prerequisite to a punitive
27
     damages award.  *Adams v. Murakami*, 54 Cal.3d 105, 110 (1991); *Barnes v. Logan*, 122 F.3d 820,
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

15

(NO. 2:09-CV-02495-WBS-DAD)

1    824 (9th Cir. 1997); Cal. Code of Civ. Proc. § 3294.  Plaintiffs have failed to call any witnesses to

2    testify about the financial condition of Defendant and therefore have not established Defendant's

3    financial condition, as is their burden to establish they are entitled to punitive damages.  This entitles

4    Defendant to judgment as a matter of law on Plaintiffs' claims for punitive damages on their state

5    law claim of tortious adverse employment action.  *Id.*

6         **2.     Defendant is entitled to judgment as a matter of law on Plaintiffs' claims**
7              **for punitive damages on their Title VII claims.**

8         Plaintiffs failed to comply with Rule 26(a)(1)(A)(iii), which required them to provide

9    a computation of damages in their initial disclosures.  By failing to provide any computation of

10   damages, Plaintiffs are barred from seeking punitive damages, even on their Title VII claim.  *See*

11   *Estate of Gonzalez v. Hickman*, 2007 U.S. Dist. LEXIS 84390, *15-17 (C.D. Cal. June 28, 2007);

12   *Davis v. Harris*, 2006 U.S. Dist. LEXIS 88000, *9-12 (C.D. Ill. Dec. 5, 2006).

13        **3.     Plaintiffs cannot establish that an officer, director or managing agent**
14             **engaged in malice.**

15        An employer cannot be liable for punitive damages based solely on its liability for the

16   acts of its employees under the doctrine of respondeat superior.  *College Hospital, Inc. v. Superior*

17   *Court*, 8 Cal.4th 704, 723 (1994).  The law does not impute every employee's malice to the

18   corporation.  Instead, the punitive damages statute requires proof of malice among corporate officers,

19   directors or managing agents. *Cruz v. HomeBase*, 83 Cal.App.4th 160, 167 (2000) (supervisor for

20   security at outlet of retail store was not managing agent as a matter of law). "By so confining

21   liability, the statute avoids punishing the corporation for malice of low-level employees which does

22   not reflect the corporate 'state of mind' of the intentions of corporate leaders." *Id.* at 167.

23        To be entitled to punitive damages from R.J. Reynolds, Plaintiffs must prove, by clear

24   and convincing evidence:

25        1.     That the conduct constituting malice, oppression, or fraud was committed by

26   one or more officers, directors, or managing agents of R.J. Reynolds who acted on behalf of R.J.

27   Reynolds; or

28        2.     That the conduct constituting malice, oppression, or fraud was authorized by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

16

(NO.  2:09-CV-02495-WBS-DAD)

1    one or more officers, directors, or managing agents of R.J. Reynolds; or

2             3.    That one or more officers, directors, or managing agents of R.J. Reynolds

3    knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct

4    after it occurred.

5    CACI 3946. Plaintiffs cannot establish any of these.

6             a.    **There is no evidence of conduct that constitutes malice, oppression
                   or fraud.**

7

8             "Malice" means conduct which was intended by R.J. Reynolds to cause injury to

9    Plaintiffs or despicable conduct carried on with a willful and conscious disregard of the rights and

10   safety of others, when the perpetrator is aware of the probable dangerous consequences of it or the

11   conduct and willfully and deliberately fails to avoid those consequences. "Oppression" means

12   despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that

13   person's rights. "Despicable conduct" is conduct that is so vile, base, contemptible, miserable,

14   wretched or loathsome that it would be looked down upon and despised by ordinary decent people.

15   "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to

16   the defendant with the intention of thereby depriving a person of property or legal rights or otherwise

17   causing injury. Cal. Civil Code §3294; *Commodore Home Systems, Inc. v. Superior Court of San*

18   *Bernardino County*, 32 Cal. 3d 211, 221 (1982); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299

19   (9th Cir. 1998).

20            McCarthy's claim that her supervisor made inappropriate comments to her during

21   work-withs and touched her for a couple of seconds on two instances the same day falls short of the

22   mark for establishing malice, oppression, or despicable conduct—even if she could establish that

23   Madsen was a "managing agent", which she cannot.

24            Similarly, Schmitt's claim that Madsen used sexual language on occasion with her,

25   particularly regarding Mr. Walker. However, Schmitt admitted that Madsen never asked Schmitt

26   about Schmitt's own sexual activities. Hence, Schmitt also fails to establish malice, oppression or

27   despicable conduct.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

(NO. 2:09-CV-02495-WBS-DAD)

1    **b.      There is no evidence that a corporate officer or director made any
        decisions with respect to Plaintiffs' employment.**

2

3        To prevail on their claim for punitive damages, Plaintiffs must demonstrate that one

4    or more officers or directors of R.J. Reynolds engaged in conduct constituting malice, oppression, or

5    fraud.   Because the only claim against R.J. Reynolds on which Plaintiffs may obtain punitive

6    damages is sexual harassment or retaliation, Plaintiff must prove that (1) a corporate officer or

7    director made a decision or act that could be considered sexual harassment or retaliation and (2) such

8    conduct was committed with malice, oppression or fraud.

9        Here, there is no evidence that a corporate officer or director made any decisions with

10   respect to the decision to harass or retaliate against Plaintiffs.  In fact, the undisputed evidence shows

11   that once McCarthy complained about Madsen's alleged harassment, two HR meetings were held

12   within weeks of her complaint to address her concerns, and that she never again heard any foul

13   language or talk of sexual positions from Madsen. (Tr. 251:20-253:4.)   Similarly, McCarthy did not

14   make a written complaint about Madsen allegedly touching her leg in October 2007 until June 2008,

15   despite having made numerous other complaints about her job.   Though McCarthy changed her

16   testimony on re-direct examination and claimed, in contradiction of her testimony on direct

17   examination and cross-examination, that she never reported the October 2007 touching incident until

18   June 2008, the brief one to two second encounter on two instances with Madsen was insufficient to

19   establish malice.   Likewise, Plaintiffs have failed to establish that a corporate officer, director or

20   managing agent had any role in this alleged incident, nor that they condoned it.  Thus, Plaintiffs have

21   not established this element of their punitive damage claim.

22   **c.      There is no evidence that a managing agent made any decisions
        with respect to Plaintiffs' employment.**

23

24        "In California, managing agents have been defined 'to include only those corporate

25   employees who exercise substantial independent authority and judgment in their corporate decision

26   making so that their decisions ultimately determine corporate policy.'"  *Scarff v. Wells Fargo Bank,*

27   *N.A.* (N.D. Cal. Jan. 13, 2010) 2010 U.S. Dist. LEXIS 2572, *20-21, quoting *White v. Ultramar, Inc.*

28   (1999) 21 Cal.4th 563, 566-67.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

18

(NO.  2:09-CV-02495-WBS-DAD)

1    In *Scarff*, the court was discussing the availability of punitive damages pursuant to

2   Cal. Civ. Code 3294(b).  The court held that an employee could be a supervisor without being a

3   "managing agent" and explained the difference, by citing the California Supreme Court:

4               [S]upervisors who have broad discretionary powers and exercise
5               substantial discretionary authority in the corporation could be
                managing agents.  Conversely, supervisors who have no discretionary
6               authority over decisions that ultimately determine corporate policy
                would not be considered managing agents even though they may have
7               the ability to hire or fire other employees.

8   *Scarff*, 2010 U.S. Dist. LEXIS 2572, at *23, quoting *White*, 21 Cal.4th 563 at 577.

9    In *White*, 21 Cal.4th at 577-78, a "zone manager" responsible for managing eight

10   retail stores and 65 employees was held to be a "managing agent" in a wrongful termination case

11   because her superiors had delegated the responsibility for running the stores to her. The Court held

12   that this delegation resulted in the employee having the authority to make significant decisions

13   affecting company policy regarding these stores, exposing the company to liability for punitive

14   damages based on her wrongfully terminating an employee.  *See id*.  The Court distinguished the

15   *White* case from another case where a supervisor was found not to be a managing agent because he

16   had no authority to establish or change the company's business policies; the authority regarding the

17   company's business policies rested in the parent company in another state; the main office was in

18   charge of business operations, and set not only business policies and guidelines but also employee

19   reviews; and the supervisor could not set the plaintiff's salary or approve a raise for her without the

20   main office's authorization.  *See id* at 573-74, citing, *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22

21   Cal.App.4th 397, 421 (Supervisor was the highest-ranking person in the employer's Southern

22   California offices and had immediate and direct control over the plaintiff, including authority to

23   terminate her employment. Nevertheless, he was not a "managing agent" within the meaning of Cal

24   Civil § 3294 because he did not have authority to change or set corporate policy established at

25   employer's headquarters).

26    The Supreme Court further clarified their decision in *White* in their recent decision in

27   *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 715, when the Court explained:

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

19

(NO.  2:09-CV-02495-WBS-DAD)

> When we spoke in *White* about persons having "discretionary authority over … corporate policy" we were referring to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership. It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice.

(internal citations omitted).

"The critical inquiry whether employees act in a managerial capacity is 'the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy.'" *Alcaraz v. Wachovia Mortgage, FSB* (E.D. Cal. Jan. 21, 2009) 2009 U.S. Dist. LEXIS 34009, *34, quoting *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822-23; *See also, Rose v. Munirs Co.* (E.D. Cal. Nov. 19, 2008) 2008 U.S. Dist. LEXIS 96822, *7 (finding that individual supervisors were not managing agents where their decisions did not "determine corporate policy."); *Cruz*, 83 Cal.App.4th at 168 (a corporation that owned a chain of retail stores was not subject to punitive damages based on tortious acts of a "loss prevention supervisor" at one of its stores. He was not a managing agent because he was subordinate to the store manager and his discretionary authority was limited to detaining and prosecuting shoplifters.)

Plaintiffs have failed to establish that Madsen is a managing agent, and in fact, has presented no evidence at all from which a jury could conclude that she was. Indeed, Plaintiffs have not even attempted to put into evidence any fact regarding whether Madsen may or may not be a managing agent. The testimony Plaintiffs instead have provided demonstrates that Madsen was merely a supervisor, not a managing agent, since she was only a district manager who had to report to the regional manager, Mark Sullivan. Since Madsen could not even get an employee put on the succession list without Sullivan's approval, it cannot seriously be said that she exercised discretion over corporate policy.

> **d.    There is no evidence that a corporate officer, director or managing agent authorized or knew and approved of conduct constituting malice, oppression, or fraud.**

"Ratification" requires actual knowledge of the wrongful act by the corporate officer and cannot be based merely on the fact that a corporate officer, director or managing agent could have learned of the misconduct. *Cruz*, 83 Cal.App.4th at 168.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

(NO. 2:09-CV-02495-WBS-DAD)

In *Cruz*, the plaintiff was a customer of HomeBase who was accused of stealing a sheet of plywood by a loss prevention representative of HomeBase, Meraz, and his supervisor, Kinsel. *Id.* at 163. The HomeBase employees detained Cruz, handcuffed him, kicked him, pushed him into a bench and a wall, spilled his wallet and its contents on the floor and called him derogatory names. They called the police and, even though Cruz had a receipt, had him arrested and he was taken to the station where he was stripped, searched, booked and held until his wife posted bail. *Id.* Under the above circumstances, which are dramatically harsher than those alleged by Plaintiff in the present matter, the Court of Appeal rejected Cruz's attempt to establish that HomeBase was liable for punitive damages for its employees' actions. *Id.* at 169.

Cruz sought to prove that HomeBase ratified the employees' conduct by retaining them as employees and failing to discipline them despite knowledge or reason to know of their mistreatment of Cruz. Cruz offered evidence that the employees had prepared reports or reported the incident to their supervisors, but the Court of Appeal found that the reports gave no notice to HomeBase because there was no information in said reports of an unjustified or outrageous attack on Cruz. *Id.* at 163-164. Indeed, the Court of Appeal held that Cruz had failed to present any testimony to show that the employees' superiors "actually knew" that the employees had committed intentional torts against Cruz. *Id.* at 164. The Court of Appeal held that a "corporation cannot confirm and accept that which it does not actually know about." *Id.* citing *College Hosp., Inc., supra* at 726. "Evidence that reports routinely submitted to the officers might have provided the occasion for further investigation, possibly leading to the discovery of employee misconduct, is not enough." *Id.*

*Cruz* also argued that one of the employees, Kinsel, was a managing agent whose malice should be imputed to the corporation. *Id.* at 166. The Court of Appeal also rejected this argument because there was no evidence that Kinsel was an officer or director and the evidence was insufficient as a matter of law to show that he was a managing agent. *Id.* at 168. The Court of Appeal remarked that there was not a "hint of evidence that he exercised authority over corporate principles or rules of general application in the corporation". *Id.* The Court of Appeal explained that, while Kinsel's decisions could have significant consequences, whether the corporation would be liable for punitive damages does not depend on such consequences but on whether the malicious employee

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

21

(NO. 2:09-CV-02495-WBS-DAD)

1   belongs to the leadership group of officers, directors and managing agents. *Id.*

2   In the present matter, Plaintiffs have not introduced any evidence that an officer,

3   director or managing agent of R.J. Reynolds had actual knowledge of any alleged misconduct by

4   Madsen, or anyone else, directed towards Plaintiffs, until Plaintiffs' complaint with HR in August

5   2007.   Immediately upon receiving their complaint, HR conducted an in-depth investigation, held

6   two HR meetings with McCarthy and her division in September 2007, and issued Madsen the most

7   severe form of reprimand short of termination R.J. Reynolds issues. Madsen was even forced to

8   apologize for her behavior. (Tr. 89:8-10.)   Moreover, after Plaintiffs' complaint they had never had

9   these issues of vulgar language or discussion of sexual positions.  (Tr. 251:20-253:4.)  Hence, far

10   from ratifying the conduct, R.J. Reynolds took immediate action to end the inappropriate alleged

11   conduct.

12   **IV.   CONCLUSION**

13   For the reasons aforementioned, Defendant requests judgment as a matter of law

14   based on the undisputed evidence in this case on Plaintiff McCarthy and Plaintiff Schmitt's claims

15   for sexual harassment and retaliation in violation of Title VII, and their tortious adverse employment

16   action claim.  Separately, whether or not the Court grants the motion on Plaintiffs' claims, Defendant

17   moves this Court to grant Defendant judgment as a matter of law on the issue of whether Plaintiff

18   Schmitt was constructively discharged, and also judgment on Plaintiffs' claims for front-pay wages

19   and punitive damages under Title VII and their tortious adverse employment action claims for the

20   reasons stated above.

21   Dated: June 7, 2011

22                                                    /s/_____
                                                      JEFFREY L. ADAMS
23                                                    ANNE-MARIE WAGGONER
                                                      TARUN MEHTA
24                                                    LITTLER MENDELSON
                                                      Attorneys for Defendant
25                                                    R.J. REYNOLDS TOBACCO COMPANY

26

27   Firmwide:101966702.1 006886.1028

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

22

(NO.  2:09-CV-02495-WBS-DAD)