JEFFREY L. ADAMS, Bar No. 148393
ANNE-MARIE WAGGONER, Bar No. 173407
TARUN MEHTA, Bar No. 262886
LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard, Suite 600
Walnut Creek, CA  94597
Telephone:     925.932.2468
jadams@littler.com
awaggoner@littler.com
tmehta@littler.com

Attorneys for Defendant
R.J. REYNOLDS TOBACCO COMPANY

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA MCCARTHY, KATHERINE SCHMITT,<br><br>Plaintiffs,<br><br>v.<br><br>R.J. REYNOLDS TOBACCO CO., and DOES 1-10,<br><br>Defendants. | Case No.  2:09-CV-02495-WBS-DAD<br><br>**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO RULE 59, AND A MOTION TO AMEND OR ALTER THE JUDGMENT**<br><br>Date:    August 29, 2011<br>Time:   2:00 p.m.<br>Courtroom 5; 14th Floor<br>The Honorable William B. Shubb<br><br>Action Filed:  September 4, 2009<br><br>Trial Date: June 1, 2011 |

LITTLER MENDELSON<br>A Professional Corporation<br>Treat Towers<br>1255 Treat Boulevard<br>Suite 600<br>Walnut Creek, CA  94597<br>925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(A)

(NO.  2:09-CV-02495-WBS-DAD)

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 1

    A.    R.J. Reynolds Is an Equal Opportunity Employer ....................................... 1

    B.    Plaintiffs Began Working as Trade Marketing Representatives in August 2006 ........ 2

    C.    Plaintiffs Began Reporting to Michelle Madsen in November 2006 ........................... 2

    D.    Plaintiffs' Complaint to HR and Defendant's Immediate Investigation ..................... 3

        1.    Plaintiffs Complained That Madsen Was Terminating a Male Employee Because He Is Homosexual ................................................. 3

        2.    R.J. Reynolds Immediately Investigated and Addressed Plaintiffs' Complaints ................................................................................. 4

        3.    Male and Female TMRs Complained of Madsen's Behavior During the September 2007 Investigation ........................................ 4

        4.    Plaintiffs' Complaints Were Fully Addressed by R.J. Reynolds .................... 5

    E.    Plaintiffs Never Reported to Madsen after December 2007 ........................................ 5

    F.    Plaintiffs Took Extended Leaves of Absence and Never Returned to Work .............. 6

III.  ARGUMENT ................................................................................................ 6

    A.    The Judgment on the Jury's Verdict Exceeds the Statutory Damages Caps under Title VII .............................................................................. 6

    B.    Defendant's Rule 50(b) Motion Should Be Granted .................................................. 7

        1.    Standard for Granting a Rule 50(b) Motion ...................................................... 7

        2.    Defendant Is Entitled to Judgment on Plaintiffs' Sexual Harassment Claims ................................................................................. 8

            a.    The Alleged "Harassment" Was Not Based on Plaintiffs' Sex .......... 9

            b.    The conduct alleged does not constitute sexual harassment ............. 11

                (1)    There was no quid-pro-quo harassment ................................. 11

                (2)    There was no hostile work environment ................................. 12

            c.    Defendant exercised reasonable care to prevent harassment from occurring and Plaintiffs unreasonably failed to report the alleged harassment ........................................................................ 14

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

i.

# TABLE OF CONTENTS
### (CONTINUED)

**PAGE**

    (1)    Defendant used reasonable care to prevent and correct alleged sexual harassment ........................................................ 15

    (2)    Plaintiffs unreasonably failed to report the alleged harassment for several months .............................................. 17

3.    Judgment Should Be Entered in Defendant's Favor on Plaintiffs' Retaliation Claims ............................................................................ 18

    a.    Plaintiffs' complaints of sexual orientation discrimination are not protected conduct under Title VII ................................. 18

    b.    Plaintiffs did not suffer any adverse employment action causally connected to their complaints ................................. 19

4.    Judgment Should Be Granted for Defendant on Plaintiffs' Punitive Damages Claims ............................................................................. 22

    a.    Defendant is entitled to judgment as a matter of law on the punitive damages claims because Plaintiffs did not comply with Rule 26(a)(1)(A)(iii) ................................................... 22

    b.    Judgment should be entered for R.J. Reynolds on Plaintiffs' punitive damages claims because Defendant did not recklessly disregard their federally protected rights ............................... 23

        (1)    Ms. Madsen's and Mr. Fedewa's conduct cannot be imputed to R.J. Reynolds ..................................... 23

        (2)    Defendant effectively implemented its stringent anti-harassment and anti-retaliation policy .................................. 24

C.    In the Alternative, the Court Should Order a New Trial ............................................. 25

    1.    It Was Error to Instruct the Jury That Sexual Orientation Is a Protected Classification under Title VII ........................................................... 25

    2.    The Verdict Was Against the Clear Weight of the Evidence ....................... 27

        a.    As the Court has previously acknowledged, the evidence does not establish sexual harassment .......................................... 29

        b.    McCarthy's allegation that Ms. Madsen touched her leg in October 2007 was fabricated ............................................... 29

        c.    Defendant had legitimate, non-retaliatory business reasons for each of the allegedly adverse employment actions ........................... 31

        d.    Plaintiffs exaggerated their "emotional distress" to obtain a compensatory damages verdict that far exceeds the monetary value of any "emotional distress" they may have suffered ............... 33

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

ii.

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

IV.    CONCLUSION................................................................................................... 34

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

# TABLE OF AUTHORITIES

Page(s)

CASES

*Adusumilli v. City of Chicago.,*
   164 F.3d 353 (7th Cir. 1998) ............................................................14

*Anderson v. Independent School Dist.,*
   357 F.3d 806 (8th Cir. 2004) ...............................................................7

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..............................................................................8

*Baty v. Willamette Indus.,*
   172 F.3d 1232 (10th Cir. 1999) ..........................................................7

*Bibby v. Phila. Coca Cola Bottling Co.,*
   260 F.3d 257 (3d Cir. 2001) ..............................................................26

*Bradley v. Harcourt, Brace and Co.,*
   104 F.3d 267 (9th Cir. 1996) .............................................................21

*Bryant v. Aiken Regional Med. Ctrs., Inc.,*
   333 F.3d 536 (4th Cir. 2003) .............................................................24

*Burlington Indus. v. Ellerth,*
   524 U.S. 742 (1998) ..........................................................14, 17, 19

*Burlington Northern & Santa Fe Rwy. Co. v. White,*
   548 U.S. 53 (2006) .............................................................................19

*Carr v. Wal-Mart Stores, Inc.,*
   312 F.3d 667 (5th Cir. 2002) .............................................................28

*Chaney v. City of Orlando,*
   483 F.3d 1221 (11th Cir. 2007) ..........................................................8

*Craig v. M & O Agencies, Inc.,*
   496 F.3d 1047 (9th Cir. 2007) ..........................................................11

*Crane v. Green & Freedman Baking Co.,*
   134 F.3d 17 (1st Cir. 1998) .................................................................8

*Davey v. Lockheed Martin Corp.,*
   301 F.3d 1204 (10th Cir. 2002) ........................................................24

*Davis v. Harris,*
   2006 U.S. Dist. LEXIS 88000 (C.D. Ill. Dec. 5, 2006) .....................23

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

iv.

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Dawson v. Bumble & Bumble,*
   398 F.3d 211 (2d Cir. 2005)..................................................................26

*DeSantis v. Pacivi Telephone & Telegraph Co.,*
   608 F.2d 327 (9th Cir. 1979) .......................................................19, 26, 27

*Estate of Gonzalez v. Hickman,*
   2007 U.S. Dist. LEXIS 84390 (C.D. Cal. June 28, 2007) ...........................23

*Etsitty v. Utah Transit Auth.,*
   502 F.3d 1215 (10th Cir. 2007) ...........................................................26

*Faragher v. City of Boca Raton,*
   524 U.S. 775 (1998)...............................................................12, 14, 15

*First Union Nat'l Bank v. Benham,*
   423 F.3d 855 (8th Cir. 2005) ................................................................8

*Gill v. Rollins Protective Svcs. Co.,*
   773 F.2d 592 (4th Cir. 1985) ...............................................................28

*Hemmings v. Tidyman's, Inc.,*
   285 F.3d 1174 (9th Cir. 2002) ...............................................................7

*Higgins v. New Balance Athletic Shoes, Inc.,*
   194 F.3d 252 (1st Cir. 1999)................................................................26

*Hilt-Dyson v. Chicago,*
   282 F.3d 456 (7th Cir. 2002) .........................................................19, 20

*Hollman v. State of Indiana,*
   211 F.3d 399 (7th Cir. 2000) ...............................................................10

*Holly D. v. California Inst. of Tech.,*
   339 F.3d 1158 (9th Cir. 2003) .........................................................15, 17

*Hudson v. Chertoff,*
   473 F. Supp. 2d 1286 (S.D. Fla. 2007) ....................................................7

*In re Letterman Bros. Energy Sec. Litigation,*
   799 F.2d 967 (5th Cir. 1986) ................................................................8

*Johnson v. Paradise Valley Unified School Dist.,*
   251 F.3d 1222 (9th Cir. 2001) ...............................................................8

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Kolstad v. American Dental Ass'n,*
   527 U.S. 526 (1999)........................................................23, 24

*Kortan v. Cal. Youth Auth.,*
   217 F.3d 1104 (9th Cir. 2000) .....................................13

*Landes Const. Co., Inc. v. Royal Bank of Canada,*
   833 F.2d 1364 (9th Cir. 1987) .....................................28

*Lange v. Penn Mut. Life Ins. Co.,*
   843 F.2d 1175 (9th Cir. 1988) ......................................8

*Manley v. Ambase Corp.,*
   337 F.3d 237 (2nd Cir. 2003)......................................28

*Marr v. Anderson,*
   611 F. Supp. 2d 1130 (D. Nev. 2009) ........................22

*Meritor Sav. Bank, FSB v. Vinson,*
   477 U.S. 57 (1986)......................................................15

*Molski v. M.J. Cable, Inc.,*
   481 F.3d 724 (9th Cir. 2007) ................................28, 29

*Montanez v. Education Technology College,*
   660 F.Supp.2d 235 (D.C. Puerto Rico 2009) ............19

*Murphy v. City of Long Beach,*
   914 F.2d 183 (9th Cir. 1990) ........................28, 31, 33

*Nasser v. AT&T Corp.,*
   2007 U.S. Dist. LEXIS 27956 (N.D. Cal. Apr. 16, 2007) ......................13

*Oncale v. Sundowner Offshore Servs.,*
   523 U.S. 75 (1998)....................................................9, 10

*Passantino v. Johnson & Johnson Consumer Products, Inc.,*
   212 F.3d 493 (9th Cir. 2000) ......................................24

*Patt v. Family Health Sys., Inc.,*
   280 F.3d 749 (7th Cir. 2002) ......................................14

*Pavao v. Ocean Ships, Inc.,*
   1998 U.S. Dist. LEXIS 20431 (N.D. Cal. Dec. 30, 1998) ................10, 13

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

vi.

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Reeves v. Sanderson Plumbing Products, Inc.,*
  530 U.S. 133 (2000).................................................................8

*Rene v. MGM Grand Hotel, Inc.,*
  305 F.3d 1061 (9th Cir. 2002) (J. Hug, Dissenting) .........................26

*San Luis & Delta-Mendota Water Authority v. Salazar,*
  2009 U.S. Dist. LEXIS 45113 (E.D. Cal. May 29, 2009).....................10

*Schmidt v. Canadian Nat'l RR Corp.,*
  2007 U.S. App. LEXIS 6233 (7th Cir. 2007) ..................................13

*Schroeder v. Hamilton Sch. Dist.,*
  282 F.3d 946 (7th Cir. 2002) ..................................................26

*Swanson v. GSA,*
  110 F.3d 1180 (5th Cir. 1997) ................................................22

*Swenson v. Potter,*
  271 F.3d 1184 (9th Cir. 2001) ................................................15

*United States v. Easterday,*
  564 F.3d 1004 (9th Cir. 2009) ................................................27

*Vickers v. Fairfield Med.,*
  453 F.3d 757 (6th Cir. 2006) .................................................26

*Waggoner v. City of Garland, Texas,*
  987 F.2d 1160 (5th Cir. 1993) ................................................21

*Wallis v. J.R. Simplot Co.,*
  26 F.3d 885 (9th Cir. 1994) ..................................................21

*Weston v. Pennsylvania,*
  251 F.3d 420 (3d Cir. 2001)...................................................14

*White v. Ford Motor Co.,*
  312 F.3d 998 (9th Cir. 2002) ..................................................7

*Williamson v. A.G. Edwards & Sons, Inc.,*
  876 F.2d 69 (8th Cir. 1989) *(per curiam)* ...................................26

*Wrighton v. Pizza Hut of Am., Inc.,*
  99 F.3d 138 (4th Cir. 1996) ..................................................26

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

**STATUTES**

42 U.S.C. § 1981a(b)(3)........................................................................................1, 7

42 U.S.C. § 2000e-2(a)(1)...........................................................................................26

42 U.S.C. §2000e-3(a) ...............................................................................................19

Title VII of the Civil Rights Act of 1964........................................................... passim

**OTHER AUTHORITIES**

Civil Local Rule 291.1 and 291.2 ................................................................................1

Federal Rule of Appellate Procedure 32.1 .................................................................10

Federal Rule of Civil Procedure 26 ...........................................................................23

Federal Rule of Civil Procedure 26(a)(1)(A)(iii)...................................................22, 23

Federal Rule of Civil Procedure 50(a) .........................................................................8

Federal Rule of Civil Procedure 50(b)...................................................................1, 7, 8

Federal Rule of Civil Procedure 59 .............................................................................1

Federal Rule of Civil Procedure 59(a)(1) ..................................................................27

Ninth Circuit Rule 36-3 .............................................................................................10

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS
A MATTER OF LAW PURSUANT TO RULE
50(A)

viii.

## I.   INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 50(b) and 59, and L.R. 291.1 and 291.2, Defendant R.J. Reynolds Tobacco Company ("Defendant" or "R.J. Reynolds") moves for renewed judgment as a matter of law, or, in the alternative, a new trial, or to alter or amend the judgment to conform to the statutory caps in Title VII.

The jury deliberated on Plaintiffs' claims for sexual harassment and retaliation under Title VII, and found for Plaintiffs on both claims.  As a preliminary matter, even if the Court denies Defendant's motions for renewed judgment or a new trial, the Court should amend the judgment to reduce the amount of damages from $400,000 per Plaintiff to the statutory cap permissible under Title VII, which is $300,000 per Plaintiff. *See* 42 U.S.C. § 1981a(b)(3).

As detailed below, the Court should grant judgment for Defendant on each of Plaintiffs' claims because there was insufficient evidence to justify a jury verdict for the Plaintiffs. In the alternative, the Court should enter judgment for Defendant on Plaintiffs' claims for punitive damages because there was insufficient evidence that Defendant acted in reckless disregard for Plaintiffs' federally protected rights.

In the alternative, the Court should grant a new trial for two reasons.  First, because the jury was erroneously instructed that Title VII protects individuals on the basis of sexual orientation.  This instruction contradicts binding Ninth Circuit precedent.  Second, the jury's verdict was not supported by the evidence.

## II.   STATEMENT OF FACTS

### A.   R.J. Reynolds Is an Equal Opportunity Employer.

R.J. Reynolds is an equal opportunity employer headquartered in North Carolina. The company prohibits discrimination, harassment or retaliation on the basis of sex, sexual orientation or any other bases protected by state or federal law.  (Exs. A, B, H, K; Tr. 325:4-326:25.) Defendant's employees have a number of options for voicing concerns of perceived discrimination or harassment.  They may contact their managers, or Human Resources ("HR"), or they may contact the toll-free number provided to each employee upon hire, which guarantees them anonymity in filing a complaint.  (Exs. A, B, H, K; Tr. 398:20-25, 470:5-13, 474:16-23.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

1

(NO.  2:09-CV-02495-WBS-DAD)

**B.    Plaintiffs Began Working as Trade Marketing Representatives in August 2006.**

Plaintiffs McCarthy and Schmitt began working in the Sacramento Division of R.J. Reynolds as Trade Marketing Representatives ("TMRs") in August 2006.  (Tr. 4:25-5:21, 10:25-11:7, 224:8-15, 376:17-18.)  Their job was to handle retail and chain accounts to make sure that contracts were negotiated correctly, promotions were provided to the consumer, and that R.J. Reynolds maintained a strong relationship with the merchants in their defined territories.  (Tr. 5:8-15, 376:12-377:13.)  Plaintiffs worked from their homes and rarely had interaction with their co-workers or managers.

**C.    Plaintiffs Began Reporting to Michelle Madsen in November 2006.**

Ms. Madsen became the Division Manager in November 2006, working with the then acting Division Manager Tony Adessi, who was about to retire, and in March 2007, when Adessi retired, Michelle Madsen became the sole Division Manager.  (Tr. 9:23-10:24, 377:18-24.)  Ms. Madsen reported to the Senior Director, Mark Sullivan.  As a Division Manager, Ms. Madsen had no authority to unilaterally hire or fire TMRs, nor issue corrective action or even discipline the TMR without the Senior Director's consent. (Tr. 507:7-14.)

Plaintiffs primarily worked from their homes and each only worked with Ms. Madsen in person on an average of 2-4 days per month, and saw her between 4-8 days per month for lunches and other meetings. (Tr. 10:14-24, 13:5-16, 37:8-12, 379:22-380:20.)

Plaintiffs alleged that Ms. Madsen behaved inappropriately at work by using improper language and talking about sexual positions. (Tr. 21:3-22.)  McCarthy contends that Ms. Madsen engaged in inappropriate behavior in four specific ways: (1) using vulgar language; (2) cursing; (3) talking about sexual positions; and (4) negatively commenting on a male co-worker, John Walker, being homosexual.  None of the alleged vulgar language used was gender-specific, or indicated a hostility towards women.  Rather, the language allegedly used was generically profane insults, such as "motherfucker," "cocksucker," "dumb shit," and "fucking retarded."  (Tr. 25:6-11, 33:12-25.)  In fact, when Ms. Madsen allegedly made these profane comments to McCarthy, the comments were primarily directed at her **male** co-worker, John Walker.  (Tr. 25:14-25.)  Ms.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

2

(NO. 2:09-CV-02495-WBS-DAD)

1    Madsen also allegedly referred to Mr. Walker as a "slut" and said that "all gay men are sluts."  (Tr.

2    40:9-22.)

3          Likewise, Schmitt testified that Ms. Madsen used foul language in her presence,

4    talked about the sex lives of both her male and female co-workers, and talked about sexual positions.

5    (Tr. 383:20-386:6.)  However, Schmitt denied that Ms. Madsen ever asked her about her own sex

6    life.  (Tr. 386:2-4.)  Schmitt also claimed that Ms. Madsen once kicked her leg at a lunch in July

7    2007 (Tr. 393:4-5, 394:6-8.)  Notably, Schmitt did not mention this alleged kick in her deposition,

8    and never reported it to anyone at R.J. Reynolds.  (Tr. 489:15-17.)

9          Despite these allegations, neither Plaintiff ever contacted management or HR

10   regarding Ms. Madsen's alleged behavior from March – August 2007.  (Tr. 50:2-10, 244:14-245:10,

11   396:18-24.)

12          **D.      Plaintiffs' Complaint to HR and Defendant's Immediate Investigation.**

13              **1.      Plaintiffs Complained That Madsen Was Terminating a Male Employee**
                          **Because He Is Homosexual.**
14
             Plaintiffs both contacted HR via the anonymous toll-free hotline to complain that Ms.
15
     Madsen was making homophobic comments about their co-worker, John Walker, and that Ms.
16
     Madsen was allegedly terminating Mr. Walker because he was homosexual.
17
             McCarthy testified that she contacted human resources in August 2007 on Mr.
18
     Walker's behalf.  (Tr. 246:17-25.)  McCarthy contacted HR primarily to complain about "anti-
19
     homosexual remarks" Ms. Madsen made about Mr. Walker.  (Tr. 57:16-59:3.)   McCarthy's
20
     "catalyst" and "motivating factor" in calling HR was Ms. Madsen's treatment of Mr. Walker,
21
     including McCarthy's concern that Ms. Madsen was terminating him because of his sexual
22
     orientation.  (Tr. 57:16-59:3, 59:22-60:11, 148:16-20, 246:17-25.)
23
             Likewise, Schmitt testified that the reason she contacted HR was because of her
24
     concern for Mr. Walker.  (Tr. 397:2-8.)  When Schmitt was asked why she contacted HR, she
25
     specifically said that it was "Because I was afraid that [John Walker] was being terminated for unjust
26
     reasons [i.e., because he is a homosexual.]"  (Tr. 397:5-8.)  Schmitt testified that "the substance" of
27
     her conversation to the HR hotline in August 2007 was "about how Michelle [Madsen] had made
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A          3
MATTER OF LAW PURSUANT TO RULE 50(A)                          (NO.  2:09-CV-02495-WBS-DAD)

multiple comments about homosexuality and being anti-homosexual. And I told them that I was afraid that John [Walker] was not being terminated because – not because had had done something wrong on the job, but because he was homosexual." (Tr. 397:9-21.) In Schmitt's second conversation with HR regarding her concerns that Ms. Madsen was unfairly targeting Mr. Walker, Schmitt testified at great length about an alleged conversation between her and Ms. Madsen wherein Ms. Madsen did not want Mr. Walker to attend a company picnic because he may bring his boyfriend to the event. (Tr. 400:8-401:21.)

### 2. R.J. Reynolds Immediately Investigated and Addressed Plaintiffs' Complaints.

Plaintiffs contacted HR in August 2007, which prompted an immediate investigation of their concerns, including two division-wide HR meetings to discuss Madsen and R.J. Reynolds' zero-tolerance policy towards sexual harassment and retaliation. (Tr. 57:10-58:12, 62:24-64:10, 69:10-14, 83:17-23, 399:9-24.) In response to Plaintiffs' first calls to the toll-free hotline, a member of HR, Rene Duzynski, contacted them within a matter of days and further addressed their concerns, reminding each Plaintiff that R.J. Reynolds' policy proscribes retaliation. (Id.) Ms. Duzynski notified Plaintiffs that a division-wide HR meeting would be held with their entire Sacramento division.

The first HR meeting, held September 12, 2007, occurred less than two weeks after Plaintiffs' initial complaints to HR. The meeting lasted all day. (Tr. 402:6-21, 404:24-25.) After the first meeting, a second meeting was held, on September 26, 2007, to further address Plaintiffs concerns. At this second meeting, Ms. Duzynski reiterated R.J. Reynolds' zero-tolerance policy against sexual harassment. (Tr. 246:17-247:4, 247:19-249:10, 409:17-408:4.) Ms. Madsen, who was present for the second meeting but unaware of who complained about her, apologized for her behavior. (Tr. 249:6-11, 410:12-18.)

### 3. Male and Female TMRs Complained of Madsen's Behavior During the September 2007 Investigation.

At the first September 2007 meeting, every member of the Sacramento division (except for one female TMR) complained about Ms. Madsen's alleged vulgar language and inappropriate behavior, including all of the men in the division. (Tr. 328:13-23.) According to

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(A)

4

(NO. 2:09-CV-02495-WBS-DAD)

1   McCarthy, each employee, including the male TMRs, claimed that they were "sexually harassed" by

2   Ms. Madsen. (Ex. DDDD; Tr. 340:19-341:4.)

3       **4.   Plaintiffs' Complaints Were Fully Addressed by R.J. Reynolds.**

4       McCarthy contends that Ms. Madsen engaged in inappropriate behavior by: (1) using

5   vulgar language; (2) cursing; (3) talking about sexual positions; and (4) commenting on John Walker

6   being gay. (Tr. 244:14-245:10.) Schmitt complained about similar behavior. (Tr. 406:23-408:4.)

7   However, neither Plaintiff ever complained about any of these matters until August 2007. (Tr.

8   244:14-245:10, 251:20-253:4, 406:23-408:4.) Importantly, after they complained to HR in August

9   2007, neither Plaintiff ever heard the vulgar language, cursing, references to sexual positions or

10  homophobic comments regarding John Walker again. (Id.) In other words, as soon as they

11  complained, R.J. Reynolds launched a prompt investigation, issued Ms. Madsen a reprimand, Ms.

12  Madsen apologized for her behavior, and the alleged conduct stopped. (Id.)

13      Schmitt never again had any issue of perceived sexual harassment at R.J. Reynolds

14  after her August 2007 complaint. McCarthy also never had any issue with Ms. Madsen's comments.

15  However, McCarthy testified that in October 2007, Ms. Madsen briefly touched her leg with her

16  hand, and then with her shoe. She testified that these incidents only lasted for a couple of seconds

17  and that she did not make a written report of these alleged touching incidents until July 2008 (nine

18  months after the alleged events occurred). (Tr. 253:20-254-255:3.) Though McCarthy conveniently

19  remembered during her attorney's redirect examination of her that she may have in fact contacted

20  HR regarding these alleged touching instances in December 2007, she made no written (i.e.,

21  verifiable) complaints about this alleged incident until July 2008, even though she was constantly

22  sending emails to HR complaining about alleged retaliation by Ms. Madsen. (Exs. 6, 10, 12, 15, 20,

23  21, MMM, BBBBB; Tr. 265:7-271:9.)

24      **E.   Plaintiffs Never Reported to Madsen after December 2007.**

25      As part of a restructuring at R.J. Reynolds, Plaintiffs began reporting to Reno

26  Division Manager Brian Fedewa as of January 2008, and they never again reported to Ms. Madsen.

27  (Tr. 337:9-12, 448:5-9.) In McCarthy's first personal performance report with Mr. Fedewa, he gave

28  her a "positive" review, and he authorized a monetary award for her based on her performance. (Ex.

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

5

(NO.  2:09-CV-02495-WBS-DAD)

1   PPP; Tr. 337:20-338:2, 338:21-23.)  Neither McCarthy nor Schmitt had much interaction with Mr.

2   Fedewa because they were both on leave a great majority of the time when Mr. Fedewa was their

3   supervisor.  (Tr. 488:8-19.)

4          Also as part of this January 2008 restructuring, Daniel Harrington became the Senior

5   Director for the newly created San Francisco Region, which included the Sacramento Division and

6   the Reno Division.  (Tr. 337:2-8.)  McCarthy already knew Mr. Harrington, as the two of them first

7   became friends in 1998.  (Tr. 337:2-5.)

8          Importantly, Plaintiffs never again reported to Ms. Madsen as of January 2008, and,

9   but for two emails that Ms. Madsen inadvertently forwarded McCarthy in January, they never had

10  any contact with her again.  (Tr. 192:20-193:10, 194:3-13, 457:5-11.)

11         **F.     Plaintiffs Took Extended Leaves of Absence and Never Returned to Work.**

12         Each Plaintiff took several lengthy of leaves of absences throughout their

13  employment with R.J. Reynolds.  (Tr. 286:2-21.)  McCarthy's final leave of absence was from April

14  2008 through the end of her employment in February 2009, with the exception of four days of work

15  that she performed in June 2008.  (Tr. 213:14-214:14, 215:22-25.)  When McCarthy failed to return

16  to work at the expiration of her leave in February 2009, when she was medically cleared to return,

17  she was terminated pursuant to R.J. Reynolds policy.  McCarthy testified that she is completely

18  disabled and unable to work, nor had she looked for any work since her termination from R.J.

19  Reynolds.  (Tr. 288:20-289:12; McCarthy Depo., 607:7-17.)  Similarly, Schmitt went on leave from

20  June 5, 2008, until she voluntarily resigned on October 27, 2008.  (Ex. 42.)

21  **III.    ARGUMENT**

22         **A.     The Judgment on the Jury's Verdict Exceeds the Statutory Damages Caps**
               **under Title VII.**
23

24         For the reasons set forth below, this Court should grant Defendant's renewed motion

25  for judgment as a matter of law or, barring that, grant the motion for a new trial.  However, even if

26  this Court denies Defendant's renewed motion for judgment in its entirety, and denies the motion for

27  a new trial, the Court should reduce the verdict awarded to adhere to the statutory caps in Title VII.

28         At Plaintiffs' request, the jury decided their claims for sexual harassment and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A          6
MATTER OF LAW PURSUANT TO RULE 50(A)                              (NO.  2:09-CV-02495-WBS-DAD)

1   retaliation.[1]  Both of these claims were pursued under Title VII of the Civil Rights Act of 1964.

2   Each Plaintiff was awarded $150,000 for compensatory damages, and $250,000 for punitive

3   damages.  (Docket No. 107).  In other words, each Plaintiff was awarded $400,000 total for

4   compensatory and punitive damages.

5           However, under Title VII, all compensatory and punitive damages for an employer of

6   Defendant's size (over 500 employees) is capped at a total of $300,000.  42 U.S.C. § 1981a(b)(3)

7   ("The sum of the amount of compensatory damages awarded under this section for future pecuniary

8   losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

9   nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not

10  exceed . . . $300,000."); *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1195 (9th Cir. 2002);  The

11  Title VII damage caps apply on a per suit, not a per claim, basis.  *Baty v. Willamette Indus.*, 172 F.3d

12  1232, 1245-46 (10th Cir. 1999) (rejecting plaintiff's claim that her sexual harassment and retaliation

13  claims under Title VII should be capped at $300,000 each, as opposed to $300,000 total); *See also*,

14  *Hudson v. Chertoff*, 473 F. Supp. 2d 1286, 1289 (S.D. Fla. 2007) (citing numerous appellate court

15  decisions).  Hence, judgment should be amended to conform to the statutory caps of $300,000 per

16  Plaintiff, or $600,000, total.

**B.    Defendant's Rule 50(b) Motion Should Be Granted.**

**1.    Standard for Granting a Rule 50(b) Motion.**

19          Under Federal Rule of Civil Procedure 50(b), judgment as a matter of law is proper if

20  "the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable

21  person to only one conclusion, namely, that the moving party was entitled to judgment."  *White v.*

22  *Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002).  "Judgment as a matter of law is appropriate

23  when a party fails to establish a legally sufficient basis for a reasonable jury to find for that party."

24  *Anderson v. Independent School Dist.*, 357 F.3d 806, 809 (8th Cir. 2004) (internal quotes omitted).

25          The standard for judgment as a matter of law under Rule 50(b) mirrors the standard

26  for granting summary judgment.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-

---

[1] Plaintiffs withdrew their purported third cause of action, for tortious adverse employment action under California common law, before the case went to the jury.  (Tr. 1098:19-1099:25.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A        7        (NO.  2:09-CV-02495-WBS-DAD)
MATTER OF LAW PURSUANT TO RULE 50(A)

1   50 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Thus, the Court must review

2   the record as a whole, drawing all reasonable inferences in favor of the nonmoving party, but making

3   no credibility determinations or weighing any evidence.  *Reeves*, 530 U.S. at 149-150.  "[A] judge's

4   decision to grant a directed verdict or a judgment notwithstanding the verdict is not a matter of

5   discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a

6   fact question for the jury."  *In re Letterman Bros. Energy Sec. Litigation*, 799 F.2d 967, 972 (5th Cir.

7   1986).  Although the Court must view the evidence in the light most favorable to the non-moving

8   party, a ruling in favor of the moving party is appropriate when the only evidence in support of the

9   non-moving party is nothing more than a "mere scintilla" of evidence or "speculation".  *Crane v.*

10  *Green & Freedman Baking Co.*, 134 F.3d 17, 21 (1st Cir. 1998); *First Union Nat'l Bank v. Benham*,

11  423 F.3d 855, 863 (8th Cir. 2005).

12          When ruling on a renewed motion for judgment, the Court must review the entire

13  record, not just evidence favorable to the nonmoving party.  *Reeves*, 530 U.S. at 149-150; *Johnson v.*

14  *Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  A Court must

15  independently evaluate the evidence to determine its sufficiency and may not rely on the jury's

16  findings.  *Chaney v. City of Orlando*, 483 F.3d 1221, 1228 (11th Cir. 2007).  The sufficiency of the

17  evidence is an issue of law to be determined by the judge.  *Lange v. Penn Mut. Life Ins. Co.*, 843

18  F.2d 1175, 1181 (9th Cir. 1988).

19          Defendant timely filed a motion for judgment as a matter of law pursuant to Federal

20  Rule of Civil Procedure 50(a) before the close of the evidence at trial.  (Docket No. 95.)  The Court

21  denied that motion and now Defendant is entitled to judgment pursuant to Federal Rule of Civil

22  Procedure 50(b) on: (1) Plaintiffs claims for sexual harassment; (2) Plaintiffs claims for retaliation;

23  and (3) Plaintiffs claims for punitive damages, for the reasons discussed below.

24  **2.      Defendant Is Entitled to Judgment on Plaintiffs' Sexual Harassment**
             **Claims.**

25          Plaintiffs' claims for sexual harassment fail as a matter of law for three reasons: (1)

26  the alleged harassment was not based on Plaintiffs' sex; (2) there was no sexual harassment because

27  the alleged harassment was neither *quid-pro-quo* harassment nor did it constitute a hostile work

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)                    8                    (NO. 2:09-CV-02495-WBS-DAD)

1   environment; and (3) Defendant exercised reasonable care to prevent harassment from occurring,

2   and Plaintiffs unreasonably failed to take advantage of Defendant's anti-harassment policy.

3            **a.   The Alleged "Harassment" Was Not Based on Plaintiffs' Sex.**

4            As a unanimous Supreme Court held, "Title VII does not prohibit all verbal or

5   physical harassment in the workplace; it is directed only at *discrimination* . . . because of . . . sex."

6   *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (emphasis in original) (internal

7   quotations omitted).  The Court further explained that it has "never held that workplace harassment .

8   . . is automatically discrimination because of sex merely because the words used have sexual content

9   or connotations." *Id.*  "The critical issue" in determining whether a Title VII violation occurred, "is

10  whether members of one sex are exposed to disadvantageous terms or conditions of employment to

11  which to which members of the other sex are not exposed." *Id.*

12           The Court also stated that where there is same-sex harassment between heterosexual

13  women, the plaintiff would have to proffer comparative evidence showing that the female supervisor

14  treated men differently.  Otherwise, plaintiff could prove sex harassment if she could demonstrate

15  that "a female victim is harassed in such sex-specific and derogatory terms by another woman as to

16  make it clear that the harasser is motivated by general hostility to the presence of women in the

17  workplace." *Id.*

18           Plaintiffs failed to establish that Ms. Madsen either: (1) treated male or female TMRs

19  differently, or (2) that she was motivated by a general hostility to the presence of women in the

20  workplace.  Plaintiffs admit that other TMRs – both male and female – complained of Ms. Madsen's

21  allegedly harassing behavior.   At the first September 2007 division-wide meeting addressing

22  Plaintiffs complaints, on September 12, 2007, every member of the Sacramento division (except for

23  one female TMR) complained about Ms. Madsen's vulgar language and inappropriate behavior,

24  including all of the men in the division. (Tr. 328:13-23.)  According to McCarthy, each employee,

25  including the male TMRs, claimed that they were "sexually harassed" by Ms. Madsen.  (Ex. DDDD;

26  Tr. 340:19-341:4.)  Hence, Ms. Madsen's conduct was not directed at women specifically, but,

27  rather, was directed at everyone regardless of gender.  Indeed, a great number of the alleged sexually

28  explicit comments McCarthy and Schmitt heard were directed at a ***male*** co-worker, John Walker,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

9

(NO.  2:09-CV-02495-WBS-DAD)

1    who Ms. Madsen allegedly referred to as a "slut". (Tr. 26:13-20, 40:9-22.) McCarthy testified that

2    Madsen would "especially" use profane language like "cocksucker" in reference to Mr. Walker. (Tr.

3    25:21-25.) Schmitt corroborated McCarthy's testimony that Ms. Madsen's alleged comments were

4    primarily directed at Mr. Walker. (Tr. 397:2-21, 400:8-401:21.)

5            Thus, Plaintiffs failed to establish a *prima facie* case of sexual harassment because

6    they did not proffer any evidence that Ms. Madsen's alleged conduct was based on Plaintiffs' sex or

7    that she treated them differently than male TMRs because of sex.[2] *Oncale*, 523 U.S. at 80; *Hollman*

8    *v. State of Indiana*, 211 F.3d 399, 403 (7th Cir. 2000); *See also*, *Pavao v. Ocean Ships, Inc.*, 1998

9    U.S. Dist. LEXIS 20431, *3-6 (N.D. Cal. Dec. 30, 1998).[3]

10           Plaintiffs also failed to establish that Ms. Madsen's conduct was based on a hostility

11   towards women in the workplace. *See Oncale*, 523 U.S. at 80. Far from demonstrating that Ms.

12   Madsen demonstrated a hostility towards women in the workplace, Plaintiffs admit that Ms. Madsen

13   recommended them for promotions, and that she provided them numerous positive work

14   performance reviews and other commendations. (Exs. Z, EE, JJ, ZZ; Tr. 272:18-274:18, 290:1-12.)

15   For instance, Ms. Madsen only recommended two people in her entire division be put on the

16   succession list to be eligible for a promotion, McCarthy and another female employee. Ms. Madsen

17   chose these two female candidates over another qualified male candidate who wanted to be on the

18   succession list. (Tr. 290:1-12, 330:10-21.) Similarly, Ms. Madsen recommended that both Plaintiffs

19   receive monetary bonuses and gave them positive performance reviews until their performance

20   declined in August 2007. (Tr. 382:3-383:3, 480:25-481:11, 482:3-13.) This conduct is inconsistent

---

[2] Likewise, each Plaintiff complained that they were afraid they were going to be "Lucarelli'd"—which refers to Ms. Madsen's decision to terminate a **male** employee named Mark Lucarelli. Plaintiffs testified that they felt that when Ms. Madsen wanted an employee terminated, she would have her female assistant manager, Claudia Alvey, perform a "work-with" with that employee and then she would use Ms. Alvey's comments about the employee's performance as a justification for his/her termination. (Tr. 21:23-25:1.) Again, Plaintiffs own testimony establishes that Ms. Madsen's allegedly unfair management-style (i.e., where she allegedly terminated people with whom she disagreed with) was not based on any employee's gender. In fact, the very term "Lucarelli'd" derives from a **male** employee whom Ms. Madsen allegedly wanted to terminate without reason.

[3] Federal Rule of Appellate Procedure 32.1 and Ninth Circuit Rule 36-3, which prohibit citation to unpublished appellate decisions issued prior to January 1, 2007, "do not address citation to unpublished district court opinions" and as such, those opinions are properly citable. *San Luis & Delta-Mendota Water Authority v. Salazar*, 2009 U.S. Dist. LEXIS 45113, *52-53 n.8 (E.D. Cal. May 29, 2009), citing *Carmichael Lodge No. 2103 v. Leonard*, 2009 U.S. Dist. LEXIS 39223, *10 (E.D. Cal., Apr. 23, 2009).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

10

(NO. 2:09-CV-02495-WBS-DAD)

1    with a manager who is "motivated by general hostility to the presence of women in the workplace."

2            Hence, judgment should be entered for Defendant on this claim because Plaintiffs

3    presented insufficient evidence for a reasonable jury to infer that Ms. Madsen's alleged conduct

4    occurred because of sex.

5            **b.        The conduct alleged does not constitute sexual harassment.**

6
7            To establish a claim for sexual harassment, Plaintiffs must show that they either were

8    subjected to (1) "*quid-pro-quo* harassment," meaning that a supervisor conditioned employment

     benefits on sexual favors, or (2) that they were subjected to harassment in the form of a hostile work
9
     environment. *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (cited in
10
     Court Order Denying Summary Judgment, Docket No. 59.)  Plaintiffs established neither.
11
12                      **(1)        There was no *quid-pro-quo* harassment.**

13           As this Court expressly held in the Order on summary judgment, "The record

14   contains no evidence of any quid-pro-quo" harassment.  (Docket No. 59, at p. 11.)  The Court's

15   Order went further, and explained:

16
17               Plaintiffs seem to argue that Madsen's comments about her
                 employees' relationships, while not conditioning employment benefits
18               on having or not having a sexual relationship with <u>her</u>, did condition
                 employment benefits on having or not having a sexual relationship <u>in</u>
19               <u>general</u>.  Even if such conduct could constitute harassment, there is no
                 evidence to support this argument.  Madsen appears to have made
20               conversational remarks about the correlation between the quality of
                 employees' work and whether they were in a relationship, but
21               plaintiffs point to no evidence to indicate that their employment
                 benefits would change based on their relationship status. (Docket No.
22               59, at pp. 11-12, n.8.) (emphasis in original).[4]

23           Though McCarthy testified that she "felt" that her promotion was based on her sexual

24   activity, and she had this "impression," she never offered any evidence that this was the case.  (Tr.

25   35:2-36:13, 39:21-40:10.)  When asked why she "felt" that her promotion was based on her sexual

26   activity, she testified that Ms. Madsen told her "that I needed to keep up the good word and that she

---

[4] Though the Court found that there was no *quid-pro-quo* harassment, the Court's Order on the summary judgment
motion did not address Defendant's affirmative defense under *Faragher-Ellerth*, although it was one of the grounds for
the motion.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

1  could tell that I was so company minded because I'd work on the weekends and I would work after

2  hours, and that was because I wasn't getting laid and I wasn't getting any." (Tr. 36:9-13.)

3         Nothing in this testimony indicates that McCarthy would only be promoted if she

4  refrained from sexual activity. At worst, it establishes that Ms. Madsen gave McCarthy advice that

5  she found offensive: if you focus on your career instead of dating, you will be more successful.

6  McCarthy never testified that Ms. Madsen told her that she would not be promoted if she had a

7  boyfriend or relations with other men.

8         Likewise, Schmitt testified that Ms. Madsen told her that she could be more

9  productive if her bedroom was a more active place. (Tr. 386:20-387:2.) As with McCarthy, nothing

10  in Schmitt's testimony suggests that Ms. Madsen would give her better performance reviews if she

11  had a boyfriend. Schmitt's testimony only establishes (at worst) that Ms. Madsen told her that an

12  active dating life would make her more productive at work – which is the <u>opposite</u> of what she

13  allegedly told McCarthy.

14         Taken in the light most favorable to the Plaintiffs, there was no evidence at trial to

15  establish the existence of any *quid-pro-quo* harassment, just as there was no evidence at summary

16  judgment.

17                **(2)**     **There was no hostile work environment.**

18         Plaintiffs' testimony also does not establish sufficiently severe or pervasive conduct

19  such that it alters the conditions of Plaintiffs' employment and creates a hostile work environment.

20  *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998). Viewed in the light most favorable to

21  Plaintiffs, Ms. Madsen's alleged misconduct consisted of inappropriate, off-color comments during

22  "work-withs," and touching McCarthy's leg with her hand and touching her pants with her foot on a

23  single occasion. McCarthy testified that Ms. Madsen used vulgar language, some of which she

24  interpreted as sexual in nature. (Tr. 33:12-35:1.) The comments were not only about McCarthy but

25  also referenced other people. (Id.) McCarthy contends that Ms. Madsen engaged in inappropriate

26  behavior by: (1) using vulgar language; (2) cursing; (3) talking about sexual positions (including

27  calling McCarthy "her girl" and a "top girl"); and (4) commenting on John Walker being

28  homosexual. (Tr. 244:14-245:10.) However McCarthy never complained about any of these matters

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

12

(NO. 2:09-CV-02495-WBS-DAD)

1   until August 2007. (Id.) After she complained about these matters to HR in August 2007, she never

2   had issue with any of these items again. (Tr. 251:20-253:4.)

3        McCarthy further testified that on two instances on the same day in October 2007,

4   Madsen touched her leg for between 1-2 seconds, and then touched her leg again for a couple of

5   seconds with her shoes under a dinner table.   (Tr. 140:24-141:5, 143:10-144:23, 146:20-147:21,

6   250:18-251:19.) Schmitt testified that on one occasion, Madsen kicked her under a table. (Tr. 394:6-

7   8.) Even presuming these allegations are true (which is highly improbable in light of the fact that

8   Schmitt never reported the kicking incident and McCarthy waited 9 months to report the alleged leg-

9   touching incident), this conduct does not constitute sexual harassment. *Kortan v. Cal. Youth Auth.*,

10   217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor

11   referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several

12   occasions and directly called plaintiff "Madea."); *See also*, *Pavao*, 1998 U.S. Dist. LEXIS 20431, at

13   *4.

14        In *Pavao*, the male plaintiff filed a Title VII action for sexual harassment claiming

15   that his male supervisor was harassing him by: (1) putting his arm around plaintiff and saying "If

16   you can't cut the mustard, you gotta lick the jar"; (2) addressing co-workers with statements such as

17   "Come on, girls" and "Let's get the ball rolling girls"; (3) greeting plaintiff by saying "Hi Sunshine";

18   (4) tricking plaintiff into testing soup stock from his finger; and (5) "occasionally touch[ing] the

19   plaintiff on the arms, shoulders, and neck." *Id.* The Court granted summary judgment for the

20   employer and held, "These incidents cannot reasonably be thought to add up to sexual harassment."

21   *Id.* The Court reasoned that these "actions and statements constitute workplace banter and incidental

22   physical contact, nothing more." *Id* at *4-5; *See also, Nasser v. AT&T Corp.*, 2007 U.S. Dist.

23   LEXIS 27956, *26 (N.D. Cal. Apr. 16, 2007) (*aff'd* at 307 Fed. Appx. 103 (9th Cir. 2009)) (the

24   "occasional vulgar banter, tinged with sexual innuendo" does not constitute sexual harassment);

25   *Schmidt v. Canadian Nat'l RR Corp.*, 2007 U.S. App. LEXIS 6233, *7 (7th Cir. 2007) ("Neither

26   vulgar banter, nor occasional, non-extreme instances of short physical contact or staring are

27   generally sufficient to allow an inference of an objectively hostile environment . . . .") (internal

28   citations omitted); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)       13

(NO. 2:09-CV-02495-WBS-DAD)

1   plaintiff's complaints of eight gender-related comments during the course of her employment,

2   including that "the only valuable thing to a woman is that she has breasts and a vagina," was

3   insufficient to demonstrate a hostile work environment); *Weston v. Pennsylvania*, 251 F.3d 420, 428

4   (3d Cir. 2001) ("The mere utterance of an epithet, joke, or inappropriate taunt that may cause offense

5   does not sufficiently affect the conditions of employment to implicate Title VII liability.");

6   *Adusumilli v. City of Chicago.*, 164 F.3d 353, 361-62 (7th Cir. 1998) (holding that plaintiff's

7   complaints of teasing; ambiguous comments about bananas, rubber bands, and low-neck tops;

8   staring and attempts to make eye contact; and four isolated incidents where a co-worker briefly

9   touched her arm, fingers, or buttocks did not constitute sexual harassment).

10        If telling a female subordinate that "the only valuable thing to a woman is that she has

11   breasts and a vagina" does not constitute a hostile work environment, it is inconceivable that calling

12   a subordinate a "top girl" <u>does</u> constitute a hostile work environment. *Patt*, 280 F.3d at 754.

13   Likewise, if briefly touching a woman's buttocks does not constitute sexual harassment, then briefly

14   touching her leg does not constitute sexual harassment either. *Adusumilli*, 164 F.3d at 361-62.

15        Indeed, this Court has previously acknowledged that there was virtually no evidence

16   of any sexual harassment in this case.   (Tr. 1042:20-1044:7.)   When discussing the sexual

17   harassment claim, the Court said, "I have a really hard time seeing how the evidence presented even

18   in the light most favorable to the plaintiffs creates a sexually abusive or hostile work environment.  I

19   can't see it." (Tr. 1043:24-1044:2.)   The Court was correct in its statement.   Judgment should be

20   entered in favor of Defendant on this claim.

21            **c.        Defendant exercised reasonable care to prevent harassment from
              occurring and Plaintiffs unreasonably failed to report the alleged
22            harassment.**

23        Even if Plaintiffs had presented sufficient evidence that they were subjected to a

24   hostile work environment, and that such conduct was because of their sex, the *Faragher/Ellerth*

25   defense provides Defendant with a complete defense to their sexual harassment allegations. *See*

26   *Burlington Indus. v. Ellerth*, 524 U.S. 742, 764-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S.

27   775, 806 (1998).  According to *Faragher/Ellerth*, an employer cannot be held liable on a theory of

28   hostile work environment if there is no *quid-pro-quo* harassment (which the Court has already found

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)               14               (NO. 2:09-CV-02495-WBS-DAD)

does not exist in this case), and the employer can demonstrate that: 1) the employer used reasonable care to prevent or promptly correct any sexual harassment and 2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Id.*[5]

### (1)    Defendant used reasonable care to prevent and correct alleged sexual harassment.

An employer may prove that it used reasonable care to prevent and correct sexual harassment by establishing that it has a preventive procedure in place "calculated to encourage victims of harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). The question is not whether the employer's policy is perfect, but whether the employer's actions as a whole created a reasonable mechanism for prevention and correction. *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003).

An employer may demonstrate that it used reasonable care to "promptly" correct reported sexual harassment by launching a prompt investigation to determine whether the complaint is justified. *Swenson v. Potter,* 271 F.3d 1184, 1193-96 (9th Cir. 2001). A good faith investigation of alleged harassment satisfies the *prompt response standard*, even if the investigation turns up no evidence of harassment. *Id.* at 1196-97.

In this case, Defendant met and exceeded its legal obligations in attempting to provide its employees with a safe and harassment free working environment and a mechanism by which to report complaints. (Exs. A, B, H, K; Tr. 226:10-227:1, 325:4-326:25.) Defendant has a zero tolerance harassment policy which is distributed to all employees at the time they are hired. (Id.) Further, Defendant has a hotline by which employees may call and report complaints anonymously, which Plaintiffs themselves called in August 2007. (Ex. A; Tr. 62:24-63:11, 325:4-326:25.)

Defendant not only had a mechanism in place to address complaints of harassment, but Defendant also effectively implemented that mechanism by promptly responding to Plaintiffs' complaints. In response to Plaintiffs' calls to the hotline, Defendant conducted an immediate

---

[5] The jury did not consider this affirmative defense because it found *quid-pro-quo* harassment. As discussed above in Section III(B)(2)(b)(i), there was no evidence of *quid-pro-quo* harassment. Thus, the *Faragher/Ellerth* defense is properly considered.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

15

(NO. 2:09-CV-02495-WBS-DAD)

1    investigation.  Specifically, within only a few days of each Plaintiff's call to HR, a member of HR

2    named Rene Duszynski called her back and they spoke for between 45 minutes to an hour about

3    Plaintiffs' concerns in separate calls to McCarthy and Schmitt.  (Tr. 62:24-63:11.)  Within a few

4    weeks of this call, HR held a meeting (led by Ms. Duszynski) with Plaintiffs' entire division to

5    discuss these concerns.  (Tr. 64:3-67:1.)   At this meeting the attendees received sexual harassment

6    training and Ms. Duszynski reiterated that R.J. Reynolds "had a zero tolerance on sexual

7    harassment." (Tr. 248:17-249:5.)

8            McCarthy testified that the first HR meeting to address her concerns was held on

9    September 12, 2007, and then a second meeting to address her concerns was held on September 26,

10   2007.  (Tr. 71:19-22.)  At this second meeting, Ms. Madsen apologized for using profane language,

11   and she gave a presentation that lasted half the day for the day-long meeting, wherein she committed

12   to improve her behavior. (Ex. QQ; Tr. 249:9-11, 531:4-17.)  Hence, it is not disputed that HR held

13   two division-wide meetings to investigate and address Plaintiffs concerns immediately after each

14   Plaintiff expressed them to HR in late August 2007.

15           McCarthy testified that she sent an email in October and again on December 13,

16   2007, to Rene Duszynski, Jennifer Sanders and Mark Sullivan, complaining that she felt that she was

17   being retaliated against by Ms. Madsen.  (Tr. 150:8-158:2.)  McCarthy then went on leave until

18   January.  (Tr. 196:17-21.)  Ms. Sanders responded to this email in January by calling McCarthy upon

19   her return from leave and told her that HR would investigate her concerns.  (Tr. 163:21-164:9.)

20   Hence, Ms. Sanders responded to McCarthy's concern as promptly as she could, and did so despite

21   the fact that upon McCarthy's return to work in January, Ms. Madsen was no longer her supervisor

22   (Brian Fedewa was now her supervisor) and other than a couple of emails, McCarthy had no more

23   communications with Ms. Madsen. (Tr. 192:13-193:5.)

24           Most importantly, after Plaintiffs' complaints to HR in August 2007, neither was ever

25   subjected to inappropriate language by Ms. Madsen, never subjected to sexual innuendo or

26   comments by Ms. Madsen, and, with the exception of two alleged incidents in October where Ms.

27   Madsen allegedly touched McCarthy's pants for a couple of seconds, never experienced any other

28   inappropriate conduct from Ms. Madsen.  (Tr. 251:20-253:4, 435:15-16, 485:2-16.)  Also, it is

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

16

(NO. 2:09-CV-02495-WBS-DAD)

1    undisputed that Ms. Madsen was issued a final written reprimand for her conduct, which is the

2    harshest form of discipline at R.J. Reynolds short of termination.  (Tr. 531:20-533:1.)

3                     (2)     **Plaintiffs unreasonably failed to report the alleged harassment for several months.**

4    Although Plaintiffs claim that Ms. Madsen made inappropriate statements to them for

5    at least several months (from March through August 2007), Schmitt and McCarthy unreasonably

6    delayed reporting the alleged harassment until late August 2007.  (Tr. 57:16-21.)

7    In addition, McCarthy testified that she never reported Ms. Madsen's allegedly

8    inappropriate touching – which purportedly occurred in October 2007 –  until July 2008.  (Tr.

9    253:20-254:11.)  As a result, Defendant cannot be held liable to Plaintiffs for alleged harassment.

10   *Ellerth, supra,* 524 U.S. at 766; *Holly D.*, 339 F.3d at 1162 (affirming summary judgment dismissing

11   claim of sexual harassment where employee did not seek relief from employer until a full year of

12   unwelcome sexual activity, almost two years after first sexual incident).  Defendant is aware that

13   McCarthy changed this testimony on re-direct and claims that she did in fact orally tell two members

14   of HR about this incident.  Setting aside the admission that she made under oath that she never did

15   report this alleged incident until July 2008 (both in trial and at her deposition), McCarthy's claim

16   would still be subject to the *Faragher/Ellerth* defense because when she made her written complaint

17   in July 2008, HR immediately attempted to investigate.  McCarthy admitted that she chose not to

18   participate in the investigation and did not want to cooperate because she felt it would be

19   unproductive.  (Tr. 345:8-346:21.)

20   McCarthy offers two explanations for why she failed to report Ms. Madsen's alleged

21   vulgar language and other inappropriate behavior until August 2007, neither of which is reasonable.

22   First, McCarthy testified that her division had to commit not to "gossip" at the second

23   HR meeting (the September 26 meeting).  (Tr. 78:13-21, 87:8-13.)  Her understanding was that this

24   meant that nobody could complain to HR and that she was being chastised for bringing such a claim.

25   (Id.)  Even if she sincerely believed that "do not gossip" meant "do not file a claim with HR for

26   sexual harassment," her interpretation is so patently unreasonable that R.J. Reynolds cannot be held

27

28

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

17

(NO.  2:09-CV-02495-WBS-DAD)

1  liable for it.  Moreover, this directive in September 2007 could not explain why McCarthy failed to

2  complain about Ms. Madsen's conduct between March-August 2007.

3  　　　The second excuse McCarthy had for failing to report Ms. Madsen's allegedly

4  harassing behavior from March – August 2007 is because Ms. Madsen's supervisor, Mark Sullivan,

5  told McCarthy not to bring "any negativity" into her region.  (Tr. 16:19-17:7, 19:12-25.)  During

6  McCarthy's interview with Mr. Sullivan, wherein he was going to decide whether to put her on a

7  succession list, Mr. Sullivan told McCarthy that he "did not want any negativity being brought down

8  onto his region, and so he wanted me to be very pro management and pro the Sacramento area . . ."

9  (Id.)  Nowhere in this conversation does Mr. Sullivan say that by "negativity" he did not want people

10  to exercise their right to utilize R.J. Reynolds' complaint procedures if they feel that they have been

11  harassed or retaliated against.  (Id.)  Moreover, McCarthy could not believe that this comment about

12  not bringing negativity into the region could have been in response to her August 2007 complaint

13  because he allegedly made this comment in July 2007.  (Id.)  Similarly, his comment regarding

14  "negativity" does not explain why McCarthy failed to complain about Ms. Madsen's behavior from

15  March-July (and obviously had no impact on her complaining just a few weeks later in August).

16  　　　As is clear, nobody from R.J. Reynolds ever gave McCarthy or Schmitt any

17  indication that they should not follow company procedure and complain if either of them felt that she

18  was being harassed or retaliated against.  Hence, even if they could establish a claim for sexual

19  harassment, it would be barred by the *Faragher/Ellerth* defense.

20
21
### 3.　Judgment Should Be Entered in Defendant's Favor on Plaintiffs' Retaliation Claims.

22  　　　Defendant is entitled to judgment in its favor on Plaintiffs' retaliation claims for two

23  separate reasons: (1) Plaintiffs did not engage in protected conduct by complaining of sexual

24  orientation discrimination, as sexual orientation is not protected by Title VII; and (2) Plaintiffs were

25  not subjected to any adverse employment action that could be causally linked to the complaint.

26
### a.　Plaintiffs' complaints of sexual orientation discrimination are not protected conduct under Title VII.

27
28  　　　An employee has engaged in protected activity under Title VII if he/she has either

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

18

(NO.  2:09-CV-02495-WBS-DAD)

1  "(1) opposed any practice made unlawful by Title VII or (2) made a charge, testified, assisted, or

2  participated in any manner in an investigation, proceeding, or hearing under Title VII." 42 U.S.C.

3  §2000e-3(a).   McCarthy testified that she contacted human resources for the first time in August

4  2007 primarily to complain about "antihomosexual remarks" that Ms. Madsen allegedly made about

5  John Walker.  (Tr. 57:16-59:3.)  Ms. Madsen's treatment of Mr. Walker, including her allegedly

6  terminating him because of his sexual orientation, was the "catalyst" for McCarthy's call to HR in

7  August 2007; her "motivating factor" in calling HR.   (Tr. 57:16-59:3, 59:22-60:11, 148:16-20,

8  246:17-25.) Schmitt similarly testified that the reason she contacted HR was because of her concern

9  for Mr. Walker. (Tr. 397:2-8.)

10        However, it is well-settled that sexual orientation is not a protected classification

11  under Title VII. *See DeSantis v. Pacivi Telephone & Telegraph Co.*, 608 F.2d 327, 329-30 (9th Cir.

12  1979).  It follows that Plaintiffs did not engage in protected activity when they complained of sexual

13  orientation discrimination against John Walker. *See* 42 U.S.C. § 2000e-3(a); *Montanez v. Education*

14  *Technology College*, 660 F.Supp.2d 235, 243 (D.C. Puerto Rico 2009).

> **b.**    **Plaintiffs did not suffer any adverse employment action causally connected to their complaints.**

16        To the extent Plaintiffs contend that they were retaliated against because Ms. Madsen

17  began calling them and "checking in" on them while they were working, and they were asked to

18  generate pointless spreadsheets, these trivial alleged actions are not adverse employment actions

19  because they did not <u>materially</u> affects the compensation, terms, conditions or privileges of

20  employment.  *Burlington Northern & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 67—68 (2006);

21  *Ellerth*, 524 U.S. at 761 (noting that "a tangible employment action constitutes a <u>significant change</u>

22  <u>in employment status</u>, such as hiring, firing, failing to promote, reassignment with significantly

23  different responsibilities, or a decision causing a significant change in benefits") (emphasis added);

24  *Hilt-Dyson v. Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002).

25        McCarthy complains that after the September 2007 HR meetings, Ms. Madsen

26  rejected her expense reports (though eventually she accepted all of them), asked her to move

27  fixtures, asked her to generate spreadsheets, called her at 8:00 in the mornings (by which time she

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

19

(NO.  2:09-CV-02495-WBS-DAD)

1    had already begun working), and changed information on her timecards—though this had no effect

2    on McCarthy because she was an exempt employee.   (Tr. 95:2-97:14, 100:14-19, 225:23-226:3,

3    257:16-18, 271:12-23.)

4         Schmitt testified that Ms. Madsen gave her a verbal reprimand (with no disciplinary

5    consequences such as loss of pay or demotion) for failing to call in to work sick in October 2007;

6    that Ms. Madsen made her commit not to gossip about her co-workers; that she denied Schmitt's

7    expense reports for failing to conform to company guidelines; she called her in the mornings at 8:00;

8    altered her timecards to accurately reflect time worked (though this did not affect her compensation

9    as an exempt employee); and that she asked her to move fixtures. (Tr. 416:9-422:22, 432:13-19,

10   438:8-10, 494:1-16, 495:16-21.)   Schmitt testified that she never received a written reprimand from

11   Mr. Fedewa, who replaced Ms. Madsen as Plaintiffs' supervisor in January 2008. (Tr. 463:9-12.)

12        Setting aside the fact that these trivial matters do not constitute "material adverse

13   employment actions," Plaintiffs provide no evidence regarding whether Ms. Madsen called other

14   employees early in the morning, or asked them to move fixtures or asked them to generate

15   spreadsheets.  The mere fact that they testified that they personally were not aware of her engaging

16   in similar activity with other employees is not affirmative evidence that she did not do so.  Plaintiffs

17   failed to establish that they were treated differently than employees who did not complain about Ms.

18   Madsen, and judgment should therefore be entered for Defendant on their retaliation claims. *Hilt-*

19   *Dyson*, 282 F.3d 465-66.

20        In any event, being called upon during working hours, being asked to generate

21   spreadsheets, and being required to properly submit receipts with expense reports do not amount to a

22   significant change in employment status or severe or pervasive harassment.  Thus, Plaintiffs cannot

23   establish that either of them suffered any tangible adverse employment action in retaliation for their

24   complaint (even if the complaint to HR was protected conduct). *Hilt-Dyson*, 282 F.3d at 465-66

25   (holding that supervisor's harassment of an employee who complained of sex discrimination is not

26   an adverse employment action—and thus not retaliatory—unless the harassment is severe or

27   pervasive).

28        Plaintiffs further testified that they received written reprimands in January 2008 based

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

20

(NO.  2:09-CV-02495-WBS-DAD)

1   on work that they missed in November 2007, without notifying Ms. Madsen. (Tr. 173:24-175:4,

2   259:3-260:14.)  However, the written reprimands were for failing to notify Ms. Madsen that they

3   would not be working in the field, and Plaintiffs concede that they were in fact not working in the

4   field that day—instead they spent the entire day doing expense reimbursement forms. (Id.)  Even if

5   Plaintiffs felt that this was an unfair write-up, it is not retaliatory nor can Plaintiffs rebut the

6   legitimate non-retaliatory reason that Mr. Sullivan (Ms. Madsen's supervisor) provided for the write-

7   up (i.e., it should not take 8 hours to fill out reimbursement forms). (Tr. 536:18-537:1.)

8           To overcome the legitimate business reasons an employer puts forth for the

9   reprimand, Plaintiffs must "do more than establish a *prima facie* case and deny the credibility of the

10  defendant's witnesses. [They] must provide specific, substantial evidence of pretext." *Bradley v.*

11  *Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  Moreover, in assessing whether

12  retaliation has occurred in a case involving employee misconduct, the issue is not whether the

13  misconduct *actually* occurred, but whether the employer reasonably believed in good faith that the

14  misconduct occurred, and whether the adverse job consequence was based on this belief. *Wallis v.*

15  *J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994); *Waggoner v. City of Garland, Texas*, 987 F.2d

16  1160, 1165-1166 (5th Cir. 1993).  Hence, even in the unlikely event that it *did* take Plaintiffs all day

17  to complete their expense reports, this would not disprove that Defendant had a legitimate, non-

18  retaliatory reason for the reprimand.

19          Likewise, McCarthy testified that a written reprimand she received in June 2008

20  (based on an appraisal of her store conditions in March 2008 prior to her taking an extended leave of

21  absence) was retaliatory. (Ex. RRRR.)  However, neither Ms. Madsen nor Mr. Fedewa decided to

22  issue this reprimand.  Rather, the decision was made by McCarthy's "friend" Daniel Harrington,

23  who was Mr. Fedewa's supervisor. (Tr. 628:16-636:22.)  McCarthy presented no evidence that her

24  friend Mr. Harrington even knew about her complaint to HR, so he could not have retaliated against

25  her because of it.  Likewise, McCarthy cannot rebut the legitimate, non-retaliatory reason that Mr.

26  Harrington gave her the written reprimand, namely, that the stores in McCarthy's territory were in

27  "some of the most horrific store conditions I had seen in my career." (Tr. 635:14-17.)

28          Likewise, it was Mr. Harrington who denied Schmitt's request to transfer to Colorado

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

21

(NO. 2:09-CV-02495-WBS-DAD)

1    in March 2008.  (Tr. 622:8-623:12.)  Mr. Harrington testified that the reason the request was denied

2    was because Schmitt had a written discipline (the discipline for failing to report to work in

3    November when she was out of the field for more than two hours).  (Id.)  As with McCarthy, Schmitt

4    has no evidence that Mr. Harrington ever knew that she complained to HR about harassment, and

5    thus could not have retaliated against her.  Likewise, Schmitt did not rebut Mr. Harrington's

6    legitimate non-retaliatory reason for his actions.

7         Moreover, Plaintiffs failed to present any evidence that the conduct they allege was

8    adverse was causally connected to their HR complaint, other than the timing of the events (i.e., they

9    complained in August 2007, and the "adverse employment actions" occurred after August 2007).

10   However, timing alone does not demonstrate that retaliation occurred.  Moreover, engaging in

11   protected conduct does not immunize an employee from adverse employment actions—including

12   termination, or from following company policies.  *See Marr v. Anderson*, 611 F. Supp. 2d 1130,

13   1144-45 (D. Nev. 2009) ("Beyond the timing of the [protected conduct] and the adverse actions,

14   Plaintiff has cited to no other evidence indicating that Defendant Anderson possessed a retaliatory

15   motive.  Accordingly, the court finds that no reasonable jury could conclude, based on evidence

16   before the court, that Plaintiff's [protected conduct] played a substantial or motivating role in

17   Defendant Anderson's decision to place Plaintiff on administrative leave and ultimately to terminate

18   Plaintiff."); *Swanson v. GSA*, 110 F.3d 1180, 1188, n.3 (5th Cir. 1997) ("If timing *alone* were

19   enough [to show retaliation], any action taken against Swanson after June 1990, no matter how

20   justified, could be sustained as discriminatory.  Title VII's protection against retaliation does not

21   permit EEO complainants to disregard work rules or job requirements.").

22        **4.    Judgment Should Be Granted for Defendant on Plaintiffs' Punitive**
23            **Damages Claims.**

24            **a.    Defendant is entitled to judgment as a matter of law on the**
                      **punitive damages claims because Plaintiffs did not comply with**
25                    **Rule 26(a)(1)(A)(iii).**

26        As a threshold matter, Plaintiffs failed to comply with Federal Rule of Civil

27   Procedure 26(a)(1)(A)(iii), which required them to provide a computation of damages in their initial

28   disclosures.  By failing to provide any computation of damages, Plaintiffs are barred from seeking

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

22

(NO.  2:09-CV-02495-WBS-DAD)

1  punitive damages on their Title VII claims. *See Estate of Gonzalez v. Hickman*, 2007 U.S. Dist.

2  LEXIS 84390, *15-17 (C.D. Cal. June 28, 2007); *Davis v. Harris*, 2006 U.S. Dist. LEXIS 88000,

3  *9-12 (C.D. Ill. Dec. 5, 2006).

4       In *Davis v. Harris*, as in the instant case, the plaintiff failed to provide any

5  computation of damages. The plaintiff noted that punitive damages are not susceptible to precise

6  calculation or expressly required under Rule 26, and therefore they could not be barred from seeking

7  punitive damages simply because they failed to provide a computation of damages. *Davis*, 2006

8  U.S. Dist. LEXIS 88000, at *9-12. The Court rejected this argument, explaining that without

9  providing *any* computation of damages the plaintiff was barred from seeking punitive damages as

10  well. *Id.* Like the plaintiff in *Davis*, Plaintiffs in this case failed to provide any computation of

11  damages. Thus, they are barred from seeking or receiving punitive damages.

12       **b.**     **Judgment should be entered for R.J. Reynolds on Plaintiffs'**
13       **punitive damages claims because Defendant did not recklessly disregard their federally protected rights.**

14       Even if Plaintiffs had complied with Rule 26(a)(1)(A)(iii), judgment should be

15  entered for R.J. Reynolds on Plaintiffs punitive damages claims. To find that punitive damages were

16  warranted under Title VII, the jury had to conclude that Defendant acted in "reckless disregard of

17  Plaintiffs' federally protected rights." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999).

18       Even if the Court found that there was sufficient evidence that any member of R.J.

19  Reynolds management acted in reckless disregard of Plaintiffs' federally protected rights, judgment

20  should still be entered for R.J. Reynolds on Plaintiffs' punitive damages claims because: (1) the

21  alleged bad actors, Ms. Madsen and Mr. Fedewa, were not "sufficiently senior" enough for their

22  conduct to be imputed to R.J. Reynolds, and (2) R.J. Reynolds had an anti-harassment policy in

23  place and effectively implemented it.

24       **(1)**     **Ms. Madsen's and Mr. Fedewa's conduct cannot be**
25       **imputed to R.J. Reynolds.**

26       The United States Supreme Court held: "[I]n the punitive damages context, an

27  employer may not be vicariously liable for the discriminatory employment decisions of managerial

28  agents where those decisions are contrary to the employer's 'good-faith efforts to comply with Title

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

23

(NO. 2:09-CV-02495-WBS-DAD)

1    VII.'"  *Kolstad*, 527 U.S. at 545.  The defendant has an affirmative defense to punitive damages

2    stemming from an action taken by a "managerial" employee when the defendant in good faith

3    implemented a bona fide policy against discrimination and harassment, provided that the managerial

4    employee was not the "corporation's proxy" or "sufficiently senior" enough for her actions to bind

5    the company.  *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 516-17

6    (9th Cir. 2000).

7         In this case the alleged bad actors were Ms. Madsen and Mr. Fedewa.  Plaintiffs

8    claimed that Ms. Madsen sexually harassed them from March – August 2007, but that they failed to

9    report any of her alleged conduct until August 2007.  There is no dispute that Ms. Madsen was

10   merely a supervisor, and therefore a "managerial" employee at most.  Plaintiffs presented no

11   evidence that either Ms. Madsen or Mr. Fedewa were the "corporation's proxy" in that they

12   "sufficiently senior" enough for their actions to be imputed directly to R.J. Reynolds.  In fact, the

13   undisputed evidence was that, as a division manager, neither Mr. Fedewa nor Ms. Madsen had

14   authority to unilaterally hire or fire TMRs, nor issue corrective action or even discipline the TMR

15   without the senior director's consent. (Tr. 507:7-14.)

16        Because Ms. Madsen and Mr. Fedewa were merely managerial employees, R.J.

17   Reynolds is not liable for punitive damages for their alleged conduct provided that it had an anti-

18   harassment policy in place and effectively implemented it.  *Passantino*, 212 F.3d at 516-17.

19        **(2)    Defendant effectively implemented its stringent anti-**
              **harassment and anti-retaliation policy.**
20

21        When an employer has undertaken good faith efforts at Title VII compliance, the

     employer cannot be said to be acting in reckless disregard of federally-protected rights.  *Kolstad*, 527
22
     U.S. at 544; *Bryant v. Aiken Regional Med. Ctrs., Inc.*, 333 F.3d 536, 548 (4th Cir. 2003)
23
     (defendant's "widespread anti-discrimination efforts" of implementing written policies and training
24
     programs precluded punitive damages against employer); *See also, Davey v. Lockheed Martin Corp.*,
25
     301 F.3d 1204, 1209 (10th Cir. 2002).
26
          In the instant case there is no dispute that R.J. Reynolds had an anti-harassment and
27
     anti-retaliation policy in place.  (Exs. A, B, H, K; Tr. 398:20-25, 470:5-13, 474:16-23.)  There is also
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

24

(NO. 2:09-CV-02495-WBS-DAD)

1   no dispute that in response to Plaintiffs' August 2007 complaints of harassment, the company

2   initiated two division-wide meetings and reprimanded the alleged bad actor, Ms. Madsen.  Equally

3   importantly, Plaintiffs concede that after they first complained in August 2007, they were never

4   again subjected to the allegedly sexually harassing behavior of Ms. Madsen. (Tr. 251:20-253:4,

5   406:23-408:4.)[6]  Hence, R.J. Reynolds both had an anti-harassment and anti-retaliation policy in

6   place and effectively implemented it to end all allegedly harassing behavior by Ms. Madsen

7   immediately after Plaintiffs complained about her.

8          Hence, even if the Court found that sufficient evidence existed for the jury to find that

9   sexual harassment occurred, and that Ms. Madsen recklessly disregarded Plaintiffs federally

10  protected rights, judgment should be entered on Plaintiffs punitive damages claims because she was

11  not sufficiently senior to bind R.J. Reynolds, and R.J. Reynolds had an anti-harassment policy in

12  place and effectively implemented it.   Likewise, none of the alleged retaliation that Plaintiffs

13  accused Mr. Fedewa of engaging in was sufficient to demonstrate a reckless disregard of federally

14  protected rights (particularly since every time Plaintiffs complained about Mr. Fedewa, HR

15  investigated their concerns).

16          **C.      In the Alternative, the Court Should Order a New Trial.**

17          Even if the Court denies Defendant's renewed motion for judgment as a matter of

18  law, the Court should order a new trial for two reasons: (1) the Court gave an erroneous jury

19  instruction that stated that sexual orientation is protected under Title VII; and (2) the verdict was

20  against the clear weight of the evidence.

21          **1.      It Was Error to Instruct the Jury That Sexual Orientation Is a Protected
                    Classification under Title VII.**

22

23          Over Defendant's repeated objections, the Court instructed the jury that sexual

24  orientation is a protected classification under Title VII.   (Jury Instruction No. 12.; Tr. 1087:2-

25  1092:2.)  During oral arguments on the issue, Plaintiffs' counsel represented that sexual orientation

26  _____

27  [6] Neither Plaintiff accused Mr. Fedewa of sexual harassment, only of retaliating against them because they filed a
    complaint against Ms. Madsen.  Schmitt's claim that Mr. Fedewa "retaliated" against her by following her to her car and
    slamming his laptop on the desk was insufficient to demonstrate that R.J. Reynolds recklessly disregarded her federally
    protected rights.  Similarly, his disciplinary write-up of McCarthy for failing to maintain her stores (which was actually
28  written by Mr. Harrington) does not equate to a reckless disregard of her federally protected rights.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)
25
(NO.  2:09-CV-02495-WBS-DAD)

1   is protected under Title VII, because Title VII prohibits discrimination on the basis of both sex and

2   gender.  The Court pointedly asked Plaintiffs' counsel whether Title VII says "sex **and** gender," (as

3   opposed to just "sex").  Plaintiffs' counsel responded that Title VII does in fact say "sex and/or

4   gender."  (Tr. 1089:20-1090:15.)  The Court then concluded that "Gender is whether you're male or

5   female. Sex could be whether you're sexually oriented one way or the other."  (Id.)

6           However, contrary to Plaintiffs' counsel's representation to the Court, **Title VII does**

7   **not have separate categories for "sex and gender."**   Rather, Title VII refers to "race, color,

8   religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

9           Over 30 years ago the Ninth Circuit held that sexual orientation was not a protected

10  class under Title VII. *DeSantis, supra*, 608 F.2d at 329-30 ("we conclude that Title VII's prohibition

11  on 'sex' discrimination applies only to discrimination on the basis of gender and *should not be*

12  *judicially extended to include sexual preference* such as homosexuality.") (emphasis added). This

13  decision has never been reversed by the Ninth Circuit or the Supreme Court.  *Rene v. MGM Grand*

14  *Hotel, Inc.*, 305 F.3d 1061, 1075 (9th Cir. 2002) (J. Hug, Dissenting).  In fact, since *DeSantis* was

15  decided in 1979, every federal court of appeals to address this issue (the First, Second, Third, Fourth,

16  Sixth, Seventh, Eighth, and Tenth Circuits) has reached the same conclusion that the Ninth Circuit

17  reached in *Disantis*, namely, that sexual orientation is not protected by Title VII. *Etsitty v. Utah*

18  *Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007); *Vickers v. Fairfield Med.*, 453 F.3d 757, 764-65

19  (6th Cir. 2006); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005); *Schroeder v.*

20  *Hamilton Sch. Dist.*, 282 F.3d 946, 951 (7th Cir. 2002); *Bibby v. Phila. Coca Cola Bottling Co.*, 260

21  F.3d 257 (3d Cir. 2001); *Higgins v. New Balance Athletic Shoes, Inc.*, 194 F.3d 252, 259 (1st Cir.

22  1999); *Wrighton v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996); *Williamson v. A.G.*

23  *Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (*per curiam*).

24          The Seventh Circuit's opinion on this issue is instructive.   When the plaintiff

25  requested that the court find that Title VII covers sexual orientation, the Seventh Circuit rejected his

26  invitation, explaining that "Title VII does not . . . provide for a private right of action based on

27  sexual orientation discrimination.   As such, to the extent Schroeder seeks to have this court

28  *judicially amend* Title VII to provide for such a cause of action, we decline to do so." *Schroeder*,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)          26          (NO.  2:09-CV-02495-WBS-DAD)

1   282 F.3d at 951 (emphasis added). The plaintiff then argued that the court should judicially amend

2   Title VII because of the perceived public benefit of including sexual orientation within its

3   provisions. The court emphatically rejected that contention as well, explaining, "It is wholly

4   inappropriate, as well as constituting **a clear violation of the separation of powers**, for this court,

5   **or any other federal court**, to fashion causes of action out of whole cloth, regardless of any

6   perceived public policy benefit." *Id.* (emphasis added).

7           By instructing the jury that sexual orientation was a protected class under Title VII,

8   the Court committed reversible error. Similarly, by refusing to give Defendant's proposed jury

9   instruction expressly stating that sexual orientation is not protected under Title VII, the Court

10  committed reversible error. (Tr. 1092:20-1093:13.) The judiciary cannot judicially amend Title VII

11  to include sexual orientation within its gambit. Though the Court speculated that the Ninth Circuit

12  may reverse its decision in *DiSantis* and hold that sexual orientation is now, in fact, covered under

13  Title VII, this Court was and is bound by *DiSantis*. Indeed, even the Ninth Circuit is bound by

14  *DeSantis* until either an *en banc* panel reverses it or the Supreme Court rules on the issue. *United*

15  *States v. Easterday*, 564 F.3d 1004, 1010 (9th Cir. 2009).

16          Hence, the Court should order a new trial because the jury was erroneously instructed

17  that Title VII protects employees who complain of sexual orientation discrimination. That is not the

18  law. The jury was allowed to conclude that Plaintiffs engaged in protected conduct by reporting

19  sexual orientation discrimination on behalf of Mr. Walker. (Tr. 1087:2-1092:2.) Since it found for

20  Plaintiffs on the retaliation claims, they awarded Plaintiffs compensatory and punitive damages on

21  those claims. However, the jury did not apportion the compensatory or punitive damages awards

22  between the sexual harassment and retaliation claims. A new trial should be ordered on both the

23  harassment and retaliation claims, since the erroneous instruction tainted the damages award.

24          **2.    The Verdict Was Against the Clear Weight of the Evidence.**

25          If the Court does not grant Defendant's renewed motion for judgment on both of

26  Plaintiffs' causes of action, or grant a new trial based on the erroneous jury instructions, the Court

27  should order a new trial because the verdict was against the clear weight of the evidence.

28          Federal Rule of Civil Procedure 59(a)(1) provides that a new trial may be granted "for

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 500
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

27

(NO.  2:09-CV-02495-WBS-DAD)

1    any reason for which a new trial has heretofore been granted in an action at law." A Court has a

2    duty to set aside a verdict even though it is supported by substantial evidence, if the Court "is of the

3    opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which

4    is false or will result in a miscarriage of justice . . ." *Gill v. Rollins Protective Svcs. Co.*, 773 F.2d

5    592, 594 (4th Cir. 1985) (internal quotes omitted); *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670

6    (5th Cir. 2002). A verdict should be set aside where, after giving full respect to the jury's findings,

7    the judge "is left with the definite and firm conviction that a mistake has been committed by the

8    jury." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1364, 1371-72 (9th Cir. 1987). In

9    ruling on a new trial motion based on insufficiency of the evidence, the district court must weigh the

10   evidence and assess for itself the credibility of witnesses. *Murphy v. City of Long Beach*, 914 F.2d

11   183, 187 (9th Cir. 1990) ("It is clear that the district judge had the right, **and indeed the duty**, to

12   weigh the evidence as he saw it, and to set aside the verdict of the jury, **even though supported by**

13   **substantial evidence**, where, in his conscientious opinion, the verdict is contrary to the clear weight

14   of the evidence, or . . . to prevent . . . a miscarriage of justice.") (emphasis added); *See also*, *Molski*

15   *v. M.J. Cable, Inc.*, 481 F.3d 724, 731-32 (9th Cir. 2007). Moreover, in deciding whether to order a

16   new trial, there is no presumption favoring the verdict, nor does the Court view the evidence in the

17   light most favorable to the non-moving party. *Landes*, 833 F.2d at 1371; *Manley v. Ambase Corp.*,

18   337 F.3d 237, 244-45 (2nd Cir. 2003).

19          The Court should order a new trial because the verdict finding sexual harassment

20   occurred and retaliation occurred was against the clear weight of the evidence in several respects,

21   including: (1) Plaintiffs were not subjected to either *quid-pro-quo* or hostile work environment

22   sexual harassment; (2) McCarthy's claim that Ms. Madsen touched her leg was clearly fabricated;

23   (3) Plaintiffs' claims of retaliation are against the clear weight of the evidence because numerous

24   witnesses testified as to why Plaintiffs received each disciplinary action and provided a legitimate

25   non-retaliatory reason for the company's actions; and (4) Plaintiffs' exaggerated their emotional

26   distress claims, which were credibly rebutted by the testimony of Defendant's expert witness, to

27   receive a $150,000 verdict (each) in compensatory damages that far exceeds their actual damages.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

28

(NO. 2:09-CV-02495-WBS-DAD)

a.   **As the Court has previously acknowledged, the evidence does not establish sexual harassment.**

In Section III(B)(2) above, which is incorporated fully by reference, Defendant has already addressed why Plaintiffs allegations do not constitute sexual harassment, even if those allegations are true. Defendant has also addressed why the *Faragher/Ellerth* defense bars Plaintiffs claims even if the conduct alleged did constitute sexual harassment. The Court has previously acknowledged that there was virtually no evidence of sexual harassment, even if the leg-touching incidents are believed. (Tr. 1043:24-1044:2.) Furthermore, the Court ruled on Defendant's summary judgment motion that this is not a *quid-pro-quo* harassment case. (Docket No. 59, at pp. 11-12, n.8.) Because the Court could not see any sexual harassment in this case, and the jury concluded otherwise, the Court should order a new trial because the verdict was against the clear weight of the evidence. *Molski*, 481 F.3d at 731-32.

b.   **McCarthy's allegation that Ms. Madsen touched her leg in October 2007 was fabricated.**

To the extent that the jury found that McCarthy was sexually harassed because Ms. Madsen allegedly touched McCarthy's leg and pants during an October 2007 work with, the jury's finding was unreasonable and against the clear weight of the evidence. Setting aside the fact that Ms. Madsen denied these incidents ever occurred, McCarthy did not complain about these alleged events for nine months. (Exs. 6, 10, 12, 15, 20, 21, MMM, BBBBB; Tr. 265:7-271:9.) This is telling because McCarthy complained in a number of written documents to R.J. Reynolds about perceived harassment and/or retaliation. (Id.) It is unfathomable that she would neglect to include this charge of a physical touching in any of her 8 written complaints to R.J. Reynolds, or in her EEOC charge. (Id.) Even when McCarthy made hand-written comments to the EEOC, she included inappropriate comments that Ms. Madsen allegedly made, but made no reference to the October touching incidents. (Exs. 10, MMM; 268:8-269:11.) It is equally unfathomable that McCarthy would fail to tell her own psychiatrists or doctors about these incidents until several months after they allegedly occurred, despite having numerous sessions with them where she complained about Ms. Madsen's allegedly inappropriate behavior. (Tr. 1055:17-1058:19.)

When McCarthy was asked why she did not report this alleged leg-touching incident

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

29

(NO. 2:09-CV-02495-WBS-DAD)

1  to HR she first testified that it was because she could not prove that it happened.  (Tr. 265:11-

2  269:11.)  Then, on her redirect examination, after having the weekend to rethink her testimony, she

3  decided to change her testimony and claim that she *did* in fact tell members of HR about this

4  touching incident in December 2007 and March 2008.  (Tr. 368:22-369:4, 370:5-372:18.)  She said

5  that in response to her claim that her manager rubbed her leg, HR representative Jennifer Sanders

6  told her that this was a "one off" and HR would not investigate her allegation of a physical sexual

7  contact because she could not prove that it happened.  (Id.)[7]  To accept McCarthy's testimony, the

8  Court would have to believe that an HR representative of R.J. Reynolds told her that she can only

9  complain of a  sexual touching when there are eye-witnesses. (368:22-369:4, 370:5-372:18.)  This

10  strains credulity.   When McCarthy and Schmitt each separately complained about Ms. Madsen's

11  alleged references to sexual positions, HR immediately investigated and instigated two division-wide

12  meetings.  If McCarthy really believed that she could not report any conduct of Ms. Madsen that she

13  had no witnesses to, then why did she report the sexual comments to HR which allegedly occurred

14  when Ms. Madsen and McCarthy were in her car alone?

15         What is most incredible about this assertion, however, is that McCarthy sent Ms.

16  Sanders an email in December 2007 stating that Ms. Madsen was retaliating against her and

17  harassing her, **yet the email made no mention of this alleged sexual touching.**  (Ex. 21.)  Hence,

18  McCarthy would like the Court to believe that she *orally complained* of a sexual touching to Ms.

19  Sanders in December 2007, but at the exact same time that she made a *written complaint* to Ms.

20  Sanders in December 2007, she omitted any reference to the alleged touching.  (Tr. 155:8-158:2.)

21  Why would McCarthy have included a reference to the sexual touching in her oral (i.e., unverifiable)

22  complaint, but not in her written (i.e., verifiable) complaint when both complaints were made to the

23  same person in the same month?  Moreover, why did McCarthy change her testimony from saying

24  that she did not tell anyone about the alleged leg-touching incidents until July 2008 to then testifying

25  that she told Ms. Sanders in December 2007?

26  [7]  The Court noted that this testimony was "brand new."  (Tr. 370:20-371:2.)  The reason why it was "brand new" is
27  because it was fabricated.  McCarthy realized that she had no explanation for why she failed to tell anyone about the
   alleged leg-touching incident for nine months, so she simply changed her testimony and stated that she *did* tell
28  somebody.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

30

(NO.  2:09-CV-02495-WBS-DAD)

As further evidence that McCarthy never reported the false leg-touching claims until July 2008, it is noteworthy that <u>within 30 minutes</u> of sending an email to HR regarding her allegation that Ms. Madsen touched her leg, Ed Heller from HR contacted her to discuss the accusation.  (Ex. SSSS; Tr. 308:15-310:15.)   Hence, in July 2008, when McCarthy did first make the accusation against Ms. Madsen, HR immediately responded.  This further belies her claim that she contacted HR in December 2007 and they told her that they would not even bother to investigate.

The reason McCarthy had not mentioned the touching incidents in October 2007 until July 2008 is because she had not yet thought to invent such an allegation against Ms. Madsen.  The Court should order a new trial because the harassment allegations are against the clear weight of the evidence.  *See Murphy*, 914 F.2d at 187.

### c.  Defendant had legitimate, non-retaliatory business reasons for each of the allegedly adverse employment actions.

In each instance where the Plaintiffs claimed that they had been retaliated against, Defendant proffered legitimate, non-retaliatory reasons for its actions.  Defendant's proffered reasons were supported by the clear weight of the evidence, whereas Plaintiffs contentions were merely conjecture.

Plaintiffs' claim that each disfavored employment action that occurred after their complaint to HR in August 2007 was retaliatory.  Plaintiffs alleged that a number of "disciplinary acts" constituted retaliatory adverse employment actions.  At most, only a handful of these could even arguably constitute a materially adverse employment action.  Even with those instances, all of the trivial actions Plaintiffs complain about were based on legitimate, non-retaliatory business reasons:

- Ms. Madsen and Mr. Fedewa rejected certain improper expense reports that Plaintiffs submitted.  (Tr. 161:17-162:9, 193:17-194:2, 424:12-425:10, 459:1-4.)   However, McCarthy admitted that she did not have the proper documentation for one expense report that she submitted, Ms. Madsen actually helped her to obtain a missing hotel receipt, and eventually did approve all of her expense reports when they were properly submitted with the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

31

(NO.  2:09-CV-02495-WBS-DAD)

1   required documentation. (Tr. 257:5-18, 1157:15-1158:4.) Moreover, Mr.

2   Sullivan testified that after assessing the situation independently he concluded

3   that the Plaintiffs failed to properly submit receipts to support their expense

4   reports, and, in any event, the Plaintiffs were never reprimanded for failing to

5   properly submit expense reports, **and every one of their expense reports**

6   **were fully paid.** (Exs.CC, DD, TTT; Tr. 533:17-534:24, 593:1-25.)

7   • Plaintiffs complained that their timecards were altered. However, as exempt

8   employees this did not affect their compensation or employment status in any

9   way, and they conceded that the timecards were only changed to reflect their actual

10   time worked. (Tr. 225:23-226:3, 432:13-19, 494:1-16, 495:16-21, 1158:5-23.)

11   • Plaintiffs complain that they had to move fixtures. Ms. Madsen credibly

12   denied this allegation. (Tr. 719:20-22.) In addition, Mr. Fedewa testified that

13   part of a TMRs job duties was to sometimes move fixtures. (Tr. 872:1-15.)

14   • Plaintiffs complain that they were reprimanded for failing to report that they

15   would be out of the field for more than two hours when working. However,

16   Plaintiffs concede that Ms. Madsen informed them that they were supposed to

17   report to her if they were out in the field for more than two hours, and that

18   they failed to do so. (Exs. HHH, QQQQQQ, p. 8 of first four versions of

19   handbook, and p. 9 of fifth version; Tr. 259:3-260:14, 497:24-499:17.)

20   Though Plaintiffs speculated that Ms. Madsen had separate requirements for

21   other TMRs (i.e., regarding whether they had to report to her when they were

22   out of the field for more than 2 hours), they failed to present any evidence on

23   this issue. (Tr. 259:3-260:14, 503:6-22, 1161:11-1162:18.)

24   • Schmitt claimed that Ms. Madsen retaliated against her by denying her a

25   lateral transfer request that she made in March 2008. However, Mr.

26   Harrington testified that *he* (not Ms. Madsen) made the decision not to grant

27   Schmitt's transfer request. (Tr. 622:8-623:12.) Mr. Harrington testified that

28   the reason the request was denied was because Schmitt had a written

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A          32
MATTER OF LAW PURSUANT TO RULE 50(A)

(NO. 2:09-CV-02495-WBS-DAD)

1    discipline. (Id.)

2    • McCarthy complained that her write-up in June 2008, for observations made
3        in her territory in March 2008, was retaliatory.  However, it was Daniel
4        Harrington who decided that she needed to be written up because her stores
5        were not kept in proper order. (Tr. 628:16-636:22.)  In fact, Mr. Harrington,
6        whom McCarthy described as her "friend," testified McCarthy's territory as
7        being in "some of the most horrific store conditions I had seen in my career."
8        (Tr. 337:2-5, 635:14-17.)  His testimony was uncontroverted. (Ex. RRRR.)

9    As is well documented, in each instance where the Plaintiffs complained of
10   retaliation, there was a legitimate, non-retaliatory reason for Defendant's actions.  Even if the trivial
11   matters for which Plaintiffs complain could constitute an adverse employment action, the clear
12   weight of the evidence established that there were legitimate reasons for each "adverse" action.  To
13   the extent that Plaintiffs' testimony contradicts the defense witnesses testimony, Plaintiffs' testimony
14   should be disregard because the Court has a duty to assess their credibility and it is clear that they
15   have no credibility.  *See Murphy*, 914 F.2d at 187; (Tr. 1067:23-1068:17, 1069:21-1070:19,
16   1071:18-25, 1072:10-1074:4, 1075:23-1077:3.)    (Dr. Weissman's testimony showing that both
17   Plaintiffs fabricated a number of their alleged mental symptoms for purposes of litigation.)

18   **d.    Plaintiffs exaggerated their "emotional distress" to obtain a
         compensatory damages verdict that far exceeds the monetary
19       value of any "emotional distress" they may have suffered.**

20   The jury awarded Plaintiffs $150,000 each in emotional distress damages.  However,
21   the undisputed expert testimony of Dr. Herbert Weissman established that Plaintiffs exaggerated or
22   fabricated their alleged symptoms.  (Tr. 1067:23-1068:17, 1069:21-1070:19, 1071:18-25, 1072:10-
23   1074:4, 1075:23-1077:3.)  Dr. Weissman testified that McCarthy simply lied about her symptoms,
24   and created the impression that she suffered from a greater set of mental issues than she actually did.
25   (Id.)  He further testified that McCarthy's symptoms (the ones that actually existed) were likely
26   attributable to her divorce with an abusive ex-husband who was still a major factor in her life due to
27   child custody issues. (Tr. 1069:4-13.)  Likewise, he testified that both McCarthy and Schmitt were
28   in the 99th percentile of those individuals who exaggerate their symptoms, and that they did this to

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO RULE 50(A)

33

(NO. 2:09-CV-02495-WBS-DAD)

1  further their litigation goals. (Tr. 1067:23-1068:17, 1069:21-1070:19, 1071:18-25, 1072:10-1074:4,

2  1075:23-1077:3.)  The Court has no reason to disbelieve Dr. Weissman's expert testimony.  His

3  testimony was not challenged by contrary expert testimony.  The reason that it was not challenged is

4  because it could not have been challenged based on sound scientific principles.  Hence, the award of

5  $150,000 per Plaintiff greatly exceeds the amount of damages Plaintiffs actually suffered, and a new

6  trial should be held to determine what Plaintiffs actual damages are, if any.[8]

7  **IV.    CONCLUSION**

8          For the reasons aforementioned, Defendant respectfully requests that this Court grant

9  its renewed motion for judgment as a matter of law.  Failing that, Defendant requests that this Court

10  strike the award of punitive damages.  Failing that, Defendant requests that this Court grant its

11  motion for a new trial.  Failing that, Defendant requests that the Court greatly reduce the amount of

12  compensatory damages awarded to Plaintiffs.  Failing that, Defendant requests that this Court amend

13  the judgment to conform to the statutory caps in Title VII.

14  Dated: July 11, 2011

15                                                      /s/ Anne-Marie Waggoner
16                                                      JEFFREY L. ADAMS
                                                        ANNE-MARIE WAGGONER
17                                                      TARUN MEHTA
                                                        LITTLER MENDELSON
18                                                      Attorneys for Defendant
                                                        R.J. REYNOLDS TOBACCO COMPANY

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

---

[8] Because Dr. Weissman's testimony regarding Plaintiffs' feigned emotional distress was uncontroverted, an appropriate amount of emotional distress damages, if any should be awarded, should be nominal damages, not to exceed one dollar.

DEFENDANT'S MOTION FOR JUDGMENT AS A          34          (NO.  2:09-CV-02495-WBS-DAD)
MATTER OF LAW PURSUANT TO RULE 50(A)