Aldon L. Bolanos, Esq., SBN. 233915
Law Offices of Aldon Bolanos
925 "G" Street
Sacramento, CA 95814
Ph. 916.446.2800
Fx. 916.446.2828
www.aldonlaw.com

Attorney for Plaintiffs V. McCarthy and K. Schmitt

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Victoria McCarthy, Katherine Schmitt,<br><br>       Plaintiffs,<br><br>       vs.<br><br>R.J. Reynolds Tobacco Co., DOES 1-10,<br><br>Defendants. | Case No.  2:09-CV-02495-WBS-DAD<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO STAY ENFORCEMENT OF JUDGMENT**<br><br>Date: August 1, 2011<br>Time: 02:00 p.m.<br>Ctrm: 05<br><br>**Hon. William B. Schubb** |

## I.   PREFATORY STATEMENT

Plaintiffs Victoria MCCARTHY and Katherine SCHMITT obtained a money judgment on June 14, 2011 after a 10 day trial on their claims under Title VII of the Civil Rights Act of 1964.  Defendant RJ REYNOLDS TOBACCO COMPANY now moves the court to stay enforcement of the judgment on three grounds: 1) An argument that the cap on damages in 42 USC 1981a was exceeded; 2) An argument that there was insufficient evidence for the jury's

1

finding; and 3) An argument that punitive damages were unjust.

In considering a motion to stay, Courts in the Ninth Circuit apply a four-pronged test. The movant must demonstrate:

1. A strong showing that it is likely to succeed on the merits;

2. Irreperable injury if the stay is not granted;

3. No substantial injury to the non-movant if a stay is granted; and

4. Public interest in favor of a stay.[1]

As set forth herein, the defense motion lacks merit for the following reasons:

1. As much as R.J. Reynolds wishes it were not the case, the Ninth Circuit has *not* interpreted the statutory cap in the manner the Tenth has, and <u>has in fact found 42 USC 1981a to be ambiguous on its face</u>.

2. The R.J. Reynolds motions are likely to fail because the Ninth Circuit's initial foray into "sexual orientation" as a protected class/activity, the *DeSantis* case, has been *both* substantively abrogated *and* outright overruled by subsequent decisions.

3. The R.J. Reynolds Tobacco Company, with a net worth of $8.8 billion dollars, cannot be heard to claim

---

[1] Golden Gate Restaurant Ass'n v. City and County of San Francisco, 512 F. 3d 1112, (9th Cir. 2008).

2

both irreparable injury if payment is made and that its financial strength means it should not be required to post a bond for the amount of the judgment and the attorneys' fees incurred to date.

4.   There is absolutely no evidence in the record to support the *ipsi dixit* contention that plaintiffs McCarthy and Schmitt could not repay any portion of a judgment upon subsequent adjudication.

## II.  ARGUMENT

**A.   The Statutory Cap on Compensatory and Punitive Damages Applies to Each Claim and to Each Category of Damages**

*1.   Authority Cited By R.J. Reynolds Is Not Persuasive to the Ninth Circuit*

R.J. Reynolds contends the statutory cap on damages stated in 28 USC section 1981a applies to both the sum of compensatory damages and punitive damages, for all claims involved, and cannot exceed $300,000.00. As authority for its interpretation, it cites *Hemmings v. Tidyman's Inc.*, 285 F. 3d 1174 (9th Cir. 2002), *Baty v. Willamette Indus.*, 172 F. 3d 12342 (10th Cir. 1999) and *Hudson v. Chertoff*, 473 F. Supp. 2d 1286 (S.D. Fla. 2007).  A brief examination of this line of cases however reveals the R.J. Reynolds argument for what it is: a house of cards.

First of all, in *Hemmings*, the defendant asked the Court to apply the cap to front pay and to state law

1  claims. The Court declined. *Hemmings v. Tidyman's*
2  *Inc.*, 285 F. 3d 1174, 1195, ("Tidyman's argues that the
3  district court erred by not applying the section 1981a
4  damages cap to (1) the plaintiffs' front pay awards;
5  and (2) to the Washington state law discrimination
6  claims. Both arguments lack merit").
7       That is the extent of the Court's decision in
8  *Hemmings*.
9       Secondarily, and more importantly, the only other
10 decisions which have addressed an interpretation of the
11 cap have merely concluded that the statute was
12 unambiguous on its face, thereby foreclosing deference
13 to the EEOC's regulations interpreting the section.
14 <u>But the Ninth Circuit has specifically held just the</u>
15 <u>opposite</u>: that 1981a *is* ambiguous on its face.
16      Specifically, in *Baty* the Court states: "Two weeks
17 ago, the Tenth Circuit adopted the single-cap
18 interpretation in Nelson v. Rehabilitation Enterprises
19 of North Eastern Wyoming [citations omitted]. In
20 Nelson, the court held that the "clear and unambiguous
21 language" of section 1981a(b)(3) indicated that a cap
22 allies for "each complaining party" and not to each
23 Title VII claim." *Baty v. Willamette Industries, Inc.*,
24 985 F. Supp. (D. Kansas) 987, 998.
25      Then R.J. Reynolds cites *Hudson v. Chertoff*, 473
26 F. Supp, 2d 1286. In Hudson, the court again
27 acknowledges that "the courts that have addressed the
28 issue rely on fundamental principles of statutory

4

1 construction.  One such principle is that the language
2 of the statute itself is the starting point for
3 interpreting the statute.  Absent a clearly expressed
4 legislative intention to the contrary, that language
5 must ordinarily be regarded as conclusive.  *Ibid*. at
6 1289.

8    That judicial reasoning stands in stark contrast
9 with the Ninth Circuit., which in *EEOC v. Dinuba*
10 *Medical Clinic*, 222 F. 3d 580 (9th Cir. 2000), reasoned
11 as follows regarding 1981a:
12   "We must consider first whether Congress has
13 directly spoken to the precise question at issue.  If
14 Congress has done so, the inquiry is at an end; the
15 court must give effect to the unambiguously expressed
16 intent of Congress. However, if Congress has not
17 specifically addressed the question, a reviewing court
18 must respect the agency's construction of the statute
19 so long as it is permissible.  **_Because s 1981a is_**
20 **_ambiguous on the question of…Title VII recovery up to_**
21 **_the statutory limit for each aggrieved employee…_**"
22 *Dinuba* at 588-589, emphasis added.
23   *Ergo*, since the burden is on R.J. Reynolds to show
24 a substantial likelihood of prevailing on the merits of
25 this issue, and since it has not and cannot articulate
26 any legal authority for the proposition that the Ninth
27 Circuit would rule according to Reynolds' proffered
28 interpretation, *and* since plaintiffs have in fact

5

proffered Ninth Circuit authority which holds *exactly the opposite* of what Reynolds claims it would hold, the defendant has not met its heavy burden and its motion cannot be granted on this basis.

R.J. Reynolds therefore has failed to meet its substantial burden on this prong of the analysis.

B.   The Court "Can't See It" But the Jury Can and Did

R.J. Reynolds next concludes, quite cleverly yet somewhat disingenuously, that because the court remarked that it (the court) could not ascertain whether sex harassment occurred, that the defendant is likely to prevail on a post-trial motion regarding this claim.

But the transcript of the court's statement, which is provided by the defense motion, says something totally different from what defendant claims.  Indeed, the court stated that because the standard is that of a "reasonable woman" in the circumstances, the court is the "last person that ought to know the answer to that question."  It concluded the issue was better left to the jury.

Which it was, and a jury of nine women and one retired EEOC judge found the evidence supported a verdict for plaintiffs and an award of punitive damages for willful discrimination. Therefore, R.J. Reynolds cannot be heard to claim a substantial likelihood of prevailing on its post-trial motion because the age and

6

gender of the court has not changed – it is still not in a position to say with certainty what a reasonable woman in similar circumstances would have or could have perceived regarding hostility in the workplace. Again the defense motion comes up short and on this basis cannot be granted.

**C.   R.J. Reynolds Tobacco Company Will Not Suffer Any Irreperable Injury With Enforcement of the Court's Judgment**

R.J. Reynolds argues here that plaintiffs McCarthy and Schmitt do not earn sufficient income to repay a judgment. This *ipsi dixit* contention is nothing more than rank speculation. The financial status of these women is completely unknown to R.J. Reynolds and its attorneys; on the contrary, Ms. McCarthy receives a substantial disability payment each month and testified that she could still work and would like to get back to work. Moreover, in a fit of elitism, the defense also concedes that Ms. Schmitt does earn wages but that her earnings are insufficient to garnish. Such a contention, aside from being completely unsupported by any evidence whatsoever proffered by the defense to this court, is downright insulting. Frankly, it would be akin to plaintiffs contending that R.J. Reynolds should pay the judgment now because they are merchants of death.

Additionally, the argument that the statutory cap precludes plaintiffs from one-fourth of their judgment is, as set forth above, completely unsupported.

The result is that R.J. Reynolds has again failed to meet its heavy burden on this prong of the analysis. On the contrary, it offers nothing beyond conjecture for its own belief that it would suffer irreparable injury in paying a civil rights judgment now, despite a net worth of $8.8 billion dollars. Rationally, the argument just does not jive.

**D.  Ms. McCarthy and Ms. Schmitt Will Be Substantially Injured If a Stay Is Granted**

In nary the next breath after R.J. Reynolds claims it would be irreparably injured if the judgment were executed upon, it then compares itself to the Oakland Raiders and represents it is "certain" to pay any judgment on appeal, such that in never even offers to post a bond for the judgment amount and attorneys' fee motion amount. Moreover, given that Ms. McCarthy and Ms. Schmitt lost their jobs over three years ago, the balance of the equities dictates that they receive their payments sooner rather than later, as R.J. Reynolds is likely to abuse the low federal interest rate (matched to the Treasury Bond) to prolong litigation as long as possible and realize a substantial return on funds subject to the judgment.

Additionally, the defense motion misses its mark when it refers to the knowing acceptance of risk of appeal because this motion is not brought in furtherance of an appeal. An appeal would require a supersedeas bond. Here the defense requests a stay pending post-trial motions for insufficiency of evidence. So the argument is both misguided and downright disingenuous.

**E.   No Public Interest Is Served By Preventing Execution on the Judgment**

Simply stated, R.J. Reynolds' motion provides no real tangible basis upon which this Court could hang its hat for a stay. Rather, it provides only non-binding and unpersuasive authority, conjecture, rank speculation, and the same prior arguments already previously rejected by this Court and by the jury in this case. Because it bears the burden of persuasion, and because it is a substantial burden, requiring a "strong likelihood" of prevailing, the motion should be denied on a purely legal basis: the defense failed to meet its burden.

On the contrary, the public interest is best served by the swift and efficient administration of justice. A jury found that R.J. Reynolds violated the civil rights of Ms. McCarthy and Ms. Schmitt. It punished the defendant with punitive damages for willful misconduct. The public interest and the public

trust and faith in administration of justice demand that wrongdoers be held accountable for their actions, not be permitted to delay enforcement merely to collect interest in the judgment funds in excess of the Treasury Bill rates.  R.J. Reynolds wants this court to support its business interests, and the court should decline that invitation and instead allow justice to run its due course now.

### III. CONCLUSION

Plaintiffs respectfully request that R.J. Reynolds' motion to stay be denied as legally insufficient.  In the alternative, it is respectfully requested that defendants be required to post a bond for the entire amount of the judgment and any attorneys' fee award pursuant to the motion for same now pending before this court and in fact set for hearing on the same day as this motion.

Respectfully submitted,

DATED: JUNE 15, 2011           /s/ Aldon L. Bolanos, Esq.


                               ALDON L. BOLANOS, ESQ.
                               ATTORNEY FOR PLAINTIFFS