Aldon L. Bolanos, Esq., SBN. 233915
Law Offices of Aldon Bolanos
925 "G" Street
Sacramento, CA 95814
Ph.  916.446.2800
Fx.  916.446.2828
www.aldonlaw.com

Attorney for Plaintiffs V. McCarthy and K. Schmitt

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Victoria McCarthy, Katherine Schmitt,<br><br>Plaintiffs,<br><br>vs.<br><br>R.J. Reynolds Tobacco Co., DOES 1-10,<br><br>Defendants. | Case No.  2:09-CV-02495-WBS-DAD<br><br>**PLAINTIFFS' REPLY ON MOTION FOR STATUTORY FEES AND COSTS INCURRED**<br><br>Date: August 1, 2011<br>Time: 02:00 p.m.<br>Ctrm: 05<br><br>**Hon. William B. Schubb** |

**1.   Introduction: The two defense arguments and why they are defective**

R.J. Reynolds' Opposition to this motion for statutory fees advances two arguments.  First, it asks the court to reduce any fee award because the plaintiffs' disability discrimination claims and tortuous adverse employment action are "unrelated" to their sex harassment and retaliation claims. Second, it

1

asks the court to stay its ruling pending the outcome of other motions the defendant intends to bring.

As set forth herein, both requests lack substantive merit because they are both completely unsupported by any cited legal precedent, they both betray common sense, and they ask the court's permission to "starve" civil rights plaintiffs in order to avoid a legitimate jury verdict and substantial judgment against it.  For these reasons, the opposition should be rejected and the motion for statutory fees should be granted in whole.

**2.   The defense argument that plaintiffs' claims were somehow unrelated is utterly specious; All claims arose out of the same nucleus of common facts and circumstances**

RJR's first argument is that the fee award should be reduced because plaintiffs' unsuccessful disability discrimination claims were purportedly "unrelated" to their very successful hostile work environment and retaliation claims.  This argument sinks for two unrelated reasons: A) The defense never provides any real analysis supporting its contention, instead offering the conclusory phrase "needless to say" as its sole support; and B) Even the most cursory examination of the complaint and the operative facts adduced at trial reveals that all the claims and consequences in this case arose out of the same nucleus of operative

1 fact such that they are indeed more related than
2 kissing-cousins.
3
4     Initially, in perhaps a fatal Freudian slip, the
5 defense papers state: "Needless to say, their causes of
6 action for disability discrimination and failure to
7 accommodate a disability under the FEHA bear no
8 resemblance to their claims for sexual harassment and
9 retaliation under Title VII." *Opposition*, page 3,
10 lines 7-9.  Actually, it *does* "need to be said."  An
11 ipsi dixit contention does not a legitimate legal
12 argument make.  Indeed, this sole phrase is the lone
13 "analysis" offered for a sweeping proposition.
14 Accordingly, without more it is facially and fatally
15 insufficient.
16     Contrast the defense position with the U.S.
17 Supreme Court case of *Hensley v. Eckerhart*, 461 U.S.
18 424.  In *Hensley*, the Court states: "There remain other
19 considerations that may lead the district court to
20 adjust the fee upward or downward, including the
21 important factor of the "results obtained." *Id*. at
22 434.  "This factor is particularly crucial where a
23 plaintiff is deemed 'prevailing' even though he
24 succeeded on only some of his claims for relief." *Id*.
25 "In this situation two questions must be addressed.
26 First, did the plaintiff fail to prevail on claims that
27 were unrelated to the claims on which he succeeded?
28 Second, did the plaintiff achieve a level of success

3

that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id*.

The Court in *Hensley* goes on: "In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit…counsel's work on one claim will be unrelated to work on another claim (such that) work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id*. at 435.

Then, the Court makes the following crucial insight: "Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. at 435.

Here, the entire cause or basis of Ms. McCarthy and Ms. Schmitt's disability discrimination claims arises out of the very same facts which gave rise to

4

their very successful sex discrimination and retaliation claims.  Indeed, the "retaliation" itself – the suddenly negative performance reviews, the new tasks such as moving other employees' storage boxes and generating pointless spreadsheets, the daily early a.m. phone calls, an abrupt halt to career advancement with the revocation of a promised promotion, the threats to "drop in" and perform a performance appraisal on any given day, all are the facts which ultimately led to both plaintiffs suffering debilitating disabilities in the form of the colloquial "panic attacks," agoraphobia, and depression.  These were physician-diagnosed conditions which resulted directly from the actions that formed the very basis of plaintiffs' retaliation claims.

The sex harassment facts are similarly "related." All of Madsen's acts, from the explicit correlation of sex behaviors to performance in the workplace, to the R-rated language deployed to inquire about facets of underlings' sex lives, to outright groping of Ms. McCarthy in a vehicle with subsequent leg-caressing while stating "None of this would have happened to you if you had just remained my girl," all triggered the medical conditions which formed the basis for the plaintiffs' disability discrimination claims.

Indeed, the court's central conclusion in disposing of the disability claims on summary adjudication is that plaintiffs were so disabled they

were unable to return to work, thereby obviating any need for a reasonable accommodation. In short, it stretches the boundaries of imagination to conceive of any way the claims could be *more* related!

The same analysis applies to the "tortuous adverse employment action" claim. It was only abandoned on the eve of presenting jury instructions to avoid jury confusion because the state law standard for punitive damages was different from the federal law standard. Otherwise, the claims themselves were nearly identical.

Moreover, the plaintiffs achieved a spectacular success at trial, after which a jury of peers, including nine women and a retired EEOC judge, found that plaintiffs had been subject to a hostile work environment and unlawful retaliation for engaging in protected activity, justifying an award of compensatory and punitive damages of over three quarters of a million dollars. Under such circumstances, and given the court's strong public policy in encouraging these kinds of successful claims, an upward multiplier of an award is justified (though not requested), not a reduction.

///

**3. There is no sound basis for delaying an award of statutory attorneys' fees to a civil rights plaintiff where a defendant is endeavouring to "starve out" a prevailing party with substantial post-trial and appellate maneuvering**

RJR's second gambit asks the court to withhold a decision on this motion pending appeal, with its lone citation to the case of *Petties v. District of Columbia*, 227 F. 3d 469 (DC Cir. 2000). *Defense Opposition*, page 3, lines 24-25.

*Petties* is an interesting case both in the history of U.S. jurisprudence and for analyzing the "checks and balances" system of U.S. government, but it does not provide any support for the defense here. Specifically, in *Petties* a class of D.C. schoolchildren brought and prevailed on injunctive claims of inadequate education within the District.[1] During the pendency of litigation, plaintiffs brought numerous motions for attorneys' fees, which were granted, up until the U.S. Congress enacted legislation which limited the amount of fees the District could pay. *Id*. at 471.

On appeal, the court did little more than conclude it did not have jurisdiction to hear what amounted to a separation of powers issue, for procedural reasons not relevant here. *Id*. at 472. That is the extent of the

---

[1] For example, the District was required to fund private programs for special needs children which were not available in the public schools. *Petties* at 471.

7

holding cited by the defense. Nothing more. Thus, it is clear that this case does not stand for nor support the defense request.

Contrast the defense's weak legal authority and position with *Homans v. City of Albuquerque*, 264 F. Supp. 2d 972 (2003). In *Homans*, the defendant asked the court to stay an attorneys' fee award under 42 USC section 1988 on the grounds that plaintiff was not a "prevailing party" because a notice of appeal had been filed. *Id*. at 978. The court rejected this argument, holding: "There is no reason for the court to postpone decision on plaintiff's fee request. As plaintiff succeeded on the merits of his constitutional challenge…plaintiff was the prevailing party in this litigation for purposes of a fee award under section 1988." *Id*. at 978.

Thus, it is equally clear that under *Homans* the plaintiffs are entitled to an award of statutory fees now, rather than later.

Other courts have recognized the strong judicial policy of making immediate statutory awards to civil rights plaintiffs to avoid the "starving out" of litigants with protracted and costly litigation even after a jury trial in their favor has made them a prevailing party. *Hanrahan v. Hampton*, 446 U.S. 754 (1980), 758, *Taylor v. Westley*[2], 525 F. 3d 1288 (9th

---

[2] This case was previously before this very same court.

8

1  Cir. 2008), at 1290, ("Because of disparity in
2  litigation resources between parties, failure to award
3  fees would create a considerable risk of starving out
4  plaintiffs with what we have already determined to be
5  good claims").
6  　　　Here, this case is already three years old.  The
7  plaintiffs were required to make substantial outlays
8  for deposition transcripts, trial transcripts, and ten
9  days of jury trial when counsel could neither seek nor
10 obtain gainful legal employment due to the demands of
11 trial.  The defense has indicated it wishes to pursue
12 substantial post-trial motion work and appellate
13 appeal.  Such actions would require another substantial
14 commitment of time and resources by plaintiffs.  The
15 practical effect is that these civil rights plaintiffs
16 could be "starved out" of the litigation without the
17 infusion that a fee award would bring.  Such a result
18 would be incongruous with judicial policy and
19 Congressional intent with regard to Title VII cases.
20
21 　　　There is another compelling basis for this court
22 to award fees now, and that is the intent of the
23 parties as manifested in their stipulation (and the
24 court's order) to stay enforcement of the judgment.
25 　　　Specifically, the parties negotiated a stay on the
26 underlying judgment only until the defense post-trial
27 motion is heard, in exchange for the provision of a
28 bond subject to both the judgment and any award of

9

1 attorneys' fees.  The negotiated stay expressly did not
2 apply to the attorneys' fee motion, and the bond
3 expressly did apply to the attorneys' fee motion.  The
4 court did review and approve this stipulation, making
5 it the law of the case.
6     Thus, it stands the reason that the parties and
7 this court did *not* contemplate a stay on the attorneys'
8 fees motion and award, and indeed a stay would violate
9 that order and stipulation and grant the defense an
10 unexpected and disingenuous windfall of receiving more
11 than that for which it bargained.

28 ///

**4. Conclusion: Traditional notions of fair play, equity, and substantial justice all militate in favor of an award to the prevailing parties in this Title VII civil rights case**

The jury has spoken, and so now this court should act and do justice. For the reasons stated herein, it is respectfully submitted that an award of statutory fees be made in the amount requested, and immediately from the bond posted by the defense for this exact purpose, both because these prevailing parties are entitled to such an award and so that they can continue to defend the jury's verdict from continual post-trial assault.

Respectfully submitted,

Dated: July 21, 2011     Law Offices of Aldon Bolanos

*/s/ Aldon L. Bolanos, Esq.*

Aldon L. Bolanos, Esq.
Attorney for Plaintiffs
Victoria McCARTHY and Katherine SCHMITT

11