UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| VICTORIA McCARTHY, KATHERINE SCHMITT, | NO. CIV. 2:09-2495 WBS DAD |
| Plaintiffs, | MEMORANDUM AND ORDER RE: MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL, AND TO AMEND OR ALTER THE JUDGMENT |
| v. | |
| R.J. REYNOLDS TOBACCO CO., and DOES 1-10, | |
| Defendants. | |

----oo0oo----

On June 13, 2011, the jury returned a verdict in favor of plaintiffs Victoria McCarthy and Katherine Schmitt after a seven-day trial. (Docket No. 107.) Defendant R.J. Reynolds Tobacco Co. now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 and moves for a new trial or to alter or amend the judgment pursuant to Rule 59.

I.   Factual and Procedural Background

This action arises out of plaintiffs' former employment with defendant. Plaintiffs brought claims under Title VII of the

1

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, for sexual harassment and retaliation, under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, for disability discrimination and failure to accommodate, and for tortious adverse employment actions in violation of public policy.  The court granted summary judgment on plaintiffs' FEHA claims, (Docket No. 59), and plaintiffs abandoned their remaining state law claims before submitting the case to the jury.  On June 9, 2011, the court denied defendant's motion for judgment as a matter of law. (Docket No. 98.)  Plaintiffs went to the jury on their claims of sexual harassment and retaliation under Title VII.  The jury found for plaintiffs on both claims, awarding $150,000 in compensatory damages and $250,000 in punitive damages to each plaintiff.  (Docket No. 107.)

II. Discussion

    A.   Sexual Harassment Claim

Defendant moves for judgment as a matter of law under Rule 50, or in the alternative, for new trial under Rule 59. Defendant first argues that it is entitled to judgment on plaintiffs' sexual harassment claim because defendant took reasonable steps to prevent and correct harassment.  This affirmative defense, however, known as the Ellerth/Faragher defense,[1] was available to defendant only if the jury did not find that plaintiffs suffered a tangible employment action as a result of the sexual harassment.  See Penn. State Police v. Suders, 542 U.S. 129, 137-38 (2004).  Here, on the special

---

[1] Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. Boca Raton, 524 U.S. 775, 807 (1998).

verdict form, the jury found that plaintiffs did suffer a tangible employment action as a result of the sexual harassment, and thus did not – and was not entitled to - reach the question of whether defendant exercised reasonable care to prevent and promptly correct the sexually harassing behavior.

Second, defendant argues that there was no evidence that plaintiffs were harassed because of their sex and that the conduct of defendant's supervisor did not constitute sexual harassment. Rule 50 provides for the entry of judgment on any issue or claim as to which a "reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party. Fed. R. Civ. P. 50(a).

The verdict of the jury on plaintiffs' sexual harassment claim was not necessarily the verdict the court would have returned were it the trier of fact. Whenever a judge disagrees with a jury's verdict it is tempting to conclude that the verdict was unreasonable. Judges, however, must resist that temptation. There are good reasons why cases involving alleged workplace discrimination are best decided by juries rather than judges.

By the very nature of our job, judges tend to become isolated from the rest of the community. Our ethics tend to limit the persons with whom we can associate and the activities in which we can engage. The demands of our workload tend to confine us to our chambers and our courtrooms a great percentage of the time. We no longer have to interact, as we once did, with supervisors and fellow employees in the workplace. Conduct which may have been commonplace and generally accepted in the workplace

3

in past years, with which we are most familiar, may have become unacceptable, or even intolerable, by contemporary standards.

Jurors, on the other hand, selected at random from a cross section of the community, can be expected to be more in touch with the expectations of employees in the modern working environment. A crucial question the trier of fact had to answer on plaintiffs' sexual harassment claim in this case was whether a "reasonable woman" in the plaintiffs' circumstances would consider the working environment to be sexually abusive or hostile. Who was best qualified to answer that question: a male judge, whose background and experience give him no more insight into the expectations of a reasonable person, much less a reasonable woman, than anyone else; or a randomly selected jury consisting of nine women and one man from the community? The answer should be obvious.

Defendant makes no claim of any defects in the jury selection process, nor does it claim any instructional error in connection with the issue of liability on plaintiffs' sexual harassment claim. Counsel were given a full opportunity to question the prospective jurors on voir dire and to exercise the peremptory challenges authorized by the rules. For this court to find the jury's verdict was unreasonable, it would have to conclude that the jury selection process mandated by the statutes and rules just happened to result in the empanelment of a jury consisting of nine unreasonable women and an unreasonable judge.[2] To do so in this case would be nothing short of calling the whole

---

[2] The only male juror was a retired Hawaii state court judge who now serves as a federal administrative law judge.

4

jury system into question.

While the court may not necessarily agree with the jury's decision, it was their decision to make. The court cannot say that the verdict was one that no reasonable juror could have reached. Accordingly, defendant is not entitled to judgment as a matter of law or a new trial on the ground that the jury came to an improper verdict.

### B. Retaliation Claim

Plaintiffs' retaliation claim was based on the theory that the adverse actions taken against them were in retaliation for their complaints of both (1) sexual harassment of plaintiffs and (2) discrimination against another employee because he was homosexual. Defendant objects to the court's inclusion of "sexual orientation" in Jury Instruction No. 11, which stated:

> In the second claim brought under federal law, plaintiffs seek damages against the defendant for retaliation. To prevail on a claim for retaliation, each plaintiff has the burden of proving the following elements by a preponderance of the evidence:
>
> (1) the plaintiff engaged in or was engaging in an activity protected under federal law, which includes complaining to the defendant or filing a complaint with the Equal Employment Opportunity Commission based on the plaintiff's reasonable belief that her employer was engaged in unlawful conduct, which includes subjecting an employee to a sexually hostile work environment or discriminating against an employee on account of race, age, sex, or <u>sexual orientation</u> . . . .

(Docket No. 103 (emphasis added).)

In complaining of the court's inclusion of "sexual orientation" in the above instruction, defendants rely heavily on the Ninth Circuit's decision in <u>DeSantis v. Pac. Tel. & Tel. Co., Inc.</u>, 608 F.2d 327, 329-30 (9th Cir. 1979) ("[W]e conclude that

5

Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality."). 42 U.S.C. § 2000e-2(a)(1). Defendants also point out that since <u>DeSantis</u> was decided in 1979, the First, Second, Third, Fourth, Sixth, Seventh, Eighth, and Tenth Circuits have reached the same conclusion.[3]

       The question here, however, is **not** whether plaintiffs' co-worker could have asserted a Title VII claim against defendant for discrimination against **him** based upon his sexual orientation. Rather, the question is whether plaintiffs may assert a Title VII claim for **retaliation** against **them** based upon their complaints of discrimination against their co-worker because of his sexual orientation. This latter question has already been answered unequivocally in the affirmative by the Ninth Circuit in <u>Dawson v. Entek</u>, 630 F.3d 928, 933-34 (9th Cir. 2011).

       In <u>Dawson</u>, faced with the question of whether an employer's termination of an employee in retaliation for the employee's complaint that he was being harassed because of his sexual orientation gave rise to a Title VII retaliation claim, the Ninth Circuit stated clearly that "Title VII prohibits an employer from discriminating against an employee for opposing an

---

[3] See <u>Etsitty v. Utah Transit Auth.</u>, 502 F.3d 1215, 1222 (10th Cir. 2007); <u>Vickers v. Fairfield Med. Ctr.</u>, 453 F.3d 757, 764-65 (6th Cir. 2006); <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 217 (2d Cir. 2005); <u>Schroeder v. Hamilton Sch. Dist.</u>, 282 F.3d 946, 959 (7th Cir. 2002); <u>Bibby v. Phila. Coca Cola Bottling Co.</u>, 260 F.3d 257, 261 (3d Cir. 2001); <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 259 (1st Cir. 1999); <u>Wrighton v. Pizza Hut of Am., Inc.</u>, 99 F.3d 138, 143 (4th Cir. 1996); <u>Williamson v. A.G. Edwards & Sons, Inc.</u>, 876 F.2d 69, 70 (8th Cir. 1989).

6

unlawful employment practice, <u>such as filing a complaint alleging sexual orientation harassment</u> and hostile work environment." <u>Id.</u> at 936 (emphasis added).

This was not mere dicta. It was an essential part of the <u>Dawson</u> court's reasoning in arriving at its decision. The court held that the plaintiff had "engaged in protected activity when he visited [] human resources to discuss his treatment and file a complaint . . . based directly on sexual orientation discrimination." <u>Id.</u>[4] This court will not infer that the above language was inserted into the <u>Dawson</u> opinion through inadvertence, accident, or mistake. <u>Dawson</u> was decided well after <u>DeSantis</u> and has not been overruled, qualified, or criticized in any subsequent Ninth Circuit decision.

In light of the Ninth Circuit's opinion in <u>Dawson v.</u>

---

[4] In <u>Dawson</u>, Oregon state law extended protection of employees to discrimination based on sexual orientation. <u>Dawson</u>, 630 F.3d at 938-39. Whether state law affords protection based on sexual orientation, however, is not relevant to a Title VII claim because Title VII extends only to the employment practices it prohibits. <u>See</u> 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."); 42 U.S.C. § 2000e-2 (enumerating the "unlawful employment practices" Title VII protects); <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 103 (1983) ("Title VII does not itself prevent States from extending their nondiscrimination laws to areas not covered by Title VII . . . [and] is neutral on the subject of all employment practices it does not prohibit.").
Nonetheless, even if Oregon's protection based on sexual orientation somehow affected the Ninth Circuit's analysis of plaintiff's Title VII retaliation claim, <u>Dawson</u> is not distinguishable because California state law also affords protection to individuals based on sexual orientation. <u>See</u> Cal. Gov't Code § 12940 ("It is an unlawful employment practice . . . [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or <u>sexual orientation</u> of any person, to refuse to hire . . . .") (emphasis added).

7

Entek, denying plaintiff's request to include "sexual orientation" in Instruction No. 11 would have been error.

The Ninth Circuit has also repeatedly held that a plaintiff can successfully assert a retaliation claim so long as the plaintiff's opposition to an employment practice was "based on a '*reasonable belief*' that the employer has engaged in an unlawful employment practice" even if the practice is not actually unlawful under Title VII. Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002); accord Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006); Moyo v. Gomez, 40 F.3d 982, 981 (9th Cir. 1994). Thus, in a Title VII retaliation claim, "an employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination, and even if the discrimination he complained about was not legally cognizable." Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (emphasis added).

There cannot be any doubt that the plaintiffs in this case were reasonable in believing that Title VII prohibited defendant from terminating their coworker based on his sexual orientation.  Not only has there been a growing gay rights movement in this country, the courts have also recognized sexual orientation as a status that merits heightened protection.[5]

---

[5] See, e.g., Romer v. Evans, 517 U.S. 620, 632-35 (1996) (holding that a Colorado constitutional amendment prohibiting civil rights protection for gays, lesbians, and bisexuals violated the Equal Protection Clause); In re Levenson, 560 F.3d 1145, 1149-51 (Judicial Council of the 9th Cir. 2009) (finding that the federal Defense of Marriage Act, as applied to preclude a federal defender's request for health benefits for his same-sex

Accordingly, based on the Ninth Circuit's holding in Dawson and because plaintiffs were reasonable in believing that Title VII prohibited defendant from discriminating based on sexual orientation, the court's inclusion of "sexual orientation" in Instruction No. 11 was a correct statement of the law and does not merit a new trial.

    C.   Punitive Damages

Defendant argues that it cannot be liable for punitive damages because defendant had an anti-harassment policy in place and effectively implemented it. See Kolstad v. Am. Dental Ass'n,

---

spouse, violated the Due Process Clause and that the claim was "likely" subject to "some form of heightened constitutional scrutiny"); In re Golinski, 587 F.3d 901, 902-03 (9th Cir. 2009) (adopting a broad interpretation of the Federal Employee Health Benefits Act to require, despite the federal Defense of Marriage Act, health benefits for the same-sex spouse of a Ninth Circuit staff attorney); Witt v. Dep't of Air Force, 527 F.3d 806, 813-21 (9th Cir. 2008) (holding that the military's "Don't Ask, Don't Tell" policy must be evaluated under a "heightened level of scrutiny"); Perry v. Schwarzenegger, 704 F. Supp. 2d 921, 995, 1003 (N.D. Cal. 2010) (holding that the California constitutional amendment defining marriage as one between a man and woman violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment); cf. Courtney Weiner, Sex Education: Recognizing Anti-Gay Harassment as Sex Discrimination under Title VII and Title IX, 37 Colum. Hum. Rts. L. Rev. 189, 193, 232-33 (2005) (arguing that "sex, gender, and sexual orientation are inextricably linked" and thus "sexual orientation discrimination is a form of sex/gender discrimination"); Anthony E. Varona, Jeffrey M. Monks, En/gendering Equality: Seeking Relief Under Title VII against Employment Discrimination Based on Sexual Orientation, 7 Wm. & Mary J. Women & L. 67, 69, 81-90 (2000) (explaining why Title VII "should be interpreted as prohibiting anti-gay workplace discrimination").  The state of California also affords protection to employees based on their sexual orientation, Cal. Gov't Code § 12940, and the federal Office of Personnel Management has interpreted the Civil Service Reform Act of 1978 to include discrimination based on sexual orientation. Federal Laws Prohibiting Job Discrimination Questions and Answers, http://www.eeoc.gov/facts/qanda.html (last visited August 23, 2011).

527 U.S. 526, 534 (1999) (holding that, for purposes of imposing punitive damages, an employer may not be vicariously liable for discriminatory employment decisions of its managerial agents when those decisions are contrary to the employer's good-faith efforts to comply with Title VII). Plaintiffs, on the other hand, argue that defendant did not effectively implement its policy. Whether defendant had such a policy and whether it made a good-faith effort to comply with it would have been questions of fact for the jury to determine. At oral argument on its motion for judgment on the punitive damage claim, counsel for defendant represented that it had requested a jury instruction on the Kolstad defense but that such request was denied by the court.

        The court has no recollection of defendant ever requesting any instruction on the Kolstad defense, and a review of the record confirms that none was requested. Furthermore, after the court instructed the jury, when the court inquired on the record whether counsel had any exceptions or objections to note to the instructions as given, no exception or objection was noted to the failure to give an instruction on the Kolstad defense. In a civil case, with few exceptions not applicable here, a party cannot complain about the failure to give a jury instruction for the first time on a Rule 50 motion after the verdict. See Fed. R. Civ. P. 51; Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971, 982 (9th Cir. 2009) (argument that district court failed to give proper instructions was waived where defendant did not advocate for instruction on the subject at trial).

        In any event, even if defendant had made a timely

10

request for instructions on the issue, the evidence presented at trial was sufficient to support a finding that defendant did not engage in good faith efforts to comply with Title VII.

Defendant also argues that plaintiffs should not be able to recover punitive damages because they failed to provide a computation of damages pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which states that a party must provide "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party who fails to make the required initial disclosure "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008); Yeti By Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

Punitive damages are not subject to precise calculation, so plaintiffs' failure to provide a computation of punitive damages was harmless. See E.E.O.C. v. Gen. Motors Corp., Civ. No. 3:06-cv-19, 2009 WL 910812, at *3 n.1 (S.D. Miss. Apr. 1, 2009); Crocker v. Sky View Christian Acad., No. 3:08-CV-00479, 2009 WL 77456, at *3 (D. Nev. Jan. 8, 2009).

Accordingly, defendant is not entitled to judgment as a matter of law on punitive damages, and the court will not strike the punitive damages award for plaintiffs' failure to disclose a computation of damages.

D. Motion to Amend Judgment

Defendant seeks to amend the judgment to decrease

11

plaintiffs' damages to $300,000 each pursuant to Title VII's statutory cap, which provides:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
> . . .
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

Plaintiffs argue that § 1981a(b)(3) allows recovery of $300,000 in compensatory damages and $300,000 in punitive damages, for a total of $600,000.  This is simply not a reasonable interpretation of the statute.  See Caudle v. Bristow Optical Co., 224 F.3d 1014, 1021 (9th Cir. 2000) ("That provision limits combined punitive and compensatory damages at $50,000 for defendants with fewer than 101 employees and at $100,000 for defendants with more than 100 but fewer than 201 employees."); E.E.O.C. v. Dinuba Med. Clinic, 222 F.3d 580, 588 (9th Cir. 2000) ("§ 1981a(b) limits the total amount of recoverable damages to $50,000" for a respondent with no more than 100 employees). Accordingly, the court will amend the judgment to award $300,000, not $400,000, to each plaintiff.  A proportional reduction in compensatory and punitive damages is appropriate.  See E.E.O.C. v. Everdry Mktg. & Mgmt., Inc., 556 F. Supp. 2d 213, 227 n.10 (W.D.N.Y. 2008).

Other arguments raised in defendant's motion have either been adequately addressed in the court's prior orders or do not require further discussion.

12

1            IT IS THEREFORE ORDERED that defendant's motion for
2   judgment and for new trial, be, and the same hereby is, DENIED.
3            IT IS FURTHER ORDERED that defendant's motion to amend
4   the judgment pursuant to 42 U.S.C. § 1981a(b)(3) be, and the same
5   hereby is, GRANTED.
6            The Clerk is directed to reduce the award of
7   compensatory damages made to each plaintiff to $100,000 and to
8   reduce the award of punitive damages made to each plaintiff to
9   $200,000.
10  DATED:  September 7, 2011

                    _____
                    WILLIAM B. SHUBB
                    UNITED STATES DISTRICT JUDGE