UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| VICTORIA McCARTHY, KATHERINE SCHMITT, | NO. CIV. 2:09-2495 WBS DAD |
| Plaintiffs, | MEMORANDUM AND ORDER RE: MOTION FOR ATTORNEYS' FEES |
| v. | |
| R.J. REYNOLDS TOBACCO CO., and DOES 1-10, | |
| Defendants. | |

----oo0oo----

Plaintiffs Victoria McCarthy and Katherine Schmitt obtained a jury verdict and judgment in their favor on claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, for sexual harassment and retaliation against their former employer, defendant R.J. Reynolds Tobacco Co. After the court denied defendant's Motion for Judgment as a Matter of Law and for New Trial, it granted plaintiffs' motion for attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k) and awarded plaintiffs $147,738.00. Defendant has appealed the court's

orders denying its Motion for Judgment as a Matter of Law and for New Trial and granting plaintiffs' request for pre-judgment attorneys' fees.  (Docket Nos. 146, 152.)  Plaintiffs now move for an award of attorneys' fees based on the fees they incurred after judgment was entered.

I.   Effect of Appeals

Generally, "[t]he filing of a notice of appeal is an event of jurisdictional significance-—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam).  Defendant contends that, because it has filed a Notice of Appeal of the court's September 13, 2011 Order granting plaintiffs' request for pre-judgment attorneys' fees, awarding post-judgment fees would require the court to amend the September 13, 2011 Order, which it cannot do when the appeal of that Order is pending.  See Pro Sales, Inc. v. Texaco, U.S.A., Div. of Texaco, Inc., 792 F.2d 1394, 1396 n.1 ("Because the filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed, the district court here had no power to amend its opinion at the time it attempted to do so.") (internal citation omitted).

Plaintiffs did not, however, move for and the court did not award post-judgment fees in the September 13, 2011 Order. Although the court agrees that the more prudent course of action may have been for plaintiffs to wait and make a single motion for all attorneys' fees after the post-judgment motions were

resolved,[1] deciding plaintiffs' pending motion for attorneys' fees would not require the court to amend the September 13, 2011 Order.

Moreover, the "rule of exclusive appellate jurisdiction" resulting from an appeal "is a creature of judicial prudence[] and is not absolute." Masalosalo by Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 956 (9th Cir. 1983). In Masalosalo, the Ninth Circuit held that the filing of a notice of appeal from an entry of summary judgment does not divest the district court of jurisdiction to award attorneys' fees in the case. Id. In so holding, the Ninth Circuit emphasized that allowing the district court to award attorneys' fees while the appeal on the merits was pending would "prevent hasty consideration of postjudgment motions" and "prevent postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge." Id. at 957. It also recognized that allowing the district court to award attorneys' fees "may prevent delay and duplication at the appellate level" because, "[i]f a district court decides a fee issue early in the course of a pending appeal on the merits, and the fee order is appealed, the appeals may be consolidated." Id.

Although this case is not on all fours with Masalosalo, the reasoning and policies behind the Ninth Circuit's holding in that case apply equally here. Even assuming that the Ninth

---

[1] See Bailey v. County of Riverside, 414 F.3d 1023, 1025 (9th Cir. 2005) ("[T]he Rule 54(d)(2)(B) motion for fees is timely if filed no later than 14 days after the resolution of a Rule 50(b), Rule 52(b), or Rule 59 motion.").

3

Circuit's ruling on this court's award of pre-judgment fees will affect the award of post-judgment fees at issue in this motion, the effect cannot be more significant than the potential effect in Masalosalo because an appellate court's reversal of a grant of summary judgment could take away entitlement to fees in its entirety. The relevant considerations to resolve plaintiffs' request for post-judgment fees are also fresh in this court's mind and undoubtedly will be muddled, if not forgotten, if the court waits for the Ninth Circuit to decide the pending appeals. Given the close proximity of time between this Order and defendant's prior appeals, deciding plaintiffs' request for post-judgment fees at this time would also conserve appellate resources because, assuming defendant files a notice of appeal from this Order, the appeal can be consolidated with the pending appeals.

Accordingly, defendant's notice of appeal from the court's September 13, 2011 did not divest this court of jurisdiction to consider plaintiffs' motion for post-judgment fees.

II. Attorneys' Fees

Title VII provides for reasonable attorneys' fees to a prevailing party. See 42 U.S.C. § 2000e-5(k). To determine reasonable attorneys' fees, the court must first calculate the lodestar by taking the number of hours reasonably expended in the litigation and multiplying it by a reasonable hourly rate. Fisher v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "Though the lodestar figure is presumptively reasonable, the court may

adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the [plaintiff], the complexity and novelty of the issues presented, and the risk of nonpayment." In re Bluetooth Headset Prods. Liab. Litig., --- F.3d ----, ----, 2011 WL 3632604, at *4 (9th Cir. 2011) (internal quotations and citations omitted).

  A. Reasonable Hourly Rate

  A reasonable rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986); see also Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community.").

  In the September 13, 2011 Order, the court determined that the reasonable hourly rate for Aldon Bolanos's services was $285 per hour, and the court explained its reasons for this determination in detail. (See Sept. 13, 2011 Order at 3-6.) Based on the court's prior determination, plaintiffs concede that the reasonable hourly rate for Bolanos's services is $285. Although defendant did not object to Bolanos's original request for a rate of $375 per hour for pre-judgment services, defendant now contends that even the reduced rate of $285 that the court imposed in the September 13, 2011 Order would be excessive. Albeit without the benefit of argument from defendant, the court

carefully considered the rates awarded in other cases in this district, the quality of Bolanos's representation, and the results he obtained in reaching the $285 rate in the September 13, 2011 Order and still believes that this is a reasonable hourly rate for Bolanos's services.

Plaintiffs also request fees billed by attorney Curtis W. Molloy, who was "brought in specifically to assist Mr. Bolanos in defending the judgment against post-trial attack by R.J. Reynolds." (Pls.' Mem. at 6:9-11.) Aside from a brief declaration by Molloy stating that he has fourteen years of experience, is a "highly experienced attorney with extensive experience litigating all manner [sic] of civil litigation matters, including a substantial employment-related practice" and that he generally charges more than $300 per hour, plaintiffs have again "failed to meet their burden of establishing a prevailing market rate in the community for 'similar work performed by attorneys of comparable skill, experience, and reputation.'" (See Sept. 13, 2011 Order at 3:9-11 (quoting Chalmers, 796 F.2d at 1210).) Plaintiffs concede, however, that the reasonable rate for Molloy's services in this case is also $285. Because the quality of Molloy's work seems comparable to Bolanos,[2] the court finds that the rate of $285 per hour is also a reasonable rate for Molloy.

B. Reasonable Number of Hours

---

[2] The court was unaware of Molloy's involvement in this case until reviewing plaintiffs' motion for post-judgment fees and, more importantly, did not notice any improvement in the quality of post-judgment briefing than previously experienced from Bolanos.

6

"In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." <u>Chalmers</u>, 796 F.2d at 1210. "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." <u>Id.</u> The Supreme Court has recently explained that

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

<u>Fox v. Vice</u>, --- U.S. ----, ----, 131 S. Ct. 2205, 2216 (2011).

Plaintiffs have represented that Bolanos spent 122 hours on post-judgment work and that Molloy spent 76 hours on post-judgment work, for a total of 198 hours between the two attorneys over a six-week period. Although this number of hours over a six-week period may be reasonable in some cases, it seems excessive in this case, especially when compared to the 489.3 hours Bolanos billed over the two years this case was pending. The 489.3 hours included the time it took Bolanos to oppose a significant summary judgment motion, oppose defendant's motion for judgment, attend seven days of depositions, and prepare for and attend a ten-day jury trial. In contrast, during the post-judgment phase, plaintiffs opposed one motion that was ultimately disposed of by stipulation (Docket No. 127), filed a twenty-one page opposition to defendant's Motion for Judgment as a Matter of Law and for New Trial, and filed a motion for pre-judgment

7

attorneys' fees.  The increase in hours spent post-judgment raises some concerns that plaintiffs' counsel were motivated to spend more time on the case post-judgment because they knew defendant would be footing the bill.

The quality of legal research and analysis in plaintiffs' counsel's post-judgment briefing is also not consistent with the representation that counsel spent significant time performing legal research or drafting their briefs.  Most significantly, when responding to defendant's request for a new trial based on the court's inclusion of the phrase "sexual orientation" in Jury Instruction No. 11, plaintiffs' argument failed to even mention the controlling case of <u>Dawson v. Entek</u>, 630 F.3d 928, 933-34 (9th Cir. 2011), which the court found through independent research.

The court also finds it unreasonable to allow plaintiffs' counsel to seek fees for the 8.8 hours Bolanos expended and 9 hours Molloy expended to supplement plaintiffs' motion for pre-judgment attorneys' fees, which the court allowed because plaintiffs' original documentation was insufficient.

More importantly, Molloy's billings fall short of the "detailed time records" required for attorneys' fees because most of his entries refer only generally to "legal research" and conversations with Bolanos without identifying the subject of the research or conversations.  Bolanos's time records, although more detailed than Molloy's, often lack sufficient detail as well. For example, on August 12, 2011, Bolanos billed 6.6 hours to "CONTINUE PREPARATION OF OPPOSITION TO MOTION FOR NEW TRIAL OR JNOV.  PULL AND SHEPHERDIZE [sic] ADDITIONAL CASELAW CITED BY

DEFENSE" and .5 of an hour to "MEET WITH MOLLOY RE: ISSUES." (Bolanos Aff. at 10.)

The lack of detail in the billing entries, especially in Molloy's, prevents the court from performing a meaningful review to determine the amount of time counsel reasonably expended on this case post-judgment.  Moreover, while plaintiffs represented that any time spent opposing defendant's request to amend the judgment to conform to Title VII's statutory cap is not included in their fee request because plaintiffs did not prevail on that issue, it is unclear how the time spent on that issue could have been redacted when Molloy's billings refer only generally to research and drafting of the opposition and Bolanos's billings lack specificity in many entries.[3]  It would also be unreasonable for plaintiffs to recover fees for any time counsel spent to prepare plaintiffs' Ex Parte Application (Docket No. 140) based on plaintiffs' counsel's inability to retrieve an unpublished case available on Lexis or seeking sanctions based on defendant's proper citation to the unpublished case.  With the time records plaintiffs' submitted, the court cannot determine whether plaintiffs seek fees for that time.

When counsel seeks reimbursement for fees that appear patently excessive and submits billings with such general descriptions so as to preclude the court from performing a meaningful review, the court is left with three choices.  First,

---

[3] At oral argument, Bolanos estimated that approximately fifty hours were spent opposing defendant's request to amend the judgment to comply with Title VII's statutory cap.  Given that the issue had been clearly decided and plaintiffs' position lacked merit, it is hard to imagine how counsel could have spent fifty hours on that issue.

9

because the party prevailed, the court could award all of the fees requested.  Doing so, however, would encourage counsel to create insufficient contemporaneous records.  Second, the court could deny any award of fees based on counsel's insufficient records.  This approach would also be unjust because it would deny the prevailing party its right to recover fees.  Lastly, the court could strive to achieve a middle-ground by reducing the requested number of hours by a percentage in an effort to calculate what the court believes would have been a reasonable number of hours in the case.

Although the Ninth Circuit has recognized and upheld district courts' use of the third approach, e.g., Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948-49 (9th Cir. 2007) (upholding district court's "20 percent across-the-board reduction" when the fee applicant "has failed to bear her burden of submitting detailed time records justifying the hours claimed to have been expended"), it has also criticized district courts for utilizing it without sufficient explanation: "Irrespective of its obvious utility, the percentage or, 'meat-axe approach,' nonetheless has been criticized when employed in cases where the fee applications at issue involved substantial amounts of money and where district courts failed adequately to articulate their reasons for selecting specific percentage deductions." Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992); see also Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1150 (9th Cir. 2001) ("Indeed, the practice of reducing fees without identifying the hours spent inefficiently or providing any explanation of the particular degree of reduction adopted is no more defensible in

10

relatively straightforward cases such as this one than in complex cases such as Gates.").

The court cannot, of course, provide an infallible calculation that precisely quantifies the perfect across-the-board reduction. Its analysis must be steered in a great degree by its judicial intuition and years of experience as a lawyer billing fees and as a judge evaluating awards for such fees. The inability to divine the perfect reduction should not tie the court's hands in cases such as this. See Fox, --- U.S. at ----, 131 S. Ct. at 2216 ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

At oral argument, the court discussed the dilemma it faced based on the request for fees that clearly appears excessive in light of the amount, complexity, and quality of work performed and the lack of detail in plaintiffs' counsel's billings. In response, Bolanos agreed that Molloy's billings were insufficient and proposed a fifty percent reduction of his time, which would allow recovery for 38 hours of Molloy's time. The court is aware that accepting plaintiff's attorney's suggestion as to the percentage by which his bill should be reduced was precisely what drew the Court of Appeals' criticism of Judge Karlton in Gates. However, here defendant did not request a greater reduction for Molloy, and the court believes that such a significant reduction of Molloy's time would be consistent with a reasonable amount of time for the work he performed.

With respect to Bolanos's time, the court recognizes

11

that a fifty percent reduction would not be merited because Bolanos provided greater specificity than Molloy in his billings. Nonetheless, the description for work performed for at least 40.2 hours of the time he billed (approximately thirty-three percent of his total timed billed) lacks sufficient detail for the court to determine what work was performed and whether the time expended was reasonable.[4]  Given this lack of detail, the hours the court has already identified as unreasonable, and the apparent excessive number of hours billed in comparison to the quality of legal research and briefing, the court finds that a one-third reduction of Bolanos's requested hours, which reduces his total from 122 hours to 81.3 hours, would provide for a reasonable number of hours in this case.

With these reductions in mind, the total hours awarded for plaintiffs' counsel's post-judgment work would be 119.3 hours.  The reasonableness of this total is underscored by comparing it to the 154.2 hours defendant represented it expended post-judgment to prepare briefs with substantially more thorough legal analysis and detailed citations to the record.

Accordingly, the court will award fees for **81.3 hours** at an hourly rate of **$285** for Bolanos, totaling **$23,170.50**, and fees for **38 hours** at an hourly rate of **$285** for Molloy, totaling **$10,830.00**.  The total fees awarded for post-judgment work will be **$34,000.50**.

---

[4]  The 40.2 hours is for time billed with only general descriptions on June 28, 2011, July 1, 2011, July 7, 2011, July 15, 2011, July 23, 2011, August 11, 2011, August 12-15, 2011, August 22, 2011, August 24, 2011, August 29, 2011, and September 8, 2011.

12

III.  <u>Costs</u>

        Within their motion for post-judgment attorneys' fees, plaintiffs also request the court to award $8,750.00 in "costs." Eastern District Local Rule 292 provides the procedures for taxing costs and provides:

> **Filing of Cost Bill**. Within fourteen (14) days after entry of judgment or order under which costs may be claimed, the prevailing party may serve on all other parties and file a bill of costs conforming to 28 U.S.C. § 1924.  The cost bill shall itemize the costs claimed and shall be supported by a memorandum of costs and an affidavit of counsel that the costs claimed are allowable by law, are correctly stated, and were necessarily incurred. Cost bill forms shall be available from the Clerk upon request or on the Court's website.

E.D. Local Rule 292(b).  More importantly, Local Rule 292 was drafted to comply with 28 U.S.C. § 1920, which states, "A bill of costs <u>shall</u> be filed in the case and, upon allowance, included in the judgment or decree."  28 U.S.C. § 1920 (emphasis added). Plaintiffs have failed to file a Bill of Costs as required under § 1920 and Local Rule 292.

        Not only does plaintiffs' request for "costs" fall short of the procedural requirements for taxing costs, it is also unclear whether plaintiffs even intended their request to come under the costs § 1920 allows or if they are seeking some general award of "costs."  Among the various costs allowed to be taxed, 28 U.S.C. § 1920 provides for costs to be taxed for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Plaintiffs, however, are seeking reimbursement at a generic rate of $.25 per page for the very roughly estimated 35,000 pages in all of their files for this case, which include "A) pleadings; B)

13

motions; C) research; D) client documents; and E) trial materials." (Bolanos Aff. ¶ 9.)  Clearly, a majority of these copies would not come within the costs allowed for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." See, e.g., Hunt v. City of Portland, No. CV 08-802-AC, 2011 WL 3555772, at *11 (D. Or. Aug. 11, 2011) ("Copying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable.  However, recoverable copying costs do not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys.  Recoverable copying costs also do not include costs associated with in-house photocopying for use by counsel.") (internal quotation marks and citations omitted).

Defendant, which was also confused by plaintiffs' request for "costs" (see Def.'s Opp'n n. 4), would be prejudiced if the court treated plaintiffs' vague request as a Bill of Costs because defendant was not on notice that plaintiffs were seeking costs under § 1920 and would be deprived of the opportunity to object.  The court will therefore deny plaintiffs' unclear and procedurally deficient request to be reimbursed for "costs."

IT IS THEREFORE ORDERED that plaintiffs' motion for attorneys' fees incurred post-judgment be, and the same hereby is, GRANTED, and plaintiffs are awarded fees in the amount of **$34,000.50**; and plaintiffs' motion for "costs" be, and the same hereby is, DENIED.  Pursuant to the July 18, 2011 Stipulation and Order, (Docket No. 127), fees are payable from the bond.

1 | DATED:    October 14, 2011

    _____
    WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE